UNITED STATES DISTRICT COURT for the
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC A. ELLIOTT (P/K/A FLY HAVANA);<br><br>*Plaintiff*<br><br>vs.<br><br>JOSEPH ANTHONY CARTAGENA (P/K/A FAT JOE);<br>KARIM KHARBOUCH (P/K/A FRENCH MONTANA);<br>SHANDEL GREEN (P/K/A INFARED);<br>REMINISCE SMITH MACKIE (P/K/A REMY MA);<br>MARCELLO VALENZANO (P/K/A COOL);<br>ANDRE LYON (P/K/A DRE);<br>EDWARD F. DAVADI, JR. (P/K/A EDSCLUSIVE);<br><br>JOEY AND RYAN MUSIC;<br>EXCUSE MY FRENCH MUSIC;<br>EXCUSE MY FRENCH MUSIC II;<br>MR. GREEN MUSIC;<br>REMYNISCE MUSIC;<br>DADE CO. PROJECT MUSIC, INC.;<br>PO FOLKS MUSIC;<br>WARNER-TAMERLANE PUBLISHING CORP.;<br>WARNER/CHAPPELL MUSIC, INC.;<br>BMG RIGHTS MANAGEMENT (US) LLC (D/B/A BMG PLATINUM SONGS US);<br>SONY/ATV ALLEGRO;<br>SONY/ATV TUNES LLC;<br>SONY/ATV MUSIC PUBLISHING, INC.;<br>REACH MUSIC PUBLISHING INC.;<br>REACH GLOBAL INC.;<br>SONGS OF REACH GLOBAL;<br>CUTS OF REACH MUSIC;<br>FIRST N PLATINUM PUBLISHING;<br>FIRST N GOLD PUBLISHING, INC.;<br>KOBALT SONGS MUSIC PUBLISHING;<br>KOBALT MUSIC PUBLISHING AMERICA, INC.;<br>SONGS OF UNIVERSAL INC.;<br>UNIVERSAL MUSIC-Z TUNES LLC(D/B/A UNIVERSAL MUSIC Z SONGS);<br><br>ROC NATION LLC;<br>ROC NATION MANAGEMENT LLC;<br>SNEAKER ADDICT TOURING LLC;<br>TERROR SQUAD PRODUCTIONS, INC.;<br>TERROR SQUAD ENTERTAINMENT;<br>RNG (RAP'S NEW GENERATION);<br>EMPIRE DISTRIBUTION, INC.<br><br>*Defendants* | CIV. NO.<br><br><br>**DECLARATORY COPYRIGHT CLAIMS AND SUPP. STATE LAW CAUSES OF ACTION**<br><br><br>1. DECL OF AUTH.-COMP.<br>2. DECL. OF OWNER-COMP.<br>3. DECL. OF AUTH.-SR<br>4. DECL OF OWNER.-SR<br>5. ACCOUNTING<br>6. CONSTRUCTIVE TRUST<br>7. UNJUST ENRICHMENT<br>8. QUANTUM MERUIT<br>9. CONVERSION<br>10. MONEYS HAD AND REC.<br>11. BREACH FIDUC. DUTIES<br>12. NEGLIGENCE<br>13. FRAUD/NEG. MISREP.<br>14. CIVIL CONSPIRACY |

CIVIL ACTION COMPLAINT

## Introduction

1.      Defendants Fat Joe, French Montana, Remy Ma, Infared [sic], and others used and took credit for plaintiff Fly Havana's contributions to the 2016 double platinum single "All the Way Up" without providing him his required credit, compensation, and ownership. Other artists who performed remixes using Plaintiff's work without providing credit or compensation include Jay-Z, David Guetta, Glowinthedark, Snoop Dogg, The Game, E-40, Jay Park, AK-69, DaBoyWay, SonaOne, Joe Flizzow, Farid Bang, Kollegah, Summer Cem, Seyed, Meek Mill, Fabolous, Jadakiss, Daddy Yankee, Nicky Jam, DJ Laserjet, and Papoose.

2.      Some Defendants, such as French Montana, do not appear to have actually written anything in the song, but took writing credit anyway. French Montana did not even know who wrote his part in "All the Way Up" until Plaintiff confronted him outside DJ Khaled's studio in 2017.

3.      This action is a request for a declaration of authorship and ownership under the Copyright Act to determine Plaintiff's authorship and/or ownership share of the composition and sound recording copyrights for the joint work "All the Way Up." This is not an infringement action.

4.      This action also alleges fraud and civil conspiracy against Fat Joe and Infared because both colluded to cheat Plaintiff out of credit and compensation for the massive hit, despite Plaintiff's authorship being so clear that Fat Joe gave Fly Havana a public shout out for his work on the song at a concert. See "99Jamz Uncensored Fat Joe," 99 JAMZ - YouTube (May 27, 2016), https://www.youtube.com/watch?v=-O9kg6-mW3w&feature=youtu.be&t=2236.

5.      State law claims are being brought for damages to compensate Plaintiff for his share of the millions of dollars earned by the song, but which were not provided to Plaintiff, instead improperly and/or unjustly taken by Defendants.

## Facts

6.      The plaintiff, Eric Elliott, is a struggling but talented Miami-based hip hop artist known by the name Fly Havana.

7.      In late 2015, Mr. Elliott co-created the song which the public now knows as the hit single "All the Way Up," performed by the artists Fat Joe (real name Joseph Cartagena), Remy Ma (real name Reminisce Smith Mackie), Infared (real name Shandel Green), and featuring French Montana (real name Karim Kharbouch).

8.      The initial creation took place at Circle House studio in Miami over the course of four to five hours in late 2015, where Mr. Elliott and Infared collaborated to create the initial, unfinished version of the song. That initial, unfinished version of the song put together that day can be found here: https://www.youtube.com/watch?v=8_1R1WTXnBM.

9.      Later, other authors—purported to be Fat Joe, French Montana, Remy Ma, and others—added to the work to create the final released version the world knows as a hit song. Part of "All the Way Up" and the album *Plata O Plomo* were created in Miami, and the other half in New York City. [1]

10.      The unfinished version is in many respects identical to the released version, including the musical composition, parts of the lyrical composition, the vocal melody, the rhythmic flow of the lyrical cypher, and the sound recording. Compare "All the Way Up," Fat Joe - YouTube, https://www.youtube.com/watch?v=y2ak_oBeC-I, with "All the Way Up - Unfinished Version," YouTube, https://www.youtube.com/watch?v=8_1R1WTXnBM.

11.      Indeed, when counsel for Plaintiff uploaded the unfinished version to YouTube for this lawsuit, YouTube's algorithm, Content ID, automatically flagged the recording as a copy of Fat Joe's release.

---

[1] https://www.youtube.com/watch?time_continue=1&v=SQjRMAVgsXo.

12.     At all points all bona fide authors intended that their respective contributions be used to create a single intertwined and inseparable song, and intended to jointly author the work.[2] There were no oral or written authorship or ownership agreements to which Plaintiff was a party prior to the creation and release of the song. All of the expression that Plaintiff contributed was original, novel, distinct, unique, and otherwise independently copyrightable.

13.     It was Infared who later introduced the song to his collaborator and acquaintance, Fat Joe, a well-known hip hop artist, who is also known by the names "Fat Joe da Gangsta" and "Joey Crack." Infared mentioned at the beginning of the Circle House session to Plaintiff that he was looking to get Fat Joe some music and Plaintiff supported the song being shopped to Fat Joe so it could be further developed and released.

14.     The creation started when, while in the studio, they were listening to different beats that Infared had brought with him and Mr. Elliott recognized a beat by (and the tag of) a then-little known producer named Edsclusive (real name Edward Davadi), whom he had closely worked with on music for about a year in 2014 and early 2015.

15.     Elliot and Infared wrote the song together using the beat, but it was Elliott who framed out the song and guided its creation at Circle House.

16.     Loosely speaking, the unfinished and released versions of "All the Way Up" consist of four sections, which each include: (1) a verse, (2) a pre-hook, and (3) a hook.

17.     As can be heard on the unfinished version of the song (found here https://www.youtube.com/watch?v=8_1R1WTXnBM), and seen in the lyrics comparison on the following page, the unfinished version and released version are virtually identical in terms of song structure, lyrics, and content:

---

[2] Infared admitted in an interview (https://www.youtube.com/watch?v=cSL89zOiCnc) that the songs he creates as collaborations are single, inseparable songs: He stated that independent portions contributed by one songwriter or another are not important, what is important is "a collaboration of talent working together doing one [song]."

| UNFINISHED VERSION OF SONG | RELEASED VERSION OF SONG |
|---|---|
| **HOOK (Infared)** | **HOOK (Infared)** |
| Nothing can stop me | Nothing can stop me |
| I'm all the way up | I'm all the way up |
| All the way up | All the way up |
| I'm all the way up | I'm all the way up |
| I'm all the way up | I'm all the way up |
| Nothin' can stop me | Nothin' can stop me |
| I'm all the way up | I'm all the way up |
| | |
| **VERSE I (Fly Havana)** | **VERSE I (French Montana)** |
| Shawty what you want | Shawty what you want |
| I got what you need | Shawty what you need |
| See we smoking loud | My niggas run game |
| Ya we rolling trees | We ain't never leave |
| In the club going up | Countin' up this money |
| On that Medellin | We ain't never sleep |
| Bring ya girls with you | You got V12 |
| Cause you know I'm with my team | I got 12 V's |
| Pop bottles | Got bottles |
| Got weed | Got weed |
| Got molly | Got molly |
| (I'm all the way up) | (I'm all the way up) |
| | |
| **PRE-HOOK (Fly Havana)** | **PRE-HOOK (French Montana)** |
| Shawty what you want | Shawty what you want |
| I got what you need | I got what you need |
| Shawty what you want | Shawty what you want |
| I got what you need | I got what you need |
| Shawty what you want | Shawty what you want |
| I got what you need | I got what you need |
| **HOOK (Infared)** | **HOOK (Infared)** |
| I'm all the way up | I'm all the way up |
| I'm all the way up | I'm all the way up |
| I'm all the way up | I'm all the way up |
| I'm all the way up | All the way up |
| Nothing can stop me | Nothing can stop me |
| I'm all the way up | I'm all the way up |
| All the way up | |
| All the way up | |
| I'm all the way up | |
| Nothing can stop me | |
| I'm all the way up | |
| | |
| **VERSE II (Infared)** | **VERSE II (Fat Joe)** |
| Like a middle finger | For my niggas with Bentley |
| If your girl do | Coupes and Rolexes |
| Some freaky shit | Kicked the bitch out the room |
| Then you can bring her | And gave her no breakfast |
| Shawty popped a molly | Had to stash the jewels |
| Took her clothes off | These bitches so reckless |
| Damn girl | Keep my hoes on cruise |
| You just a show off | I'm talking naughty things |
| Ain't no two sons | Shorty uptown showin |
| I want three | Off her things |
| And if I'm spending money | Couldn't take it off |
| Then you know she fuckin me | So I gave her um change |
| She said I got a big dick | She call me top shot-ta |
| I gotta take it slow | Yeah I keep a few things |
| And she never ever seen | Champion sound |
| No shit like this before because | Yeah I got a few rings |

See Exhibit 1 - Full Song Structure and Lyrics Comparison of Unfinished and Released Versions.

18.     Plaintiff's contributions to the song are as follows:

**Hook**

19.      This is the portion of the song which has the lyrics "all the way up." The hook starts the song, and then follows the pre-hook 4 times, as well as plays one time in the outro.

20.      Mr. Elliott and Infared both authored the titular line "all the way up." The genesis of the hook came from a conversation where Mr. Elliott stated that the song they were going to create would go "all. the. way. up." the charts. Then Infared went into the booth and repeated the "all. the. way. up." line that Mr. Elliott had just said. This creation was spontaneous and collaborative. Infared raps the hook on the unfinished version and the released version.

21.      This portion of the released song is virtually identical to the initial, unfinished version. Compare Exhibit 1 - Comparison of Lyrics for Unfinished and Finished Versions; Compare        "All        the        Way        Up,"        Fat        Joe        -        YouTube, https://www.youtube.com/watch?v=y2ak_oBeC-I, with "All the Way Up - Unfinished Version," YouTube, https://www.youtube.com/watch?v=8_1R1WTXnBM.

22.      Furthermore, the sound recording from the initial version's hook is used in the released version. Id.

**Verse 1, Verse 4, and Pre-Hook**

23.      Verse 1 is the portion of the song which starts with "Shawty what you want? I got what you need?" and ends with "Got bottles, got weed, got molly." Plaintiff wrote the lyrics, and also created the vocal melody and rhythmic flow of this verse. Note that Verse 1 is later repeated as Verse 4.

24.     Plaintiff raps this part of the song in the unfinished version, while French Montana raps it in the finished version. The lyrics have been slightly modified in the finished version.

25.     Following Verse 1 is the pre-hook which repeats the line "Shorty what you want? I got what you need." Plaintiff wrote the lyrics, and also created the vocal melody and rhythmic flow for the pre-hook.  This pre-hook is repeated twice in the song, always before the hook.

26.     Note that in the released song the line "Shawty what you want? I got what you need" is repeated a total of eight times.

27.     Plaintiff raps this part of the song in the unfinished version, while French Montana raps it in the finished version. It is otherwise unchanged, and has the same vocal melody and lyrical flow.

28.     Notably, it was Mr. Elliott who suggested to Infared at Circle House that French Montana perform Verse 1, Verse 4, and the pre-hook (that Plaintiff had just written and performed) based on the sections' feel and style and because French was hot.

**Verses 2 and 3**

29.     These are the verses rapped by Fat Joe and Remy Ma in the released version. In the unfinished version they were performed by Infared and a woman singing in Spanish. The lyrics in these verses were completely replaced in the finished version.

30.     These verses are not important enough to be repeated in the song.

31.     Plaintiff's contribution to these verses was to create the vocal melody and rhythmic flow which is carried throughout the song, the verse, and pre-hook.

32.     Following the initial creative session at Circle House, Infared and Plaintiff left with a copy of the unfinished song on the CD. It can be found here:

https://www.youtube.com/watch?v=8_1R1WTXnBM. The Pro Tools audio files remained at Circle House and it is believed that Infared may also have taken a copy.[3]

33.     All of the joint authors who contributed to the song intended that their contributions be merged with the later contributions of other artists into a single, inseparable song for release. All the participants have admitted that the creation of the song was a joint collaboration.

## Plaintiff Received a Text From Infared's Friend

34.     As noted above, Infared knew Fat Joe and introduced the song to him. However, shortly later Infared went radio silent on Plaintiff.

35.     Several months later Infared's friend, a black African male, texted Plaintiff out of the blue.

36.     "French is going to use what you did. They're not gonna give you shit. I told you not to fuck around but you didn't listen. Lololol. Hahaha."

37.     Plaintiff then tried to call him repeatedly but he refused to pick up.

38.     It was at the same time that Plaintiff first heard "All the Way Up" on the radio, on or about March 3, 2016.

## Fat Joe and Plaintiff Speak on the Phone and
## Plaintiff's Authorship is Acknowledged

39.     The song was announced by Fat Joe on March 1, 2016, and released on March 2, 2016. On or about that time Plaintiff also posted on Instagram that Fat Joe needed to call him in 24 hours to resolve the situation.

40.     Fat Joe then called Plaintiff from a blocked number within 24 hours of the Instagram post, on or around March 4, 2016. Fat Joe was angry and threatening on the phone

---

[3] Pro Tools is the industry standard digital audio workstation software and hardware which professional studios use to record music. It is analogous to Microsoft Word for word processing.

call, but relayed that even though he initially thought Elliott had nothing to do with the song, when he listened to the unfinished version he realized that Mr. Elliott had actually written and performed on it. There was a second call the next day which was also unproductive.

41.     A day or so later, Mr. Elliott and Fat Joe spoke again, on or about March 6, 2016. This call was conciliatory and seemingly productive. It was acknowledged that Elliott was a co-author of "All the Way Up" and should get credit. Mr. Elliott explained to Fat Joe on the call that he was confused about why he had not been contacted about any credit or compensation despite Elliott doing a great deal of the work on the song. Mr. Elliott said he wanted to get paid up front or have publishing going forward.

42.     To lull Mr. Elliott into a false sense of security, Fat Joe told Elliott that (1) he would get him "some bread" up front (which Plaintiff understood to be a significant sum for a song that was becoming a hit single) for his contributions to the song (2) more bread later as the song produced income, (3) that they would begin working together because Mr. Elliot was hot and "in the zone," and (4) that Elliot needed to realize that he would have an "incredible relationship" with Fat Joe going forward if he respected Fat Joe. These statements were knowingly false and/or highly misleading, and Fat Joe intended Plaintiff to rely upon them.

43.     Fat Joe also made a veiled threat at the end of the call by claiming that if Mr. Elliott ever disrespected him that their relationship would go to "another place" with unmentioned consequences. Given Fat Joe's reputation,[4] and that the new album was named *Plata O Plomo* after Pablo Escobar's cartel catch phrase (which translates to "silver or lead," take

---

[4] Fat Joe has earned a certain reputation which Plaintiff was aware of. In addition, to describing himself as a "gangsta," Fat Joe also has a long rap sheet. He was arrested for assault and robbery in 1998, with an even larger man named Big Punisher, for beating a gentleman with a baseball bat in the Bronx and stealing his gold chain. The charges were dismissed after the victim refused to testify against his abusers. Fat Joe was arrested again for a fight in Times Square in 2002, but the charges were also dismissed. He has also been an eyewitness to multiple murders, including one by his former bodyguard in 1994 in the Bronx, to which investigators claim he was in close proximity. In addition, he was a witness to a double homicide in 2007 in South Beach after two men who were passengers in a Cadillac Escalade he was riding in were shot to death. His label is called Terror Squad and he also goes by "Joey Crack." He is considered one of the golden age gangsta rappers where street credibility is paramount to success.

a bribe or a bullet), this was not an idle threat. Plaintiff assured him that he did not want any trouble. Fat Joe demanded that Plaintiff trust and believe him, and Plaintiff responded that he did.

44.     Fat Joe is well aware of his reputation as "Fat Joe da Gangsta" and knew that Plaintiff had no leverage and was struggling; Fat Joe was taking full advantage of this situation. Fat Joe is also 6'1" and around 300 lbs, while Plaintiff is 5"7' and 150 lbs.

45.     Fat Joe said that he was out of town—which Plaintiff understood to be New York City where Fat Joe is from and where Fat Joe was working on the song's release—and that he could meet Plaintiff in a week when he got back.[5]

46.     For Mr. Elliott, a struggling artist who was "grinding," this is the break that he could only dream of. Fat Joe had told him that he was going to pay him, break him as an artist, and push and promote him.

47.     It must be kept in mind when reading this complaint that Mr. Elliott has no business or music industry experience, failed out of high school before then graduating from a home school vocational technical program, failed out of college in his first year, and now can barely make ends meet sweating over a grill as a part-time short order cook at a restaurant. Fat Joe knew all this, which is why he was pressuring and defrauding Plaintiff, because he saw a problem he could fix by taking advantage of Plaintiff.

48.     Around one week after the phone call, on March 14, 2016, Fat Joe called Mr. Elliott and told him to come to an address, but did not say why. Mr. Elliott had assumed it was an office for an attorney, and only when Mr. Elliott was almost there did he realize that Fat Joe had actually picked an IHOP in Miami Beach—off all places.

---

[5] A podcast promoting the "All the Way Up" release places Fat Joe and Remy Ma in Manhattan on March 4, 2016 (https://www.youtube.com/watch?v=mmceUiN5aso), and a Getty Images search shows that both attended the "All the Way Up" release party at Club Aces in New York City on March 7, 2016.

49.     When Mr. Elliott arrived Fat Joe was already in the IHOP but had left a crew of at least three men sitting outside in a black car. As noted above, Fat Joe has a reputation on the street; having a crew sitting outside was intended to send a message after Fat Joe's statements on the phone call about the consequences of disrespecting him.

50.     At that meeting, which lasted about 30 minutes, Fat Joe gave Plaintiff a check signed "Joseph Cartagena" for $5,000, the memo line of which read "write," for Mr. Elliott's writing contributions to "All the Way Up":



51.     Defendant Sneaker Addict Touring LLC is Fat Joe's company.

52.     Given that Mr. Elliott had understood that the amount would be much higher, given the success of the single, he incredulously asked Fat Joe "Are you serious?" Fat Joe sought to assuage Mr. Elliott, and further lull him into a false sense of security, and said that this was all he had right now from the song for Elliott, and repeatedly reassured him that "you're going to get more later."

53.     Importantly, Fat Joe stated that because "there's so many people on the song," that it was best for Plaintiff if he got *some* money up front, *more* money later, and that Plaintiff and Fat Joe start working and collaborating together to make hits.

54.      Fat Joe also put a piece of paper in front of Plaintiff saying that it was necessary him to sign the document, the content of which Fat Joe told him essentially memorialized Fat Joe's representations about getting "some bread" up front, more later, and working together. The way it was presented by Fat Joe was that it was supposed to protect Elliott's rights and secure Fat Joe and Plaintiff's future relationship. Mr. Elliott was not sent the paper in advance, was given no chance to review the paper with a lawyer, nor was he allowed to retain a copy of the paper. Mr. Elliott has little education and no business experience.

55.     When Fat Joe represented to Plaintiff both in phone calls and/or in person that he would be getting "some" money up front, more payments later for Plaintiff's role in writing the song "All the Way Up," and that Fat Joe would work with Plaintiff to make more hits and boost his career as part of an incredible relationship moving forward, these were knowingly false representations when made which he intended Plaintiff to rely upon to Plaintiff's detriment.

56.     Based on Fat Joe's false assurances Plaintiff felt that he had to sign the document and take the check.[6]

---

[6] Not to mention the fact that Fat Joe had told Plaintiff not to disrespect him and left a crew waiting outside.

57.     He thought that this was an inflection point in his career and life, which to that point had not been privileged to say the least. He even took a picture with Fat Joe in the parking lot of the IHOP, elated at the upturn he thought his life had taken:



58.     Mr. Elliott had no idea that Fat Joe had told him a series of lies calculated to deceive Plaintiff, designed to relax his vigilance, and lull him into a false sense of security. He would never have taken the $5,000 or signed any document had he any inkling he was being double crossed. Fat Joe did this solely for his, Infared's, and the other Defendants' gain—to Plaintiff's detriment.

59.     At all points Plaintiff's intent was to simply secure his fair share of credit, compensation, and ownership for his contributions to the song (composition and sound recording) that the other authors had already received.

## The Next Meeting with Fat Joe

60.     Around two weeks after the meeting, Fat Joe called Plaintiff to come to Cool & Dre's music production studio (real names Marcello Valenzano and Andre Lyon, respectively) in Miami but did not say why. When Plaintiff arrived, the only people there were Fat Joe, Dre, two engineers (one black, one Hispanic), and also a pit bull (not the artist).

61.     Plaintiff did not understand why he was there because while the others hung out in the main room, he was ushered to and sequestered in a small side studio. There was no interaction with Fat Joe or the others on any work or music.

62.     Moreover, nothing was functional in the small studio he was placed in, including the microphones, speakers, and music gear, making the studio useless. The Hispanic engineer checking in on Plaintiff was clearly angry that Plaintiff was even there, and it was evident from his limited initial interactions with those present that no one actually intended to work with Elliott. After sitting for hours with no interaction, and being frozen out, Plaintiff did not know what to do and was pushed to leave.

63.     Fat Joe only invited Plaintiff to the studio to give flimsy cover to his false statements that he intended to work with Plaintiff, make music, and form an incredible relationship, while never actually intending to do any of this; Fat Joe's true goal was to instead take Plaintiff's credit, money, and ownership for himself, Infared, and the other Defendants.

64.     At no point after this did Fat Joe reach out to Plaintiff again, nor did he attempt to make additional payments or work with Plaintiff on music as he previously stated. Because Fat Joe refused to give Plaintiff his contact information Plaintiff had no way to contact him, although he tried.

## Confrontation at Fat Joe's Show

65.     Some time later, Plaintiff heard that Fat Joe was giving a show in Fort Lauderdale at Revolution Live for 99 Jamz on May 26, 2016, and Plaintiff went to confront him to ask him to make good on his prior representations.

66.     When he arrived at the venue, Fat Joe saw Plaintiff and began to talk to him. Fat Joe said "yo, whatcha doing in the studio?" trying to make like they were friendly for the crowd around them. Plaintiff responded "I'm supposed to be working with you. You know I haven't been in any studio. You haven't contacted me and I don't even have your number or email." There was a crowd of people and the situation became awkward.

67.     At that point Fat Joe went on stage to perform. While on stage, to attempt to get on Mr. Elliott's good side, Fat Joe said that "All the Way Up" was the biggest song in the country and, when listing those who worked on the song, shouted out "Fly Havana" before anyone else for his writing and contributions on the track. The shout out can be heard here: https://www.youtube.com/watch?v=-O9kg6-mW3w&feature=youtu.be&t=2236.

68.     After his performance, Plaintiff asked Fat Joe "when are you going to start paying more of the money like we talked about?" Fat Joe responded "we can talk about more money when you start bringing me more hits." At this point Mr. Elliott retorted "no, that's not what you said, you said more money was coming, but you haven't paid. And you haven't worked with me."

69.     Remember, by this time, the song was as massive hit. Elliott pointed out to Fat Joe that the song was blowing up and everyone was getting paid but Elliott who he had just shouted out on stage.

70.     At this point, Fat Joe started getting angry, then started talking about how Elliott had to pick what "side you are on," which was understood to be a veiled threat. Plaintiff did not

want any problems, and Fat Joe had retreated to stand by security and his entourage, so Plaintiff left.

71.     Following this exchange, Plaintiff left and has had no further contact with Fat Joe. He has received no additional payments and Fat Joe never worked with him.

## Efforts by Defendants to Deceive the Public

72.      Defendants have repeatedly pushed false versions of the song's creation to the public to attempt to explain how the song was created.

**Edsclusive Creates Impossible Story Describing Song's Creation to Exclude Plaintiff**

73.     In a June 2016 article that Plaintiff was not aware of until recently, defendant Edsclusive claimed that he was somehow connected with Fat Joe in late 2015, who was looking for instrumentals on an upcoming album. Edsclusive claims that Fat Joe picked out the beat as being hot before the rest of the song was created. See Tom Centeno, "How Miami's Edsclusive Helped Produce One of the Summer's Hottest Singles," Miami New Times (June 16, 2016), https://www.miaminewtimes.com/music/how-miamis-edsclusive-helped-produce-one-of-the-summers-hottest-singles-8527786.

74.     Edsclusive also claims that *before* Infared wrote the hook that Edsclusive originally suggested that French Montana be brought in to finish off writing the song because "something was missing." Id. This story is not true, and is in fact impossible, because only the bare beat existed before the hook was written by Plaintiff and Infared. French Montana could not have finished of a nonexistent song.

75.     Infared admits in a 2016 interview that Edsclusive's beat was the initial seed he brought to Circle House, and that the song was created using that beat in one day at Circle House, including the hook, pre-hook, and the verses; neither Edsclusive nor Fat Joe were present. See "Infared Speaks On creating the hook on Fat Joe & Remy Ma's "All The Way Up,"

Report        Card        Radio        -        YouTube        (Oct.        17,        2016),
https://www.youtube.com/watch?v=cSL89zOiCnc. The beat alone had no lyrics, vocal melody,
or flow of the lyrical cypher.

76.      Note that Edsclusive's claim that French Montana had some role in writing the
part he raps is also totally false; Plaintiff wrote it on his own and by himself at Circle House
contemporaneous with the creation of the hook.

77.      What makes Edsclusive's statements even more bizarre is that he knows Plaintiff
well and, having heard the unfinished version, would have known that Plaintiff performed on it.
They extensively collaborated around 2014 and early 2015 for approximately one year, while
Edsclusive was unknown and struggling, with Fly Havana helping Edsclusive stay afloat.

78.      This is a picture of them together from this time period:



**Infared Lies to An Interviewer to Avoid Crediting Fly Havana in Late 2016**

79.      Some time around October 16, 2016, Infared gave an interview to Report Card
Radio, an entertainment YouTube channel, at Circle House studios about how he allegedly

created the hook for "All the Way Up." <u>See</u> "Infared Speaks On creating the hook on Fat Joe & Remy Ma's "All The Way Up," Report Card Radio - YouTube (Oct. 17, 2016), https://www.youtube.com/watch?v=cSL89zOiCnc. Plaintiff only recently became aware of this interview.

80.    Infared said that he had just been signed by Reach Music for a two year deal and had already gotten a big chunk of money from the song.

81.    He confirmed that the song was almost entirely made in the Circle House studio in one day. Infared said that Fat Joe had, a few days prior to that session, called him to Cool & Dre's studio and had him listen to Edsclusive's work. Infared picked two beats out and took them with him.

82.    Infared said that three days later he was at Circle House, and that the engineer there started playing the beat as soon as Infared was in the vocals booth and the words "nothing can stop me I'm all the way up" just came out of him unbidden. He completely omitted that the line came from a conversation with Plaintiff, instead taking all credit for himself.

83.    He then said of the song's success "It went Platinum in four months, so that's big. A lot of people don't go platinum these days . . . for that to go platinum is like huge, is like big for hip-hop, is big for me, for Joe, for Remy, for Edsclusive, and everybody that has something to do with the record." Of course, it was not big for Fly Havana, who Infared cheated out of credit and compensation and then continued to cover it up in the interview he was giving.

84.    Infared was then asked about Miami artists who were good, and who he was collaborating with. Infared then listed artists in the Miami hip hop community, taking great pains to avoid any mention of Fly Havana despite Plaintiff having collaborated on the song he was being interviewed about ("All the Way Up") in the very studio he was being interviewed in (Circle House). This omission is glaring.

85.     Infared also admitted in the interview that the songs he creates are collaborations. He stated that independent portions contributed by one songwriter or another are not important, what is important is "a collaboration of talent working together doing one [song]."

86.     Infared also said that people in the hip-hop community should not fight with each other because: "We black. You know, at the end of the day we black people. You know, going against each other, with what's going on in the communities, I think they [other rappers] should just you know squash the beef and move on and continue to make good music." Apparently, Plaintiff's blackness mattered was irrelevant when Infared stood to financially benefit.

## Confrontation with French Montana

87.     In 2017 Plaintiff was at Legacy Studio, next to DJ Khaled's Studio in Miami.

88.     Plaintiff saw that French Montana was there and introduced himself. French Montana was on the other side of a fence and was going to come around to take a picture.

89.     Plaintiff said, "Yo, I'm the guy who wrote your part in 'All the Way Up.'"

90.     At this point, French Montana went silent, did not deny what Plaintiff said, refused to take a picture, and retreated backward on the other side of the fence.

91.     It was apparent that, until that very moment, French Montana had not actually known who had written the part he performed and took credit for on "All the Way Up."

## Negotiations at Roc Nation, Which Signed Fat Joe in 2017

92.     In late 2017, Fly Havana interviewed with Roc Nation (Jay-Z's label) for four days in Manhattan, meeting executives and industry insiders. He was introduced to Roc Nation by Jay-Z's good friend Memphis Bleek.

93.     Plaintiff's authorship of "All the Way Up" was discussed in these meetings. Also present was DJ Rel Carter, Jay-Z's nephew, who does A&R for the label.

94.     Everyone at Roc Nation knows that Plaintiff had a huge hand in writing "All the Way Up," but everyone has avoided crediting him.

## Confrontation with Infared

95.     In Fall 2018, Plaintiff was at a club in South Beach called Mr. Jones. While there he saw Infared. Infared came over to Mr. Elliott as if they were friends and kept trying to insinuate that everything was cool. Infared's African friend was with him.

96.     However, Mr. Elliott knew that Infared had gotten paid and credited on "All the Way Up" while Plaintiff had been excluded.

97.     Elliott responded to Infared that everything was not cool, that Infared had backstabbed him, took the song, took his money, took his credit, and cut him out.

98.     Infared responded, pointing to a friend, saying "my shooter's right here," threatening to have Plaintiff shot.

99.     The conversation was brief but tense, and ended shortly thereafter as Plaintiff feared for his life.

## Success of "All the Way Up"

100.     As time went on, Mr. Elliott saw multiple Defendants taking credit for writing and producing "All the Way Up," despite the fact that he knew he had actually done much of the writing and production.

101.     Note that Fat Joe repeatedly affirmed that Mr. Elliott had written the song— including on the face of the check Fat Joe signed and at the show in Fort Lauderdale—and never in any way repudiated his authorship of the composition and sound recording. No one has denied that Plaintiff co-authored the song.

102.   "All the Way Up" now has hundreds of millions of views on YouTube, went double platinum, won awards with BMI, and has also been made into at least 6 remixes by top industry figures such as Jay-Z, Snoop Dog, and The Game. This song revitalized Fat Joe's flagging career, and Jay-Z's label Roc Nation signed Fat Joe in early 2017 because of the success of "All the Way Up."

103.   Infared stated in the interview with Report Card Radio that he already got a good chunk of cash as of October 2016 and that everyone credited on the song is doing "real good" and "it's a blessing." He also stated the "success is incredible" and that it is an undeniable hit. Fat Joe and the others credited on the song have echoed this sentiment.

104.   Yet, Mr. Elliott has not seen an iota of credit and no further compensation since the IHOP meeting on March 14, 2016.

105.   All authors of the final version of "All the Way Up" intended that their contributions be merged into an inseparable song and to jointly own the song. ***All*** those who authored the song deserve credit. But while Mr. Eilliott simply wants everyone to get their fair share, Defendants have sought to cut Plaintiff out to increase their own take.

106.   As a joint author of a joint work, Plaintiff has an undivided, equal authorship and/or ownership interest in "All the Way Up" (composition and sound recording).

107.   Under the Copyright Act, co-authors and co-owners must ***always*** properly credit the other co-authors, and also account to their co-authors and co-owners for the monies derived from the exploitation of the copyright.

108.   Here, the other co-authors and co-owners never properly credited Mr. Elliott as an author, owner, and producer, including when they filed numerous copyright registrations for the released versions of "All the Way Up":

    a.   August 16, 2016 - PA0002040670 (Single)

    b.   September 13, 2016 - PA0002044244 (Single)

    c.   March 6, 2017 - PA0002072843 (on album Plata O Promo)

    d.   July 28, 2017 - PA0002085385 (on album Plata O Plomo)

109.    The authors listed on these applications are: Joseph Cartagena, Reminisce Smith, Shandel Green, Edward Davadi, Marcello Valenzano, Andre Lyon, and Karim Kharbouch. Note that Kharbouch is not included as an author on the August 16, 2016 and July 28, 2017 registrations. Various entities are also listed as copyright claimants, most likely through purported transfers of ownership.

110.    These same authors and entities are listed on the performing rights organizations' registrations for the song (BMI and ASCAP).

111.    Because Mr. Elliott is not being acknowledged, credited, or compensated by his co-authors and co-owners as a co-author/author and/or co-owner/owner he is bringing this action for declaration of joint authorship/authorship and/or declaration of joint ownership/ownership of his shares in both the composition and sound recording for all "All the Way Up."

112.    Plaintiff contends that a great deal of the composition (music and lyrics) and sound recording (as a producer and writer) were created by him and that his authorship and ownership share determinations must be determined by a jury.

113.    Plaintiff notes that it appears from the claimants on the copyright registrations filed by Defendants that his alleged co-authors have attempted to divide up, assign, and/or contract away his shares of "All the Way Up" without his permission—thereby effectively extinguishing his credit and authorship. Any such division, contract, or transfer of Plaintiff's rights—especially to the extent they attempt to transfer his ownership of the song—are invalid as they attempt to transfer rights the Defendants never owned.

114.    Note that there was never a preexisting agreement, ***before*** the song's creation and release, to which Mr. Elliott was a party which delineated the respective authorship and ownership shares in the song between the co-authors.

115.    His interest in the song vested at the creation of the joint work "All the Way Up," as did the interests of all authors of the song, solely by operation of the Copyright Act's default authorship/ownership rules, See, e.g., 1976 Copyright Act, § 101, 201. His shares of authorship and/or ownership in the composition and sound recording in "All the Way Up" must be determined by a jury pursuant to the Copyright Act.

116.    In addition to the federal declaratory authorship and ownership claims being brought, Plaintiff is also bringing state law causes of action for damages including but not limited to an accounting, constructive trust, unjust enrichment, fraud, conversion, and moneys had and received. Defendants have received and benefitted from monies that are rightfully Plaintiff's, and have also deprived him of enjoying the success and notoriety as an author of a worldwide hit.

117.    In addition, Fat Joe and Infared's egregious misconduct goes far beyond simply failing to properly give credit and ownership on a song. It is now apparent that Fat Joe was blatantly lying (with Infared's participation) when he indicated repeatedly in early-to-mid 2016 (on the phone and at the IHOP) to Mr. Elliott that (1) he would give Plaintiff ***some*** money upfront, (2) he would provide ***more*** money later as the song earned income, (3) he did not have additional money for Elliott at the moment, (4) that the co-authors were not making that much money on the song, and (5) that he was going to be extensively working with Elliott to produce more hits.

118.    It is further apparent that Fat Joe was working with Infared to ensure that Plaintiff was never properly credited or compensated, as Infared always knew that Plaintiff was an author.

119.    Infared (aka Green) sat with Plaintiff and wrote and recorded on the song with him at Circle House studio in late 2015. Infared never intended to credit Plaintiff. Infared then took the song to Fat Joe, who had the final version created. Fat Joe later acknowledged to Plaintiff personally, both orally and in writing, that he was an author of the song. Yet, despite both Infared and Fat Joe knowing that Plaintiff was an author, Fat Joe (with Infared's knowledge and participation) made false representations to Plaintiff (on March 6, March 14, late March, and May 26, 2016) to deceive Plaintiff, take his money and credit, relax his vigilance, and to obtain his signature on a memo Plaintiff was not allowed to retain (that was allegedly supposed to protect Elliott's rights and allow Fat Joe and Plaintiff to work together).

120.    At all points Fat Joe only intended to give Mr. Elliott the smallest fraction of his due in order to gain Plaintiff's trust, and never intended to fully compensate him, credit him, and work with Plaintiff. Fat Joe and Infared's intent was at all times to take Plaintiff's credit and share of the compensation.

121.    Afterwards, everyone who collaborated on the song with him went dark and blacklisted him.

122.    These were all overt acts taken to defraud Plaintiff. Other overt acts in furtherance of this fraud were perpetrated in 2016, 2017, and 2018 when Fat Joe and Infared caused Plaintiff to be omitted as an author/owner of the song anywhere in the world, including on all registrations filed on their behalf with performing rights organization, the Copyright Office, labels, imprints, distributors, those who administer copyrights, and elsewhere. They did this for the purpose of taking Plaintiff's credit and compensation for themselves.

123.    Fat Joe was preying on a struggling, inexperienced artist. Mr. Elliott relied to his detriment on Fat Joe's 2016 statements regarding providing Plaintiff additional and continuing

compensation, and also providing Plaintiff a career in the music industry and maintaining a working relationship with Plaintiff in the music industry.

124.    Had Mr. Elliott known that Fat Joe was playing him for a fool—and never intended to follow through on any of his representations—Elliott would never have taken the partial payment of $5,000 or signed any document. Had Plaintiff known that he was being lied to he would have been able to take corrective action to protect his rights when the song was initially being released.

125.    As a result of his justifiable reliance on these false statements, Plaintiff was deprived of credit and compensation for a hit song known across the world, which would not only have provided him substantial income, but would have launched a successful music career as it did for defendant Edsclusive who was not established before "All the Way Up."

126.    Plaintiff is requesting that defendants Infared and Fat Joe be found liable for fraud and civil conspiracy (along with any other entities the two own and/or control including but not limited to Mr. Green Music, Sneaker Addict Touring, Joey and Ryan Music, Terror Squad Entertainment, Terror Squad Productions, and RNG), as well as punitive damages.

127.    Predatory, cheating conduct is rampant in the entertainment business, and a strong message must be sent to those who would seek to cut rightful authors out of receiving their fair share. Credit must be given where it is due, and those who deliberately seek to take another's work and compensation should be punished severely, including as a deterrent to stamp out such misconduct. This conduct is intentional, outrageous, reckless, and/or reprehensible.

128.    Based upon the above allegations, Plaintiff respectfully requests declaratory judgment under the Copyright Act that he has joint authorship and ownership in the composition and sound recording of "All the Way Up," as well as relief under state law causes of action.

129.    As a result of Defendants' actions and omissions, Plaintiff is entitled to remedies of including but not limited to:

    a.  Declaratory Judgment of his joint authorship/authorship and/or joint ownership/ownership in the composition and sound recording of "All the Way Up".

    b.  Compensation in the form of royalties, licensing fees, concert revenues, advertising, and any other monies accrued as a result of the exploitation of "All the Way Up"

    c.  Compensation and equitable relief to correct his lack of credit

    d.  Compensation for lost career opportunities

    e.  Attorney's cost and fees under Section 505 of the Copyright Act

    f.  Punitive and exemplary damages for Defendants' outrageous, intentional, and fraudulent behavior.

    g.  Any other relief appropriate under the Copyright Act, and/or equitable relief or remedies that the Court deems just and necessary.

*****

# Parties

## Plaintiff Eric Elliott (p/k/a Fly Havana)

130.    Plaintiff is a resident of Miami, FL.

131.    Plaintiff co-wrote "All the Way Up" in late 2015, but was not properly credited or compensated.

## Defendant Josepha Cartagena (p/k/a Fat Joe)
### Joey and Ryan Music
### Sneaker Addict Touring LLC
### Terror Squad Productions, Inc.
### Terror Squad Entertainment
### RNG (Rap's New Generation)

132.    Defendant Joseph Cartagena is originally from New York City, and holds himself out to be from New York City, especially when selling and promoting his music.

133.    Defendant Cartagena is a purported author and/or owner of "All the Way Up," and performs on the released version of the song.

134.    Defendant Cartagena (and his alleged co-authors) has extensive connections with this district due to his personal background as a New York City native, as well as because of his profession as a recording artist known for being a figure in the New York hip-hop scene.

135.    He also has significant connections to this district related to the release and exploitation of "All the Way Up," sufficient to confer upon this Court personal jurisdiction over him and to let him and his agents be found in this district, which include not only exploitation, release, and promotion of the song in this district, but also recording and production of the record in New York City.

136.    In early 2017, defendant Cartagena signed with defendant Roc Nation, Jay-Z's label, in New York City because of "All the Way Up"'s success, immediately before the release of the album *Plata O Plomo* on which "All the Way Up" appears.

137.    The contact on the BMI (performing rights society) profile for defendant Cartagena's publishing entity, Joey and Ryan Music, is Jeffrey Einhorn, a Manhattan-based criminal defense attorney employed by the Law Offices of Jeffrey Lichtman. Lichtman is Cartagena's criminal defense attorney.

138.    Cartagena's Joey and Ryan Music transferred some copyright ownership in "All the Way Up" to Warner-Tamerlane, which has an office in this district through which it exploits this song and is registered as a foreign entity with the New York Department of State.

139.    Terror Squad Productions and Terror Squad Entertainment serve as defendant Cartagena's label, and are headquartered in New York and extensively exploit the song in this district.

140.    On information and belief Fat Joe's label RNG, which distributes the song with Empire, is headquartered in in this district. In addition, his company Sneaker Addict Touring is also believed to be headquartered in this district, and exploits the song here.

141.    Defendant Cartagena is also a client of Reach Music Publishing, which has exploited the song through its office and companies registered in this district.

### Defendant Karim Kharbouch (p/k/a French Montana)
Excuse My French Music
Excuse My French Music II

142.    Defendant Kharbouch is a recording artist who is from New York City and is believed to be a citizen of New York, but also has residences in New Jersey and California.

143.    Defendant is a purported author and/or owner of "All the Way Up."

144.    Defendant (and his purported co-authors) has extensive connections with this district due to his profession and personal background.

145.    Defendant has significant connections to this district related to the release and exploitation of "All the Way Up," sufficient to confer upon this Court personal jurisdiction over him and to let him and his agents be found in this district

146.    Defendant's publishing entities Excuse My French Music and Excuse My French Music II have their contact information on the performing rights organization ASCAP listed as Sony/ATV Allegro and Sony/ATV Tunes LLC, subsidiaries of industry leader defendant Sony/ATV Music Publishing which is headquartered in Manhattan, through which Defendant exploits this song in this district.

## DEFENDANT SHANDEL GREEN (P/K/A INFARED)
### MR. GREEN MUSIC

147.     Defendant Green is a recording artist who is from New York City, and also resides in Florida.

148.    Defendant is a purported author and/or owner of "All the Way Up."

149.    Defendant (and his purported co-authors) have extensive connections with this district due to his profession and personal background.

150.    Defendant has significant connections to this district related to the release and exploitation of "All the Way Up," sufficient to confer upon this Court personal jurisdiction over him and to let him and his agents be found in this district

151.    On information and belief Defendant's publishing entity Mr. Green Music, which receives revenue for the exploitation of the song, is administered and run from this district.

152.    Defendant is also a client of Reach Music Publishing, which has exploited the song through its office and companies registered in this district.

## DEFENDANT REMINISCE SMITH MACKIE (P/K/A REMY MA)
### REMYNISCE MUSIC

153.    Reminisce Smith Mackie is from New York City, and is a resident of this district.

154.    Defendant was a member of Fat Joe's New York group, Terror Squad, and is a popular recording artist.

155.    Defendant is a purported author and/or owner of "All the Way Up," and performs on the released version of the song.

156.    Defendant (and her purported co-authors) has extensive connections with this district due to her personal background, as well as because of her profession as a recording artist.

157.    She also has significant connections to this district related to the release and exploitation of "All the Way Up," sufficient to confer upon this Court personal jurisdiction over her and to let her and her agents be found in this district

158.    She has a publishing imprint by the name of Remynisce Music, which is headquartered in this district and owns the copyright in the song. Furthermore, Remynisce Music's agent is listed as BMG Rights Management on the copyright registrations, which is also headquartered in this district.

159.    Defendant is also a client of Reach Music Publishing, which has exploited the song through its office and companies registered in this district.

**DEFENDANT** MARCELLO VALENZANO (P/K/A COOL)
  DADE CO. PROJECT MUSIC, INC.

160.    Defendant Valenzano is a producer and songwriter, and he and his partner Andre Lyon have a studio in Miami.

161.    It is believed that Valenzano and Lyon operate as a partnership, and are each general partners. They are being sued in their individual capacities and as partners.

162.    Defendant Valenzano has a longstanding relationship with Fat Joe since 2001.

163.    Defendant is a purported author and/or owner of "All the Way Up."

164.    Defendant (and his purported co-authors) has extensive connections with this district due to his profession as a producer.

165.    Defendant has significant connections to this district related to the release and exploitation of "All the Way Up," sufficient to confer upon this Court personal jurisdiction over him and to let him and his agents be found in this district

166.    Defendant Dade Co. Music Project Inc., a publishing entity for defendant Valenzano, lists New York registered and headquartered defendant Universal Music - Z Tunes LLC as its contact with the performing rights organization BMI.

### Defendant Andre Lyon (p/k/a Dre)
Po Folks Music

167.    Defendant Lyon is a producer and songwriter, and he and his partner Valenzano have a studio in Miami.

168.    It is believed that Valenzano and Lyon operate as a partnership, and are each general partners. They are being sued in their individual capacities and as partners.

169.    Defendant Lyon has a longstanding relationship with Fat Joe since 2001.

170.    Defendant is a purported author and/or owner of "All the Way Up."

171.    Defendant (and his purported co-authors) has extensive connections with this district due to his profession as a producer.

172.    Defendant and his publishing entity Po Folks has significant connections to this district related to the release and exploitation of "All the Way Up," sufficient to confer upon this Court personal jurisdiction over him and to let him and his agents be found in this district

173.    It is believed that defendant Lyon also uses lists New York registered defendant Universal Music - Z Tunes LLC as its contact with the performing rights organization BMI, which is headquartered in Manhattan.

**Defendant Edward F. Davadi, Jr. (p/k/a Edsclusive)**

174.   Defendant Davidi is a producer originally from New Orleans and now based out of Miami, FL.

175.   Defendant worked intensively with Plaintiff in 2014 and early 2015 on music.

176.   In 2015, Davadi allegedly was introduced to Fat Joe, and also then allegedly provided numerous beats to Infared prior to the session at Circle House studios.

177.   Defendant is a purported author and/or owner of "All the Way Up."

178.   Defendant (and his purported co-authors) has extensive connections with this district due to his profession as a producer.

179.   Defendant has significant connections to this district related to the release and exploitation of "All the Way Up," sufficient to confer upon this Court personal jurisdiction over him and to let him and his agents be found in this district

180.   Defendant is also a client of Reach Music Publishing, which has exploited the song through its office and companies registered in this district.

**Warner-Tamerlane Publishing Corp.**
**Warner/Chappell Music, Inc.**

181.   The Warner defendants purport to own part of "All the Way Up" and administer the copyrights for many of the other defendants.

182.   Defendants are registered to do business in this State, and have offices in this district, through which they exploit the song.

**BMG Rights Management (US) LLC (d/b/a BMG Platinum Songs US)**

183.    Defendant BMG Rights Management purports to be an owner of the song and also administers the copyrights for Defendants.

184.    Furthermore, BMG is listed as the agent for Remynisce Music, the publishing entity for New York-based artist Remy Ma, on the copyright registrations.

185.    BMG is also an agent for Cuts of Reach Music on the copyright registrations.

186.    BMG is headquartered in this district and extensively exploits the song in and from this district.

**Sony/ATV Allegro**
**Sony/ATV Tunes LLC**
**Sony/ATV Music Publishing, Inc.**

187.    The Sony Defendants are headquartered in this district, and are listed agents for defendant French Montana's publishing entities on ASCAP.

188.    They are also publishers of the song.

189.    The Sony defendants exploit the song in this district, including on behalf of defendant French Montana.

**Reach Music Publishing Inc.**
**Reach Global Inc.**
**Songs of Reach Global**
**Cuts of Reach Music**

190.    The Reach defendants purport to own copyrights in the song, maintain offices in this district, and heavily exploit the song here. They also publish the song.

191.    Reach represents New York artists Fat Joe and Remy Ma, as well as Edsclusive.

192.    Songs of Reach Global lists New York-based BMG as its agent on the copyright registrations.

**FIRST N PLATINUM PUBLISHING**
**FIRST N GOLD PUBLISHING, INC.**
**KOBALT SONGS MUSIC PUBLISHING**
**KOBALT MUSIC PUBLISHING AMERICA, INC.**

193.    First N Platinum and First N Gold purport to be owners of the copyright, as does Kobalt Songs Music Publishing which also administers the copyrights and acts an agent for these entities.

194.    Kobalt Songs Music Publishing is headquartered in this district, and through Kobalt all four entities exploit the copyright in and from this district.

**SONGS OF UNIVERSAL INC.**
**UNIVERSAL MUSIC-Z TUNES LLC (D/B/A UNIVERSAL MUSIC Z SONGS)**

195.    The Universal defendants publish the song, maintain offices in this district, and extensively exploit the song in this district.

196.    Defendant Z Tunes acts as an agent for defendant Dade Co. Project Music, Inc. as listed on the PRO registrations.

**ROC NATION LLC**
**ROC NATION MANAGEMENT LLC**

197.    Roc Nation is a label headquartered in this district, which signed Fat Joe in early 2017.

198.    Roc Nation website states of Fat Joe:

> New York legend and cultural icon, Fat Joe released his joint album with fellow legend and icon, Remy Ma, titled Plata o Plomo, due February 17th via RNG / EMPIRE. Following the immense success of their GRAMMY-nominated "All The Way Up" single (Best Rap Performance and Best Song) and "Cookin'" single, they also released the video for their single, "Money Showers," which has over 12 million streams to date. This is Fat Joe's first release after joining the Roc Nation management family.

Roc Nation, https://rocnation.com/fat-joe/.

199.    Roc Nation heavily exploits the song in and from this district.

200.    Furthermore, Plaintiff interviewed with Roc Nation in this district for several days in late 2017. Friends and relatives of Defendants' principal, Shawn Carter (Jay-Z), all indicated they were well aware of Plaintiff's role in writing "All the Way Up."

201.    However, Defendants continue to exploit the song without providing credit or compensation to Plaintiff.

**EMPIRE DISTRIBUTION, INC.**

202.     Empire distributes and exploits "All the Way Up," and does so in part through an office and personnel in this district.

203.    It distributes the song in connection with defendant RNG, which is also believed to be headquartered in this district.

*****

# Jurisdiction & Venue

204.    This action is brought, and subject matter jurisdiction lies within this Court, pursuant to 28 U.S.C. §§ 1331 and 1338 and 2201. This Court has federal question jurisdiction in this matter in that Plaintiffs seek declaratory and injunctive relief against the defendants named herein, including but not limited to under Sections 501 through 505 of the Copyright Act of 1976, 17 U.S.C. § 101 et seq. The Court has pendant/supplemental jurisdiction over any claims asserted herein which arise under state law in that such claims flow from a common nucleus of operative fact.

205.    Venue lies within this Court pursuant to 28 U.S.C. Sections 1391(b)(1) – (3), 1391(c), 1391(d), and 1400(a) in that all defendants reside in this venue and/or they or the agents are found in this jurisdiction and/or they or their agents are subject to personal jurisdiction in this District because they have sufficient minimum contacts with this jurisdiction related to the exploitation of Plaintiff's copyrights in "All the Way Up."  Furthermore, numerous Defendants who control the conduct at issue are citizens of this district and/or are headquartered here including but not limited to BMG Rights Management (US) LLC, Kobalt Songs Music Publishing, and Sony/ATV Music Publishing; all other Defendants have consistent contacts with defendant entities and their agents in this District (including related to the allegations in this complaint) and all defendants can be found in this district. Those defendants, subsidiaries of huge multination entertainment corporations, act as agents for all the other defendants.

206.    The song at issue has been sold repeatedly within this district, a song which all the Defendants claim to have an interest in. In addition, the song is also known as "New York City's hardest radio record in years." See Tom Centeno, "How Miami's Edsclusive Helped Produce One of the Summer's Hottest Singles," Miami New Times (June 16, 2016),

https://www.miaminewtimes.com/music/how-miamis-edsclusive-helped-produce-one-of-the-summers-hottest-singles-8527786.

207.   All defendants have earned monies not only as a result of the exploitation of the song in this district, but also because it was and is recorded, produced, promoted, administered and distributed from this district.

208.   Note that because New York City is a hub of the entertainment industry all of the defendant companies and artists have extensive connections to this district, including related to the exploitation of "All the Way Up" in this district. This is especially so because Fat Joe and Remy Ma are considered to be part of the New York City hip-hop community.

209.   The contact on the BMI (performing rights society) profile for defendant Cartagena's publishing imprint, Joey and Ryan Music, is Jeffrey Einhorn, a Manhattan-based criminal defense attorney employed by the Law Offices of Jeffrey Lichtman. Lichtman is Cartagena's criminal defense attorney.

210.   Defendant Cartagena is signed by the label Roc Nation LLC, which is headquartered in Manhattan, and distributes the album *Plata O Plomo* which includes "All the Way Up." Roc Nation met with Plaintiff 2017 in Manhattan for several days, and Plaintiff's authorship of "All the Way Up" was discussed. Present were Memphis Bleek, a good friend of Jay-Z, and DJ Rel Carter, Jay-Z's nephew.

211.   Cartagena's imprint Joey and Ryan transferred some copyright ownership in "All the Way Up" to Warner-Tamerlane, which has an office in this district and is registered as a foreign entity with the New York Department of State.

212.   Empire Distribution Inc., which distributed the single when it was first released, has an office in New York City, and on information and belief Fat Joe's label RNG is headquartered in New York City.

213.    Defendant Dade Co. Music Project Inc., a publishing entity for defendant Valenzano, lists defendant Universal Music - Z Tunes LLC as its contact, which is a New York corporation headquartered in Manhattan.

214.    The contact for defendant Songs of Reach Global is defendant BMG Rights Management, which is headquartered in New York.

215.    Furthermore copyright registrations indicate that BMG Rights Management was transferred ownership of the song, and is also listed the contact for defendant Remynisce Music and Cuts of Reach Music.

216.    Defendant Reach Music Publishing is a California company which has extensive contacts with New York, has principal officers based in New York, and has engaged for years in extensive litigation in this district. The company has done business from and in this district related to this song, has an office here, and operates through subsidiary companies registered and headquartered in this district, and also counts defendants Cartagena, Edward Davadi, and Reminisce Smith Mackie as clients.

217.    Cartagena's imprint Joey and Ryan transferred some copyright ownership in "All the Way Up" to Warner-Tamerlane Publishing Corp, which has an office in this district and is registered as a foreign entity with the New York Department of State.

218.    Defendant Songs of Universal, Inc. has an office in this district and is registered as a foreign entity with the New York Department of State

219.    Furthermore, "All the Way Up" is distributed by Empire Distribution Inc., which has an office in New York.

220.    Defendant Sony/ATV Tunes LLC and Sony/ATV Allegro are the PRO contact for Excuse My French Music and Excuse My French Music II for "All the Way Up," these companies maintain offices in this district through which they exploit the song.

221.    This district, as opposed to others, is a district where all Defendants are clearly subject to personal jurisdiction and venue.

*****

# Federal Claims for Authorship and Ownership

## Count I – Declaration of Joint Authorship and/or Authorship in the Composition of "All the Way Up"

*Eric Elliott*

*v.*

*Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.;  Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Warner-Tamerlane Publishing Corp.; Warner/Chappell Music, Inc.; BMG Rights Management (US) LLC; Sony/ATV Allegro; Sony/ATV Tunes LLC; Sony/ATV Music Publishing, Inc.; Reach Music Publishing Inc.; Reach Global Inc.; Songs of Reach Global; Cuts of Reach Music; First N Platinum Publishing; First N Gold Publishing, Inc.; Kobalt Songs Music Publishing; Kobalt Music Publishing America, Inc.; Songs of Universal Inc.; Universal Music-Z Tunes LLC; Roc Nation LLC; Roc Nation Management LLC; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Empire Distribution, Inc.*

222.     Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

223.     This request for declaratory relief is being made pursuant to the Copyright Act and 28 U.S.C. § 2201.

224.     A joint work is a collaborative work and is "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." See Copyright Act, § 101, 201.

225.     Musical compositions and sound recordings created by multiple authors are generally joint works due to the inseparable nature of the artists' contributions.

226.     Here, the unfinished version and released version of "All the Way Up" are joint works, and all authors of the composition intended to be joint authors.

227.    Plaintiff, defendant Green, and defendant Davidi, as well all other putative authors of the composition such as defendant Cartagena,[7] all contributed copyrightable expression to the composition intending that their contributions be merged into an inseparable and intertwined song, as described throughout this complaint.

228.    All of Plaintiff's contributions to the composition are independently copyrightable.

229.    Plaintiff, as a joint author, is entitled to indivisible, equal authorship of a joint work with all his co-authors.

230.    However, Defendants in this case have not properly credited Plaintiff as a co-author of the composition in "All the Way Up." Not only is he not listed on the album credits, but his name is omitted from the numerous copyright registrations filed by Defendants for "All the Way Up." He is also not recognized by any performing rights organization or any entity which distributes the income generated by the song.

231.    Plaintiff therefore requests that this honorable court declare him a joint author of all versions of the composition of "All the Way Up," determine his authorship share and the shares of the other bona fide co-authors, and order Defendants to fix all credits for the song as well as modify/amend the copyright registrations to reflect Plaintiff's joint authorship. Plaintiff requests all other equitable relief that is necessary and/or just.

232.    If for any reason Plaintiff is not determined to be a joint author of "All the Way Up," then Plaintiff alternatively requests that this honorable court declare that he is an author of

---

[7] The number and identity of the co-authors and/or authors of "All the Way Up" will be addressed in discovery. Plaintiff has no way of knowing at this point if all the alleged co-authors actually contributed independently copyrightable expression and are true joint authors. It appears that Defendants attempted to contractually divide the authorship of the song amongst themselves (including Plaintiff's share), with some alleged authors being given more credit than others—including some authors who likely did no writing on the song but were included because of their reputation. In the joint authorship determination, all bona fide joint authors share equally in the authorship of the song; this will result in Plaintiff receiving a share equal to all other bona fide authors, some other authors having their authorship shares reduced, some having their authorship shares increased, and other alleged authors being excluded if they did not contribute any copyrightable expression to the song.

his contributions in "All the Way Up," determine his authorship share and the shares of the other bona fide authors, and order Defendants to fix all credits for the song as well as modify/amend the copyright registrations to reflect Plaintiff's authorship. Plaintiff requests all other equitable relief that is necessary or just.

233.    Prior to the creation of "All the Way Up," Plaintiff was never part of any agreement or contract which governed the apportionment of authorship in the composition; the default copyright authorship rules apply. To the extent that the Defendants had agreements among themselves, those agreements have no legal effect because they attempted to give away Plaintiff's rights when he was not a party to any such agreement.

234.    Because the authors' contributions and rights in the song are interdependent the authorship determination for all authors on the song must be done from scratch pursuant to the default authorship rules to determine Plaintiff's authorship share, including because on information and belief not all of the putative authors listed on the copyright registrations actually contributed copyrightable expression to the work and are legally entitled to be credited as co-authors and/or authors.

235.    Restated, Plaintiff contributed significant copyrightable expression to all versions and iterations of the composition of "All the Way Up," has authorship in that composition, and must be credited and declared an author of one type or another after a jury determination.

236.    At no point have the other authors and/or co-authors of the "All the Way Up" repudiated Plaintiff's joint authorship and/or authorship of the composition.

237.    Plaintiff notes that he has been severely damaged by Defendants' negligent failure to properly credit him as an author. As a struggling songwriter, being listed as the co-writer of a worldwide hit song is a major accomplishment and would have significantly benefited his career. Defendants' actions have deprived him of this credit, making this request for declarative relief

particularly necessary and just. Plaintiff is bringing claims *infra* for negligence against all other authors and putative authors of "All the Way Up" for excluding him from being recognized as an author, and therefore causing significant damage to his career.

*****

# COUNT II – DECLARATION OF JOINT OWNERSHIP AND/OR OWNERSHIP IN COMPOSITION OF "ALL THE WAY UP"

*Eric Elliott*

*v.*

*Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.; Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Warner-Tamerlane Publishing Corp.; Warner/Chappell Music, Inc.; BMG Rights Management (US) LLC; Sony/ATV Allegro; Sony/ATV Tunes LLC; Sony/ATV Music Publishing, Inc.; Reach Music Publishing Inc.; Reach Global Inc.; Songs of Reach Global; Cuts of Reach Music; First N Platinum Publishing; First N Gold Publishing, Inc.; Kobalt Songs Music Publishing; Kobalt Music Publishing America, Inc.; Songs of Universal Inc.; Universal Music-Z Tunes LLC; Roc Nation LLC; Roc Nation Management LLC; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Empire Distribution, Inc.*

238.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

239.    This request for declaratory relief is being made pursuant to the Copyright Act and 28 U.S.C. § 2201.

240.    A joint work is a collaborative work and is "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." See Copyright Act, § 101, 201.

241.    Musical compositions and sound recordings created by multiple authors are generally joint works due to the inseparable nature of the artists' contributions.

242.    Here, the unfinished version and released version of "All the Way Up" are joint works, and all authors of the composition intended to be joint authors.

243.    Plaintiff, defendant Green, and defendant Davidi, as well all other putative authors of the composition such as defendant Cartagena,[8] all contributed copyrightable

---

[8] The number and identity of the co-owners and/or owners of "All the Way Up" will be addressed in discovery. Plaintiff has no way of knowing at this point if all the alleged co-authors actually contributed independently copyrightable expression and are true joint authors. It appears that Defendants attempted to contractually divide the authorship/ownership of the song amongst themselves (including Plaintiff's share), with some alleged authors/owners being given more credit than others—including some authors/owners who likely did no writing on the song but were included because of their reputation. In the joint authorship/ownership determination, all bona fide joint authors/owners share equally in the authorship/ownership of the song; this will result in Plaintiff receiving a

expression to the composition intending that their contributions be merged into an inseparable and intertwined song, as described throughout this complaint.

244.   All of Plaintiff's contributions to the composition are independently copyrightable.

245.   Plaintiff, as a joint author, is entitled to equal ownership of a joint work with all his co-owners.

246.   However, Defendants in this case have not properly credited Plaintiff as a co-owner of the composition in "All the Way Up." Not only is he not listed on the album credits, but his name is omitted from the numerous copyright registrations filed by Defendants for "All the Way Up." He is also not recognized by any performing rights organization or any entity which distributes the income generated by the song.

247.   Plaintiff therefore requests that this honorable court declare him a joint owner of all versions of the composition of "All the Way Up," determine his ownership share and the shares of the other bona fide co-owners (either original or by transfer), and order Defendants to fix all credits for the song as well as modify/amend the copyright registrations to reflect Plaintiff's joint ownership. Plaintiff requests all other equitable relief that is necessary and/or just.

248.   If for any reason Plaintiff is not determined to be a joint owner of "All the Way Up," then Plaintiff alternatively requests that this honorable court declare that he is an owner of his contributions in "All the Way Up," determine his ownership share and the shares of the other bona fide owners (original or by transfer), and order Defendants to fix all credits for the

---

share equal to all other bona fide authors/owners, some authors/owners having their authorship/ownership shares reduced, some having their authorship/ownership shares increased, and other alleged authors/owners being excluded if they did not contribute any copyrightable expression to the song. In addition, transfers of ownership in the song would have necessarily transferred ownership of Plaintiff's share, and thus are at least in part invalid.

song as well as modify/amend the copyright registrations to reflect Plaintiff's ownership. Plaintiff requests all other equitable relief that is necessary or just.

249.    Prior to the creation of "All the Way Up," Plaintiff was never part of any agreement or contract which governed the apportionment of ownership in the composition; the default copyright ownership rules apply. To the extent that the Defendants had agreements among themselves, and/or purported to transfer shares of the song, those agreements and/or transfers have no legal effect because they attempted to give away Plaintiff's rights when he was not a party to any such agreement and/or transfer.

250.    Because the authors' contributions and rights in the song are interdependent the authorship and/or ownership determination for all authors on the song must be done from scratch pursuant to the default authorship/ownership rules to determine Plaintiff's ownership share, including because on information and belief not all of the putative authors listed on the copyright registrations actually contributed copyrightable expression to the work and are legally entitled to be credited as co-owners and/or owners.

251.    Restated, Plaintiff contributed significant copyrightable expression to all versions and iterations of the composition of "All the Way Up," has ownership in that composition, and must be credited and declared an owner of one type or another after a jury determination.

252.    At no point have the other owners and co-owners of "All the Way Up" repudiated Plaintiff's joint authorship and/or authorship of the composition.

253.    As a result of Defendants' failure to recognize Plaintiff as a joint owner or owner of the composition of "All the Way Up," Plaintiff has suffered significant damage, including Defendants holdings themselves out as the owners of Plaintiff's shares of the song and taking the profit derived from those shares for themselves. As a result, Plaintiff is bringing claims, *inter alia*, for accounting, constructive trust, unjust enrichment, quantum meruit, conversion, moneys had

and received, breach of fiduciary duties, and negligence. Plaintiff is owns a share of all profits directly or indirectly related to Defendants' exploitation of the song, and is seeking those profits via applicable state law causes of action.

*****

## COUNT III – DECLARATION OF JOINT AUTHORSHIP AND/OR AUTHORSHIP IN THE SOUND RECORDING OF "ALL THE WAY UP"

*Eric Elliott*

*v.*

*Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.; Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Warner-Tamerlane Publishing Corp.; Warner/Chappell Music, Inc.; BMG Rights Management (US) LLC; Sony/ATV Allegro; Sony/ATV Tunes LLC; Sony/ATV Music Publishing, Inc.; Reach Music Publishing Inc.; Reach Global Inc.; Songs of Reach Global; Cuts of Reach Music; First N Platinum Publishing; First N Gold Publishing, Inc.; Kobalt Songs Music Publishing; Kobalt Music Publishing America, Inc.; Songs of Universal Inc.; Universal Music-Z Tunes LLC; Roc Nation LLC; Roc Nation Management LLC; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Empire Distribution, Inc.*

254.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

255.    This request for declaratory relief is being made pursuant to the Copyright Act and 28 U.S.C. § 2201.

256.    A joint work is a collaborative work and is "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." See Copyright Act, § 101, 201.

257.    Musical compositions and sound recordings created by multiple authors are generally joint works due to the inseparable nature of the artists' contributions.

258.    Here, the unfinished version and released version of "All the Way Up" are joint works, and all authors of the sound recordings intended to be joint authors.

259.    When Plaintiff refers to his authorship in the subject sound recording he is referring to all aspects of that recording, including the production, executive production, and engineering he did on the recording.

260.   Plaintiff, defendant Green, and defendant Davidi, as well all other putative authors of the sound recording such as defendant Cartagena,[9] all contributed copyrightable expression to the sound recording intending that their contributions be merged into an inseparable and intertwined song, as described throughout this complaint.

261.   All of Plaintiff's contributions to the sound recording are independently copyrightable.

262.   Plaintiff, as a joint author, is entitled to indivisible, equal authorship of a joint work with all his co-authors.

263.   However, Defendants in this case have not properly credited Plaintiff as a co-author of the sound recording in "All the Way Up." Not only is he not listed on the album credits, but his name is omitted from the numerous copyright registrations filed by Defendants for "All the Way Up." He is also not recognized by any performing rights organization or any entity which distributes the income generated by the song.

264.   Plaintiff therefore requests that this honorable court declare him a joint author of all versions of the sound recording of "All the Way Up," determine his authorship share and the shares of the other bona fide co-authors, and order Defendants to fix all credits for the song as well as modify/amend the copyright registrations to reflect Plaintiff's joint authorship. Plaintiff requests all other equitable relief that is necessary and/or just.

265.   If for any reason Plaintiff is not determined to be a joint author of "All the Way Up," then Plaintiff alternatively requests that this honorable court declare that he is an author of

---

[9] The number and identity of the co-authors and/or authors of "All the Way Up" will be addressed in discovery. Plaintiff has no way of knowing at this point if all the alleged co-authors actually contributed independently copyrightable expression and are true joint authors. It appears that Defendants attempted to contractually divide the authorship of the song amongst themselves (including Plaintiff's share), with some alleged authors being given more credit than others—including some authors who likely did no writing on the song but were included because of their reputation. In the joint authorship determination, all bona fide joint authors share equally in the authorship of the song; this will result in Plaintiff receiving a share equal to all other bona fide authors, some authors having their authorship shares reduced, some having their authorship shares increased, and other alleged authors being excluded if they did not contribute any copyrightable expression to the song.

his contributions in "All the Way Up," determine his authorship share and the shares of the other bona fide authors, and order Defendants to fix all credits for the song as well as modify/amend the copyright registrations to reflect Plaintiff's authorship. Plaintiff requests all other equitable relief that is necessary or just.

266.    Prior to the creation of "All the Way Up," Plaintiff was never part of any agreement or contract which governed the apportionment of authorship in the sound recording; the default copyright authorship rules apply. To the extent that the Defendants had agreements among themselves, those agreements have no legal effect because they attempted to give away Plaintiff's rights when he was not a party to any such agreement.

267.    Because the authors' contributions and rights in the song are interdependent the authorship determination for all authors on the song must be done from scratch pursuant to the default authorship rules to determine Plaintiff's authorship share, including because on information and belief not all of the putative authors listed on the copyright registrations actually contributed copyrightable expression to the work and are legally entitled to be credited as co-authors and/or authors.

268.    Restated, Plaintiff contributed significant copyrightable expression to all versions and iterations of the sound recording of "All the Way Up," has authorship in that sound recording, and must be credited and declared an author of one type or another after a jury determination.

269.    At no point have the other authors and co-authors of the "All the Way Up" repudiated Plaintiff's joint authorship and/or authorship of the sound recording.

270.    Plaintiff notes that he has been severely damaged by Defendants' negligent failure to properly credit him as an author. As a struggling songwriter being listed as the co-writer of a worldwide hit song is a major accomplishment and would have significantly benefited his career.

Defendants' actions have deprived him of this credit, making this request for declaratory relief particularly necessary and just. Plaintiff is bringing claims *infra* for negligence against all other authors and putative authors of "All the Way Up" for excluding him from being recognized as an author, and therefore causing significant damage to his career.

*****

# COUNT IV – Declaration of Joint Ownership and/or Ownership in the Sound Recording of "All the Way Up"

*Eric Elliott*

*v.*

*Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.; Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Warner-Tamerlane Publishing Corp.; Warner/Chappell Music, Inc.; BMG Rights Management (US) LLC; Sony/ATV Allegro; Sony/ATV Tunes LLC; Sony/ATV Music Publishing, Inc.; Reach Music Publishing Inc.; Reach Global Inc.; Songs of Reach Global; Cuts of Reach Music; First N Platinum Publishing; First N Gold Publishing, Inc.; Kobalt Songs Music Publishing; Kobalt Music Publishing America, Inc.; Songs of Universal Inc.; Universal Music-Z Tunes LLC; Roc Nation LLC; Roc Nation Management LLC; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Empire Distribution, Inc.*

271. Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

272. This request for declaratory relief is being made pursuant to the Copyright Act and 28 U.S.C. § 2201.

273. A joint work is a collaborative work and is "prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." See Copyright Act, § 101, 201.

274. Musical compositions and sound recordings created by multiple authors are generally joint works due to the inseparable nature of the artists' contributions.

275. Here, the unfinished version and released version of "All the Way Up" are joint works, and all authors of the sound recording intended to be joint authors.

276. Plaintiff, defendant Green, and defendant Davidi, as well all other putative authors of the sound recording such as defendant Cartagena,[10] all contributed copyrightable

---

[10] The number and identity of the co-owners and/or owners of "All the Way Up" will be addressed in discovery. Plaintiff has no way of knowing at this point if all the alleged co-authors actually contributed independently copyrightable expression and are true joint authors. It appears that Defendants attempted to contractually divide the authorship/ownership of the song amongst themselves (including Plaintiff's share), with some alleged authors/owners being given more credit than others—including some authors/owners who likely did no writing on the song but were included because of their reputation. In the joint authorship/ownership determination, all bona fide joint authors/owners share equally in the authorship/ownership of the song; this will result in Plaintiff receiving a

expression to the sound recording intending that their contributions be merged into an inseparable and intertwined song, as described throughout this complaint.

277.    All of Plaintiff's contributions to the sound recording are independently copyrightable.

278.    Plaintiff, as a joint author, is entitled to equal ownership of a joint work with all his co-owners.

279.    However, Defendants in this case have not properly credited Plaintiff as a co-owner of the sound recording in "All the Way Up." Not only is he not listed on the album credits, but his name is omitted from the numerous copyright registrations filed by Defendants for "All the Way Up." He is also not recognized by any performing rights organization or any entity which distributes the income generated by the song.

280.    Plaintiff therefore requests that this honorable court declare him a joint owner of all versions of the sound recording of "All the Way Up," determine his ownership share and the shares of the other bona fide co-owners (either original or by transfer), and order Defendants to fix all credits for the song as well as modify/amend the copyright registrations to reflect Plaintiff's joint ownership. Plaintiff requests all other equitable relief that is necessary and/or just.

281.    If for any reason Plaintiff is not determined to be a joint owner of "All the Way Up," then Plaintiff alternatively requests that this honorable court declare that he is an owner of his contributions in "All the Way Up," determine his ownership share and the shares of the other bona fide owners (original or by transfer), and order Defendants to fix all credits for the

---

share equal to all other bona fide authors/owners, some authors/owners having their authorship/ownership shares reduced, some having their authorship/ownership shares increased, and other alleged authors/owners being excluded if they did not contribute any copyrightable expression to the song. In addition, transfers of ownership in the song would have necessarily transferred ownership of Plaintiff's share, and thus are at least in part invalid.

song as well as modify/amend the copyright registrations to reflect Plaintiff's ownership. Plaintiff requests all other equitable relief that is necessary or just.

282.    Prior to the creation of "All the Way Up," Plaintiff was never part of any agreement or contract which governed the apportionment of ownership in the sound recording; the default copyright ownership rules apply. To the extent that the Defendants had agreements among themselves, and/or purported to transfer shares of the song, those agreements and/or transfers have no legal effect because they attempted to give away Plaintiff's rights when he was not a party to any such agreement and/or transfer.

283.    Because the authors' contributions and rights in the song are interdependent the authorship and/or ownership determination for all authors on the song must be done from scratch pursuant to the default authorship/ownership rules to determine Plaintiff's ownership share, including because on information and belief not all of the putative authors listed on the copyright registrations actually contributed copyrightable expression to the work and are legally entitled to be credited as co-owners and/or owners.

284.    Restated, Plaintiff contributed significant copyrightable expression to all versions and iterations of the sound recording of "All the Way Up," has ownership in that sound recording, and must be credited and declared an owner of one type or another after a jury determination.

285.    At no point have the other owners and co-owners of "All the Way Up" repudiated Plaintiff's joint authorship and/or authorship of the sound recording.

286.    As a result of Defendants' failure to recognize Plaintiff as a joint owner or owner of the sound recording of "All the Way Up," Plaintiff has suffered significant damage, including Defendants holdings themselves out as the owners of Plaintiff's shares of the song and taking the profit derived from those shares for themselves. As a result, Plaintiff is bringing claims, *inter alia*,

for accounting, constructive trust, unjust enrichment, quantum meruit, conversion, moneys had and received, breach of fiduciary duties, and negligence. Plaintiff is owns a share of all profits directly or indirectly related to Defendants' exploitation of the song, and is seeking those profits via applicable state law causes of action.

*****

# State Law Claims for Monies and Damages

## COUNT V – Accounting

*Eric Elliott*

*v.*

*Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.; Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Warner-Tamerlane Publishing Corp.; Warner/Chappell Music, Inc.; BMG Rights Management (US) LLC; Sony/ATV Allegro; Sony/ATV Tunes LLC; Sony/ATV Music Publishing, Inc.; Reach Music Publishing Inc.; Reach Global Inc.; Songs of Reach Global; Cuts of Reach Music; First N Platinum Publishing; First N Gold Publishing, Inc.; Kobalt Songs Music Publishing; Kobalt Music Publishing America, Inc.; Songs of Universal Inc.; Universal Music-Z Tunes LLC; Roc Nation LLC; Roc Nation Management LLC; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Empire Distribution, Inc.*

287.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

288.    Plaintiff and Defendants are joint authors and joint owners of the composition and sound recording of the joint work "All the Way Up."

289.    As joint authors Plaintiff and Defendants have a fiduciary relationship to each other to account for all profits and monies and share them in parts equal to their share of co-authorship.

290.    Defendants have excluded Plaintiff from receiving any monies related to the exploitation of "All the Way Up," must therefore account to their co-author and owner, and disgorge the profits he is entitled to.

291.    If for any reason plaintiff is determined not to be a joint author and owner of "All the Way Up," but instead an author and owner, Defendants also owe a fiduciary duty to Plaintiff as they are in possession of the monies earned by Plaintiff. They must account for this money and disgorge to him the money he is due.

292.    Note that if some Defendants currently listed on the copyright registrations as authors are determined not to have any authorship in "All the Way Up," they have accrued money that belongs to Plaintiff, owe him a fiduciary duty, and must account for these monies.


*****

# COUNT VI – Constructive Trust

## Eric Elliott

*v.*

*Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.; Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Warner-Tamerlane Publishing Corp.; Warner/Chappell Music, Inc.; BMG Rights Management (US) LLC; Sony/ATV Allegro; Sony/ATV Tunes LLC; Sony/ATV Music Publishing, Inc.; Reach Music Publishing Inc.; Reach Global Inc.; Songs of Reach Global; Cuts of Reach Music; First N Platinum Publishing; First N Gold Publishing, Inc.; Kobalt Songs Music Publishing; Kobalt Music Publishing America, Inc.; Songs of Universal Inc.; Universal Music-Z Tunes LLC; Roc Nation LLC; Roc Nation Management LLC; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Empire Distribution, Inc.*

293.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

294.    Plaintiff is due significant monies from the exploitation of "All the Way Up," and those monies are currently in the possession of Defendants.

295.    Plaintiff asks that all this money, as well as all future monies earned, be held in constructive trust until the appropriate distribution can be determined.

296.    All monies properly due to Plaintiff but not distributed should be distributed and otherwise awarded to Plaintiff.

*****

## COUNT VII – Unjust Enrichment

*Eric Elliott*

*v.*

*Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.;  Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Warner-Tamerlane Publishing Corp.; Warner/Chappell Music, Inc.; BMG Rights Management (US) LLC; Sony/ATV Allegro; Sony/ATV Tunes LLC; Sony/ATV Music Publishing, Inc.; Reach Music Publishing Inc.; Reach Global Inc.; Songs of Reach Global; Cuts of Reach Music; First N Platinum Publishing; First N Gold Publishing, Inc.; Kobalt Songs Music Publishing; Kobalt Music Publishing America, Inc.; Songs of Universal Inc.; Universal Music-Z Tunes LLC; Roc Nation LLC; Roc Nation Management LLC; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Empire Distribution, Inc.*

297.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

298.     To establish unjust enrichment, the plaintiff must establish that the Defendants benefitted, at the plaintiff's expense, and equity and good conscience require restitution.

299.    Plaintiff is an author and owner of the composition and sound recording in "All the Way Up."

300.    Defendants have earned significant monies from the exploitation of the song, a share of which is properly due to Plaintiff, but which they are improperly retaining when the money should be paid to Plaintiff.

301.    Equity and good conscience require that Defendants provide to Plaintiff all monies they earned from Plaintiffs' share of the song.

*****

## COUNT VIII – Quantum Meruit

### *Eric Elliott*

*v.*

*Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.; Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Warner-Tamerlane Publishing Corp.; Warner/Chappell Music, Inc.; BMG Rights Management (US) LLC; Sony/ATV Allegro; Sony/ATV Tunes LLC; Sony/ATV Music Publishing, Inc.; Reach Music Publishing Inc.; Reach Global Inc.; Songs of Reach Global; Cuts of Reach Music; First N Platinum Publishing; First N Gold Publishing, Inc.; Kobalt Songs Music Publishing; Kobalt Music Publishing America, Inc.; Songs of Universal Inc.; Universal Music-Z Tunes LLC; Roc Nation LLC; Roc Nation Management LLC; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Empire Distribution, Inc.*

302.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

303.    Quantum meruit concerns the (1) performance of services in good faith, (2) the acceptance of the services by the recipient, (3) an expectation of compensation, and (4) the reasonable value of the services.

304.    Here, Plaintiff authored a song (both composition and sound recording) with the other alleged authors of "All the Way Up," including Infared and Fat Joe. He did this in good faith always expecting, and being assured, full credit and compensation as all other authors on the song received.

305.    Defendants accepted the services rendered by Plaintiff, as demonstrated by the release and exploitation of the song "All the Way Up."

306.    Plaintiff is therefore entitled to the reasonable value of the services he provided, which in that equivalent to his fair share the profits of the song, and the value to his career of a collaboration with Fat Joe.

*****

## COUNT IX – CONVERSION

*Eric Elliott*

*v.*

*Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.; Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Warner-Tamerlane Publishing Corp.; Warner/Chappell Music, Inc.; BMG Rights Management (US) LLC; Sony/ATV Allegro; Sony/ATV Tunes LLC; Sony/ATV Music Publishing, Inc.; Reach Music Publishing Inc.; Reach Global Inc.; Songs of Reach Global; Cuts of Reach Music; First N Platinum Publishing; First N Gold Publishing, Inc.; Kobalt Songs Music Publishing; Kobalt Music Publishing America, Inc.; Songs of Universal Inc.; Universal Music-Z Tunes LLC; Roc Nation LLC; Roc Nation Management LLC; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Empire Distribution, Inc.*

307.   Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

308.   A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession.

309.   Here, Plaintiff has a right of possession to his intellectual property (his shares of the song) and/or also the monies his contributions to the song earned.

310.   Defendants, by knowingly and/or intentionally excluding him from sharing in the ownership, authorship, and/or receipt of profits from the song, have dominion over his property and are interfering with his attempts to possess it.

311.   This is manifestly to Plaintiff's detriments and in derogation of his rights.

312.   Plaintiff therefore demands that all his property be returned and/or disgorged to him.

*****

## COUNT X – MONEYS HAD AND RECEIVED

*Eric Elliott*

*v.*

*Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.; Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Warner-Tamerlane Publishing Corp.; Warner/Chappell Music, Inc.; BMG Rights Management (US) LLC; Sony/ATV Allegro; Sony/ATV Tunes LLC; Sony/ATV Music Publishing, Inc.; Reach Music Publishing Inc.; Reach Global Inc.; Songs of Reach Global; Cuts of Reach Music; First N Platinum Publishing; First N Gold Publishing, Inc.; Kobalt Songs Music Publishing; Kobalt Music Publishing America, Inc.; Songs of Universal Inc.; Universal Music-Z Tunes LLC; Roc Nation LLC; Roc Nation Management LLC; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Empire Distribution, Inc.*

313.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

314.    The elements of moneys had and received are: 1) defendant received money belonging to plaintiff; (2) defendant benefited from the receipt of the money; and (3) under principles of good conscience defendant should not be allowed to retain that money.

315.    Here, all Defendants have received money which belongs to Plaintiff, due to his contributions and/or ownership of the song "All the Way Up."

316.    Defendants have benefitted from the receipt of that money, being substantially enriched as a result, and therefore also have better opportunities in life and in their careers.

317.    The principles of good conscience require that defendants not be allowed to retain monies that they did not earn and that is not theirs, and that it be returned to Plaintiff.

*****

## COUNT XI – BREACH OF FIDUCIARY DUTIES

*Eric Elliott*

*v.*

*Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.; Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Warner-Tamerlane Publishing Corp.; Warner/Chappell Music, Inc.; BMG Rights Management (US) LLC; Sony/ATV Allegro; Sony/ATV Tunes LLC; Sony/ATV Music Publishing, Inc.; Reach Music Publishing Inc.; Reach Global Inc.; Songs of Reach Global; Cuts of Reach Music; First N Platinum Publishing; First N Gold Publishing, Inc.; Kobalt Songs Music Publishing; Kobalt Music Publishing America, Inc.; Songs of Universal Inc.; Universal Music-Z Tunes LLC; Roc Nation LLC; Roc Nation Management LLC; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Empire Distribution, Inc.*

318.     Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

319.     The elements of breach of fiduciary duties are a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct.

320.     Here, Defendants have fiduciary duties to Plaintiff as his co-authors/authors, co-owners/owners, because they are attempting to claim his shares and rights of the song as their own, and/or because they are currently in possession of monies that are rightfully his.

321.     In claiming Plaintiff's monies and credit for their own, by excluding him from sharing in the fruits of their joint labors returned by the success of "All the Way Up," and/or by making misrepresentations and/or material omissions to him and others about Plaintiff's role in creating "All the Way Up" they have wronged Plaintiff and deprived him of what is rightfully his.

322.     Defendants' conduct have directly and/or proximately caused Plaintiff damages, including but not limited to lack of credit, lack of compensation, harm to his music career, and lost opportunities.

*****

## COUNT XII – Negligence/Gross Negligence

*Eric Elliott*

*v.*

*Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.; Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Warner-Tamerlane Publishing Corp.; Warner/Chappell Music, Inc.; BMG Rights Management (US) LLC; Sony/ATV Allegro; Sony/ATV Tunes LLC; Sony/ATV Music Publishing, Inc.; Reach Music Publishing Inc.; Reach Global Inc.; Songs of Reach Global; Cuts of Reach Music; First N Platinum Publishing; First N Gold Publishing, Inc.; Kobalt Songs Music Publishing; Kobalt Music Publishing America, Inc.; Songs of Universal Inc.; Universal Music-Z Tunes LLC; Roc Nation LLC; Roc Nation Management LLC; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Empire Distribution, Inc.*

323.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

324.     The elements of negligence are duty, breach, causation, and damages.

325.    Here, all Defendants owed Plaintiff a duty to properly credit him as an author and/or owner (with PROs, the copyright office, labels, imprints, distributions, and those who administer copyrights on their behalf, and elsewhere), especially because they were also owners and/or authors on "All the Way Up," and because they were filing and/or benefitting from the copyright and PRO registrations for "All the Way Up."

326.    That duty was breached by Defendants when they failed to properly credit and/or compensate him for his contributions to the song.

327.    Defendants knew or should have known that Plaintiff was a joint author/author and/or joint owner/owner of "All the Way Up."

328.    Plaintiff notes that he has been severely damaged by Defendants' negligent failure to properly credit him as an author, separate and distinct from a failure to provide him compensation.

329.    As a struggling artist, being credited as a writer on a worldwide hit song is a major accomplishment and would have been a major break, launched and benefitted his career, and significantly changed his life.

330.    Defendants' conduct was reckless and outrageous.

331.    Defendants' negligent actions and omissions have deprived him of this credit, thereby causing irreparable harm. Defendants' negligent action and omission have also caused Plaintiff to be deprived of compensation.

*****

## COUNT XIII – Fraud/Negligent Misrepresentation

*Eric Elliott*

*v.*

*Joseph Cartagena; Shandel Green; Joey and Ryan Music; Mr. Green Music; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation)*

332.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

333.    Fraud requires (1) a statement by Defendant, (2) falsity of statement, (3) intent to deceive, (4) reasonable reliance by plaintiff on the false statement, and (5) injury sustained as a result of the reliance.

334.    Fraud must be pled with particularity.

335.    Here, Fat Joe (aka Joseph Cartagena) made the following statements (with the participation of Infared) to Plaintiff:

a. **Around March 6, 2016** - Telephone - (1) Plaintiff was going to get "some bread" up front and more later, and (2) that Fat Joe was going to work with Plaintiff to make more hits and help Plaintiff's career.

b. **March 14, 2016** - In Person, IHOP in South Beach - (1) that the $5,000 was just the beginning of the payments, (2) that more money was coming, (3) that the authors of the song would not see a lot of money, and (4) that Fat Joe was going to work with Plaintiff to make music, help his career, and take him under his wing.

336.    Cartagena knew these statements were false when he made them, and he intended Plaintiff to rely upon these statements.

337.    They were made by Cartagena both individually and on behalf of entities he controls, including Sneaker Addict Touring LLC and Joey and Ryan Music. Cartagena also made the statements on behalf of Shandel Green, whom he had an agreement with to defraud Plaintiff. Green wrote the song with Plaintiff, and then gave it to Cartagena his friend and often collaborator, and therefore was intimately aware of Plaintiff's rights in the song.

338.    Plaintiff reasonably relied upon Defendants' statements to his detriment. Plaintiff took $5,000 as initial, partial compensation for his work on "All the Way Up" fully believing that (1) Defendants would be providing more money later, (2) that Plaintiff was going to be properly credited, and (3) that Fat Joe was going to closely collaborate with Plaintiff on music as part of an incredible relationship and promote him in the world of hip hop.

339.    Plaintiff believed that he had resolved the misunderstanding, that Fat Joe was going to do right by him, and that he would get his just due. Plaintiff is unsophisticated in the music business, and a struggling artist, facts which the consummate industry insider Fat Joe knew and exploited. Fat Joe caused him to relax his vigilance and lull him into a sense of false security.

340.    Defendants never provided Plaintiff any other money, and never worked on music with him or promoted him. It is apparent that Defendants were leading Plaintiff on for the purpose of refusing to credit him on "All the Way Up" and taking Plaintiff's ownership and compensation for themselves.

341.    Following Defendants' misrepresentations to Plaintiff, Defendants filed registrations with performing rights organization, the Copyright Office, and other entities which excluded Plaintiff as an author and owner of "All the Way Up."

342.    As a direct and/or proximate result of Plaintiff's reliance on Defendants' false statements, Plaintiff has been severely damaged, including but not limited to, in the following ways:

      a.  He was excluded from authorship and ownership on "All the Way Up,"

      b.  He did not receive full compensation for his contributions to "All the Way Up"

      c.  He was unable to protect his rights as his song was being exploited

      d.  He lost extremely lucrative and invaluable career opportunities, including but not limited to working with a world renowned artist, and capitalizing on having authored a hit song.

343.    Because of his reliance on Defendants' false statements he is not recognized as the author and creator of a hit song, but instead is struggling as a part time short order cook at a restaurant. Because of his reliance on Defendants' false statements he has not received fair compensation for his work on the song. These are damages of which he is owed the fair value.

344.    Defendants engaged in a calculated effort to lead Plaintiff on for the singular purpose of cheating him out of his just credit and compensation to take it for themselves.

345.    In the alterative, Defendants owed plaintiff a duty as a result of their work on the song together, including fiduciary duties, and the misrepresentations they made were negligent and/or reckless and lacked diligence, and caused the reliance of Plaintiff and damages described above.

346.    This predatory conduct is contemptuous and should be harshly condemned. Punitive damages should also be awarded for their gross misconduct, and to deter future bad faith actors.

*****

## COUNT XIV – Civil Conspiracy

*Eric Elliott*

*v.*

*Joseph Cartagena; Shandel Green; Joey and Ryan Music; Mr. Green Music; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation)*

347.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint.

348.    For a civil conspiracy claim there must be a cognizable underlying tort, a corrupt agreement between the alleged conspirators regarding the tort, intent to participate in the furtherance of a plan or purpose, and an overt act in furtherance of the agreement.

349.    Here, Plaintiff has alleged numerous underlying torts against Defendants, including Fraud, Negligent Misrepresentation, Negligence, Conversion, and/or Moneys Had and Received, for which they are liable.

350.    Cartagena (and his companies) and Green (and his companies) had a corrupt agreement to defraud and deprive Plaintiff of credit, compensation, and ownership of the hit song "All the Way Up" so that they could keep credit, compensation, and ownership for themselves. Restated, they had an agreement to steal what belonged to Plaintiff.

351.    At all points Defendants and their companies participated in this fraudulent plan with the purpose to defraud Plaintiff.

352.    Remember that defendant Green wrote "All the Way Up" with Plaintiff at Circle House studio in Miami, and then gave the song to Fat Joe in late 2015, early 2016.

353.    Here, Defendants took many overt actions to steal from and defraud Plaintiff, including

a.  Cartagena telephoning him (in coordination with Green) multiple times on or around March 6, 2016 to make false statements about compensating and working with Plaintiff,

b.  Cartagena (in coordination with Green) making false statements on March 14, 2016 to Plaintiff at an IHOP about compensating and working with Plaintiff,

c.  Cartagena and Sneaker Addict Touring (in coordination with Green) providing a misleading check to Plaintiff to deceive Plaintiff into thinking more money would be paid and that Fat Joe was being level with Plaintiff,

d.  Cartagena (in coordination with Green) convinced and induced Plaintiff (who has no business experience) to sign a document on March 14, 2016, without providing him a chance to review the document with an attorney, based on false statements,

e.  Cartagena (in coordination with Green) bringing Plaintiff to a studio in or around late March 2016 but placing him in a small room with broken equipment and refusing to work with him,

f.  Cartagena giving Plaintiff a shout out at a concert on May 26, 2016 to attempt to distract him from Cartagena's deception,

g.  providing false and misleading information to ASCAP, BMI, and the Copyright Office which omitted Plaintiff as an author and owner of "All the Way Up" and which gave Plaintiff's credit, compensation, and ownership to Defendants,

h.  Green giving an interview around October 2016, where he claimed he created key parts of the song by himself, and where when asked who he collaborated with, he omitted any mention of Fly Havana, and

i.  Green attempting to convince Plaintiff in late 2018 at the club Mr. Jones that he and Cartagena had not ripped Plaintiff off.

354.   Plaintiff is requesting that defendants Shandel Green and Joseph Cartagena and their entities be found liable for civil conspiracy, as well as punitive damages.

355.   This predatory, cheating conduct is rampant in the entertainment business, and a strong message must be sent to those who would seek to cut rightful authors out of receiving their fair share. Credit must be given where it is due, and those who deliberately seek to take another's work and compensation should be punished severely, both as a lesson to the perpetrators and as a deterrent to others who may seek to do likewise.

*****

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants, jointly and severally, on all counts and claims, and requests declaratory relief, equitable relief, and/or compensatory damages in an amount in excess of this court's jurisdictional limitations, thereby guaranteeing Plaintiff a jury trial, exclusive of interests and costs, as well as prejudgment interest, post judgment interest, delay damages, costs, and such equitable relief as the Court deems necessary; and requests that this Court determine and declare that Plaintiffs be awarded for all counts:

   a.   Declaratory judgment;

   b.   Compensatory damages for lost earning, both past and future,

   c.   Equitable relief;

   d.   Punitive damages to punish the Defendants for their extreme and outrageous and malicious conduct, self-interest, and duplicitous behavior [against Joseph Cartagena; Karim Kharbouch; Shandel Green; Reminisce Smith Mackie; Marcello Valenzano; Andre Lyon; Edward F. Davadi, Jr.;  Joey and Ryan Music; Excuse My French Music; Excuse My French Music II; Mr. Green Music; Remynisce Music; Dade Co. Project Music, Inc.; Po Folks Music; Sneaker Addict Touring LLC; Terror Squad Production, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation)];

   e.   Exemplary damages to set an example for others;

   f.   Attorneys' fees and court costs;

   g.   Delay damages; and/or

   h.   Any other relief available under the Copyright Act, Such other and further relief and/or equitable relief that this Court deems just and/or necessary.

*****

*Respectfully submitted,*

F<small>RANCIS</small> A<small>LEXANDER</small>, LLC

*/s/ Francis Malofiy*

*/s/ AJ Fluehr*

Francis Malofiy, Esquire
Alfred J. Fluehr, Esquire
*Moving for Pro Hac Vice Admission*

280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyers for Plaintiff*
*/d/ March 4, 2019*

## Spoliation Notice – Preservation of Evidence

Plaintiff hereby demands and requests that Defendants take necessary actions to ensure the preservation of all documents, records, social media, communications, whether electronic or otherwise, items and things in their possession or control, or any entity over which any party to this action has control, or from whom any party to this action has access to, any documents, items, or things which may in any manner be relevant to or relate to the subject matter of the causes of action and/or the allegations of this complaint.

## Jury Trial Demand

Plaintiff hereby demands a 12-person jury trial.

*****

*Respectfully submitted,*

Francis Alexander, LLC

*/s/ Francis Malofiy*

*/s/ AJ Fluehr*

Francis Malofiy, Esquire
Alfred J. Fluehr, Esquire
*Moving for Pro Hac Vice Admission*
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ March 4, 2019*

# Certificate of Service

I hereby state that a true and correct copy of the foregoing Civil Action Complaint is being served in accordance with the Federal Rules of Civil Procedure on the following:

Joseph Anthony Cartagena (p/k/a Fat Joe)
Joey and Ryan Music;
Sneaker Addict Touring LLC;
11 E 44th St., #501
New York, NY 10017

Terror Squad Productions, Inc.;
Terror Squad Entertainment;
RNG (Rap's New Generation);
1411 Broadway, 39th Floor
New York, NY 10018

Karim Kharbouch (p/k/a French Montana)
Excuse My French Music
Excuse My French Music II;
25 Madison Ave | 24th Floor
New York, NY 10010

Shandel Green (p/k/a Infared)
Mr. Green Music;
1745 Broadway | 19th Floor
New York, NY 10019

Reminisce Smith Mackie (p/k/a Remy Ma)
Remynisce Music
1745 Broadway | 19th Floor
New York, NY 10019

Marcello Valenzano (p/k/a Cool)
Dade Co. Project Music, Inc.
Andre Lyon (p/k/a Dre)
Po Folks Music
1755 Broadway, #6
New York, NY 10019

Edward F. Davadi, Jr. (p/k/a Edsclusive);
1745 Broadway | 19th Floor

New York, NY 10019

WARNER/CHAPPELL MUSIC, INC.
WARNER-TAMERLANE PUBLISHING CORP.
1633 Broadway
New York, NY 10019

BMG RIGHTS MANAGEMENT (US) LLC (D/B/A BMG PLATINUM SONGS US);
1745 Broadway | 19th Floor
New York, NY 10019

SONY/ATV ALLEGRO
SONY/ATV TUNES LLC;
SONY/ATV MUSIC PUBLISHING, INC.
25 Madison Ave | 24th Floor
New York, NY 10010

REACH GLOBAL INC.
SONGS OF REACH GLOBAL
REACH MUSIC PUBLISHING INC.
CUTS OF REACH MUSIC
1745 Broadway | 19th Floor
New York, NY 10019

FIRST N PLATINUM PUBLISHING
FIRST N GOLD PUBLISHING, INC.
KOBALT SONGS MUSIC PUBLISHING
KOBALT MUSIC PUBLISHING AMERICA, INC.;
220 W 42nd Street | 11th Floor
New York, NY 10036

SONGS OF UNIVERSAL INC.;
UNIVERSAL MUSIC-Z TUNES LLC (D/B/A UNIVERSAL MUSIC Z SONGS);
1755 Broadway, #6
New York, NY 10019

ROC NATION LLC;
ROC NATION MANAGEMENT LLC;
1411 Broadway, **39th** Floor
New York, NY 10018

EMPIRE DISTRIBUTION, INC.
1755 Broadway # 6, New York, NY 10019

*****

*Respectfully submitted,*

FRANCIS ALEXANDER, LLC

*/s/ Francis Malofiy*

*/s/ AJ Fluehr*

Francis Malofiy, Esquire
Alfred J. Fluehr, Esquire
*Moving for Pro Hac Vice Admission*
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ March 4, 2019*

# Exhibit 1

**UNFINISHED
VERSION OF SONG**

**RELEASED
VERSION OF SONG**

**HOOK (Infared)**
Nothing can stop me
I'm all the way up
All the way up
I'm all the way up
I'm all the way up
Nothin' can stop me
I'm all the way up

**HOOK (Infared)**
Nothing can stop me
I'm all the way up
All the way up
I'm all the way up
I'm all the way up
Nothin' can stop me
I'm all the way up

**VERSE I (Fly Havana)**
Shawty what you want
I got what you need
See we smoking loud
Ya we rolling trees
In the club going up
On that Medellin
Bring ya girls with you
Cause you know I'm with my team
Pop bottles
Got weed
Got molly
(I'm all the way up)

**VERSE I (French Montana)**
Shawty what you want
Shawty what you need
My niggas run game
We ain't never leave
Countin' up this money
We ain't never sleep
You got V12
I got 12 V's
Got bottles
Got weed
Got molly
(I'm all the way up)

**PRE-HOOK (Fly Havana)**
Shawty what you want
I got what you need
Shawty what you want
I got what you need
Shawty what you want
I got what you need

**PRE-HOOK (French Montana)**
Shawty what you want
I got what you need
Shawty what you want
I got what you need
Shawty what you want
I got what you need

**HOOK (Infared)**
I'm all the way up
I'm all the way up
I'm all the way up
I'm all the way up
Nothing can stop me
I'm all the way up
All the way up
All the way up
I'm all the way up
Nothing can stop me
I'm all the way up

**HOOK (Infared)**
I'm all the way up
I'm all the way up
I'm all the way up
All the way up
Nothing can stop me
I'm all the way up

**VERSE II (Infared)**
Like a middle finger
If your girl do
Some freaky shit
Then you can bring her
Shawty popped a molly
Took her clothes off
Damn girl
You just a show off
Ain't no two sons
I want three
And if I'm spending money
Then you know she fuckin me
She said I got a big dick
I gotta take it slow
And she never ever seen
No shit like this before because

**VERSE II (Fat Joe)**
For my niggas with Bentley
Coupes and Rolexes
Kicked the bitch out the room
And gave her no breakfast
Had to stash the jewels
These bitches so reckless
Keep my hoes on cruise
I'm talking naughty things
Shorty uptown showin
Off her things
Couldn't take it off
So I gave her um change
She call me top shot-ta
Yeah I keep a few things
Champion sound
Yeah I got a few rings

**PRE-HOOK/HOOK - VARIATION (Infared)**

I'm all the way up
So y'all can stay up
Cause if you ask any body where I live
They point to the Hills and tell you
Go all the way up
Go all the way up

**HOOK (Infared)**

I'm all the way up
I'm all the way up
Nothing can stop me
I'm all the way up

**VERSE III (Spanish Girl)**

Esta en la sima
Esta en la sima
Esta en la sima
Nadia los para
Na mas para arriba
Esta en la sima
Esta en la sima
Esta en la sima
Nadia los para
Na mas para arriba

**PRE-HOOK/HOOK - VARIATION (Fat Joe)**

And I'm all the way up
And you can stay up
And if you ask anybody where I live
They point to the Hills and say
Go all the way up
Go all the way up

**HOOK (Infared)**

I'm all the way up
I'm all the way up
Nothing can stop me
I'm all the way up

**VERSE III (Remy Ma)**

Just left the big house
To a bigger house
Ain't have a girlfriend
But the bitch is out
Chanel croc bag
Shit ain't even out
With the gold chains
Himalayan Birkin Cocaine
Lit it up Pac shit
I hit 'em up
I'm talkin color money
Puple Yen and blue Dirham
I got brown Lira
I aint talkin bout Ross bitch
I'm that nigga on
Viagra dick that means

**PRE-HOOK/HOOK - VARIATION (Remy Ma)**

I'm all the way up
And you can stay up
P.O. say I can't get high hopped
Hopped in the helicopter Uber said
Go all the way up
Go all the way up

**HOOK (Infared)**

I'm all the way up
I'm all the way up
Nothing can stop me
I'm all the way up

**VERSE IV (French Montana)[VERSE I REPEATED]**

Shawty what you want
Shawty what you need
My niggas run game
We ain't never leave
Countin' up this money
We ain't never sleep
You got V12
I got 12 V's
Got bottles
Got weed
Got molly
(I'm all the way up)

**PRE-HOOK (French Montana)**

Shawty what you want
Shawty what you need
Shawty what you want
Shawty what you need
Shawty what you want
Shawty what you need

**HOOK (Infared)**

I'm all the way up
I'm all the way up
I'm all the way up
I'm all the way up
Nothing can stop me
I'm all the way up
All the way up
I'm all the way up
I'm all the way up
Nothing can stop me
I'm all the way up