UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIC A. ELLIOTT (p/k/a FLY HAVANA),

                Plaintiff,

      *v.*

JOSEPH ANTHONY CARTAGENA (p/k/a FAT JOE), *et al.*,

               Defendants.

Case No. 1:19-cv-01998 (NRB)

ORAL ARGUMENT REQUESTED

---

**DEFENDANTS' SUPPLEMENTED MEMORANDUM OF LAW
IN SUPPORT OF THEIR RENEWED MOTION FOR SUMMARY JUDGMENT**

Eleanor M. Lackman (eml@msk.com)
Elaine Nguyen (eln@msk.com)
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Avenue, 25th Floor
New York, New York 10022
Phone:  (212) 509-3900
Fax:  (212) 509-7239

*Attorneys for Defendants Joseph Anthony Cartagena (p/k/a Fat Joe); Reminisce Smith Mackie (p/k/a "Remy Ma"); Remynisce Music; Joey and Ryan Music; Sneaker Addict Touring LLC; Terror Squad Productions, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Warner Chappell Music, Inc.; and Warner-Tamerlane Publishing Corp.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND.................................................................................... 2

PROCEDURAL HISTORY...................................................................................... 4

SUPPLEMENTAL PROCEDURAL HISTORY ....................................................... 5

I.      Defendants' Motion for Summary Judgment ................................................. 5

II.     Defendants' Exhaustive Efforts to Obtain Evidence Directly from Pacheco .................... 6

ARGUMENT ....................................................................................................... 8

I.      STANDARD OF REVIEW ............................................................................. 8

II.     NO GENUINE ISSUE EXISTS THAT ELLIOTT ASSIGNED HIS RIGHTS................ 9

III.    ELLIOTT'S "FRAUD" AND OTHER THEORIES ARE LEGALLY
        IMPLAUSIBLE AND THUS CANNOT CREATE AN ISSUE OF FACT ................... 12

SUPPLEMENTAL ARGUMENT SECTION .............................................................. 15

IV.     THE DRAFT AGREEMENT IS ADMISSIBLE TO ESTABLISH THE CONTENT
        OF THE "PIECE OF PAPER" IN WHICH PLAINTIFF INDISPUTABLY SIGNED
        FIVE YEARS AGO...................................................................................... 15
        A.      The Original Signed Agreement is Not Required Under Rule 1004 ................... 15
        B.      The Statements Set Forth in the Kupinse Declarations are Admissible to
                Serve as Further Evidence Supporting Proper Application of the Best
                Evidence Rule ................................................................................ 17
        C.      The Draft Agreement is the "Piece of Paper" Plaintiff Signed Years Ago, and
                Fatal to His Claims............................................................................ 18

CONCLUSION...................................................................................................... 19

13047698.2

# TABLE OF AUTHORITIES

<u>Page(s)</u>

<strong>CASES</strong>

*Ali v. City of New York*,
11-civ-5469 (LAK), 2012 WL 3958154 (S.D.N.Y. Sept. 5, 2012) ..........................8

*Allegra v. Bowen*,
670 F. Supp. 465 (E.D.N.Y. 1987) ......................................................................16

*Allied Van Lines, Inc. v. Bratton*,
351 So.2d 344 (Fla. 1977)....................................................................................13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...............................................................................................9

*Antares Real Estate Services III, LLC v. 100 WP Property - DOF II, LLC*,
2014 NY Slip Op. 31312(U), 2014 WL 2042300 (N.Y. Sup. Ct. May 16,
2014) .....................................................................................................................13

*Auricchio v. Town of DeWitt*,
2013 WL 868261(N.D.N.Y. Mar. 7, 2013) .........................................................17

*Bryant v. Maffucci*,
923 F.2d 979 (2d Cir. 1991)..................................................................................8

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
196 F. Supp. 3d 395 (S.D.N.Y. 2016)...................................................................9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...............................................................................................8

*Centrifugal Force, Inc., v. Softnet Commc'n Inc.*,
No. 08 Civ 5463, 2011 WL 744732 (S.D.N.Y. Mar. 1, 2011) ............................13

*Corley v. Vance*,
2019 WL 3841939 (S.D.N.Y. Aug. 15, 2019)......................................................10

*Crawford v. Tribeca Lending Corp.*,
815 F.3d 121 (2d Cir. 2016)............................................................................10, 11

*Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*,
262 F. Supp. 2d 1334 (S.D. Fla. 1999), *aff'd*, 235 F.3d 1344 (11th Cir. 2000)......................14

*Eden Toys, Inc. v. Florelee Undergarment Co.*,
697 F.2d 27 (2d Cir. 1982)...................................................................................10

13047698.2

## TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

*F.D.I.C. v. Great Am. Ins. Co.*,
   607 F.3d 288 (2d Cir. 2010) .................................................................................8, 9

*FI-Pompano Rehab, LLC v. Irving*,
   221 So. 3d 781 (Fla. Dist. Ct. App. 2017) ................................................................14

*Gainesville Health Care Ctr., Inc. v. Weston*,
   857 So. 2d 278 (Fla. Dist. Ct. App. 2003) ................................................................14

*Greenwald v. Food Fair Stores Corp.*,
   100 So. 2d 200 (Fla. Dist. Ct. App. 1958) ................................................................14

*Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*,
   162 F.3d 1290 (11th Cir. 1998) ................................................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ....................................................................................................8

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007) ........................................................................................8

*Oscar de la Renta, Ltd. v. Mulberry Thai Silks, Inc.*,
   08-cv-4341 (RJS), 2009 WL 1054830 (S.D.N.Y. Apr. 17, 2009) ............................12

*Renner v. Bank of Columbia*,
   22 U.S. 581 (1824) ....................................................................................................10

*Schubot v. McDonald's Corp.*,
   757 F. Supp. 1351 (S.D. Fla. 1990), *aff'd*, 963 F.2d 385 (11th Cir. 1992) .............14

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998) ........................................................................................8

*State of N.Y. v. Blank*,
   820 F. Supp. 697 (N.D.N.Y. 1993), *vacated on other grounds*, 27 F.3d 783
   (2d Cir. 1994) ............................................................................................................11

*Tjeknavorian v. Mardirossian*,
   56 F. Supp. 3d 561 (S.D.N.Y. 2014) ..........................................................................9

*Topp, Inc. v. Uniden Am. Corp.*,
   513 F. Supp. 2d 1345 (S.D. Fla. 2007) .....................................................................14

**TABLE OF AUTHORITIES**
<u>(continued)</u>

<u>Page(s)</u>

*United States v. Ozsusamlar*,
  428 F. Supp. 2d 161 (S.D.N.Y. 2006)..................................................................................16

**STATUTES**

17 U.S.C.
  § 204.............................................................................................................................................9
  § 204(a)......................................................................................................................................9

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure
  Rule 12......................................................................................................................................4
  Rule 56(a)...................................................................................................................................8
  Rule 56(f)...................................................................................................................................12

Federal Rules of  Evidence
  Rule 803....................................................................................................................................18
  Rules 803(1), 803(3)..............................................................................................................17
  Rule 803(3)..............................................................................................................................18
  Rule 803(a)..............................................................................................................................17
  Rule 804(a)(5).........................................................................................................................16
  Rule 807...................................................................................................................................18
  Rule 1004.............................................................................................................................2, 15
  Rule 1004(a).................................................................................................................5, 6, 7, 10
  Rules 1004(a) and (b)......................................................................................................7, 15, 16
  Rule 1008.............................................................................................................................10, 12

Local Civil Rule
  Rule 56.1...................................................................................................................................2

iv

Defendants Joseph Anthony Cartagena (p/k/a "Fat Joe"); Reminisce Smith Mackie (p/k/a "Remy Ma"); Remynisce Music; Joey and Ryan Music; Sneaker Addict Touring LLC; Terror Squad Productions, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Warner Chappell Music, Inc.; and Warner-Tamerlane Publishing Corp. (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their Renewed Motion for Summary Judgment against plaintiff Eric A. Elliott ("Elliott"). In accordance with the Court's instructions, ECF Doc. No. 166, this Memorandum and all accompanying papers are identical to the prior submission on summary judgment, with the exception of the inclusion of material, which was not available at the time of the submission of the prior Memorandum, pertaining to the investigation of the whereabouts of the Agreement at issue. For the Court's convenience, such supplemental material is specifically identified below.

## PRELIMINARY STATEMENT

Elliott's fourteen-count lawsuit arises from Elliott's claim that he provided some contribution to the song "All The Way Up," performed by defendant Cartagena and featuring defendants Kharbouch and Mackie, and that he is entitled to a credit and a piece of the song's success. However, Elliott has no recourse: years ago, he transferred and released any rights he might have had in exchange for compensation, which he accepted without condition. Accordingly, he has received what he was due, and his "buyer's remorse" three years later does not justify unwinding the agreement.

In light of the undisputed material facts, Elliott's Complaint should be dismissed as a matter of law. While Elliott has hinted at a variety of theories to attack the agreement, Elliott agrees that he transferred whatever rights he had in a signed agreement at a meeting in March 2016. These admissions doom his claims in full. Moreover, the fact that the signed copy of the

agreement cannot be found makes no difference:  Rule 1004 of the Federal Rules of Evidence, combined with Elliott's own testimony and other indicia of authenticity, shows that the proffered agreement reflects the terms of the signed agreement.  Accordingly, Elliott cannot create any genuine issue of material fact that would warrant sending this case to trial.

Elliott's layers of disparagement of various defendants do not affect the outcome.  In light of the facts—including the simplicity and clarity of the agreement, his depositing of the check, and his own acknowledgments regarding the circumstances surrounding the entry into the agreement—it is implausible that any theory he asserts will survive.  If he relied on other perceived representations, doing so was objectively unreasonable in light of the integration clause.  Further, a standard form agreement that releases his claims is not unconscionable.  Elliott simply wants another bite at the apple, but the law does not afford him that chance.  As a matter of law, he has no standing to maintain this action, and it should be dismissed accordingly.

## FACTUAL BACKGROUND

The facts pertinent to this Motion are set forth in full in Defendants' accompanying Statement of Undisputed Material Facts, submitted pursuant to Local Civil Rule 56.1 ("SUF"), and are summarized briefly as follows.

Elliott commenced this action on March 4, 2019 to claim rights in the song "All The Way Up" (the "Track").  SUF ¶ 1.  However, he asserted such claims before, three years ago, when he discussed the matter with Cartagena, who then contacted his lawyer, Erica Moreira, regarding the matter.  *Id.* ¶¶ 5-6, 19, 21.  Moreira drafted a "work for hire / assignment" agreement, which she finalized after she received a copy of Elliott's driver's license from Cartagena's then-manager, Elis Pacheco ("Pacheco").  *Id.* ¶ 20.  Moreira then emailed the agreement in .pdf format to

2

Cartagena and Pacheco on March 11, 2016, the day before Cartagena met with Elliott in person. *Id.* ¶¶ 20-21.

Elliott released his claims during that meeting, which he thought would be at a lawyer's office, *id.* ¶¶ 5, 10, 19, and his admissions confirm that the agreement that Moreira sent to Cartagena is in fact the one that Elliott signed.  Expecting to receive an agreement yet bringing no lawyer of his own along, in March 2016 Elliott admits that he had a half-hour-long meeting with Cartagena alone, during which Elliott signed a single-page agreement pertaining to his claimed contributions.  *Id.* ¶¶ 5-7, 9-10.  At the meeting, Elliott took a check for $5,000 for his alleged "writing contributions," and he cashed the check shortly thereafter.  *Id.* ¶¶ 8, 10, 12.

Elliott did not keep a copy of the document, nor did he request that a copy be sent to him. *See id.* ¶¶ 11, 15.  He also claims that he did not have much time to review the document and is not experienced in reading legal agreements.  *Id.* ¶ 16.  However, his words and actions demonstrate that he believes he signed any rights (to the extent he had them) away in a single-page agreement.  *Id.* ¶ 17.  Defendants have searched for the document, but were only able to find the unsigned version that Cartagena's lawyer prepared the day before Cartagena met with Elliott.  *Id.* ¶¶ 19-21, 24, 31.  Elliott has failed to offer any testimony that the document proffered is not the one he signed, *id.* ¶ 30, and as noted above, he has not seen the document in years and cannot controvert its terms.

Indeed, consistent with Elliott's recollection, the document that Defendants found was a one-page document.  It was clearly labeled "WORK FOR HIRE – ASSIGNMENT OF COPYRIGHT" in bold and underscored text, and which opens with an assignment away from Elliott of "any and all rights of ownership or any other rights" in and to the composition and sound recording for the Track.  *Id.* ¶¶ 24-26.  The document further contains clear

acknowledgments that he has "no ownership or any other rights" pertaining to the Track, and if he did, he assigned all the rights. *Id.* ¶ 27. The agreement repeatedly identifies the concept of future compensation as foreclosed; additionally, the agreement contains an integration clause. *Id.* ¶¶ 27-29.

## PROCEDURAL HISTORY

On August 16, 2019, Defendants filed a pre-motion letter seeking to dismiss the Complaint, ECF No. 112, and on August 26, 2019, Plaintiff responded. ECF No.120, 134. Both parties referenced an agreement in their letters, which the Court noted in issuing a request on September 5, 2019 for the parties to explain the document's whereabouts. ECF Doc. No. 125. The parties then submitted declarations as ordered. *See* ECF Doc. Nos. 129-32.[1]

The parties appeared for a pre-motion conference before the Court on October 17, 2019, during which Defendants' various theories, and Elliott's responses, were discussed extensively. *See* ECF No. 135; Tr. of Oral Arg., *Elliott v. Cartagena, et al.* (Oct. 17, 2019). The Court concluded that the parties should proceed with the case by motion for summary judgment on the contract issue in light of the material provided to the Court via declaration, with the reservation of Defendants' rights to move to dismiss any claims later in the event summary judgment is not granted. *See* Tr. of Oral Arg., *supra*, at 6:8-11.[2] Accordingly, Defendants sought summary judgment on the contract issue.

---

[1] Mr. Cartagena and Mr. Elliott both conceded that they did not have a copy of the signed agreement within their possession custody and control. *See* ECF Doc. Nos. 129-32.

[2] As the Court correctly observed, Elliott's signature on a broad agreement would dispose of all of his claims, and therefore this Motion focuses on the issue of the agreement alone. However, as Defendants indicated in their pre-motion letters and as discussed at the October 17 conference, Elliott's claims independently suffer from various fatal flaws that are subject to dismissal under a Rule 12 standard on a wide range of grounds. *See generally id.*

## SUPPLEMENTAL PROCEDURAL HISTORY

### I.     Defendants' Motion for Summary Judgment

Defendants moved for summary judgment accordingly. ECF Doc. Nos. 143-63. To support their motion, Defendants submitted a Supplemental Declaration of Erica Moreira ("Moreira"), confirming that she was asked to draft a simple work for hire agreement that would release Mr. Elliott's claims on the Track. ECF Doc. Nos. 131-2, 145. Ms. Moreira confirmed that on March 11, 2016, she sent to Mr. Cartagena the work for hire agreement, tailored with personal information on Elliott, provided by Mr. Pacheco. ECF Doc. No. 131-2, at ¶¶ 5-6; ECF Doc. No. 145. Ms. Moreira did not have a copy of the executed version of the agreement as it was normal practice for her not to receive executed copies of every document she drafted for Mr. Cartagena. ECF Doc. No. 131-2, at ¶ 8.

To further support their motion for summary judgment, Defendants detailed the search efforts of the only other person, Elis Pacheco, who would have a copy of the signed "piece of paper." Defendants submitted a Declaration from one of Mr. Cartagena's attorneys, Andrew Kupinse ("Kupinse"). *See* ECF Doc. No. 161. Mr. Kupinse, who asked Mr. Pacheco to search for the signed agreement days after the Complaint in this action was filed, was in direct contact with Mr. Pacheco. *Id.* at ¶¶ 5-8. After multiple emails with Mr. Kupinse, Mr. Pacheco confirmed that he was not, and did not believe he ever was, in possession of the signed agreement. *Id.* at ¶ 8.

On July 31, 2020, the Court denied Defendants' motion for summary judgment, without prejudice, indicating that Defendants were "granted leave to renew [the] motion on the existing motion papers at such time they conclude that they have secured non-hearsay evidence from [Elis] Pacheco sufficient to meet the requirements of Rule 1004(a) and have filed that evidence as a supplement to the existing motion papers." ECF Doc. No. 166, at 12-13.

## II.      Defendants' Exhaustive Efforts to Obtain Evidence Directly from Pacheco

In compliance with the Court's Order, Defendants endeavored to locate Mr. Pacheco to obtain evidence directly from him. Defendants in the first instance sought to obtain evidence from Mr. Pacheco through informal means.[3] SUF ¶ 35; ECF Doc No. 167. The attempt was unsuccessful. SUF ¶ 35; ECF Doc No. 167. Defendants continued their efforts to reach Mr. Pacheco through service of a subpoena. SUF ¶ 36. As outlined by Defendants in letters to this Court beginning on September 8, 2020 through January 15, 2021, Defendants made diligent attempts and utilized various professionals to locate and serve Mr. Pacheco with a subpoena or otherwise reach Mr. Pacheco. *See* ECF Doc. Nos. 169, 173, 175; SUF ¶ 36. Defendants were able to find an address where Mr. Pacheco's mother resided, who advised the process server that Mr. Pacheco was in Europe and would not return until the middle or end of October. *See* ECF Doc. 169; SUF ¶ 36. Per the Court's instruction, Defendants returned to the aforementioned residence in attempts to serve Mr. Pacheco at the end of October 2020, and again in December 2020 through January 2021. *See* ECF Doc. Nos. 173, 175; SUF ¶ 36. Defendants were still unable to serve Mr. Pacheco. *Id.*

In accordance with the Court's direction, Defendants then requested leave to file a motion for alternative service, which was granted. *See* ECF Doc. No. 175, 176; SUF ¶ 37. Defendants promptly moved to serve Mr. Pacheco with a subpoena through alternative means, namely through: (1) regular mail and certified mail at the addresses known to be his; (2) his business email where Mr. Kupinse was previously successful in communicating with Mr. Pacheco in 2019; and (3) the social media platform Facebook, where Pacheco was noted to have been

---

[3] Defendants requested, and the Court granted, a stay while Defendants exhausted efforts to obtain sworn testimony from Mr. Pacheco. *See* ECF Doc. No. 167, 168.

recently active. *See* ECF Doc. Nos. 177-79; SUF ¶ 37. The Court granted Defendants motion on February 5, 2021. ECF Doc. No. 180.

Defendants proceeded with alternative service but were nevertheless unable to obtain evidence directly from Mr. Pacheco. *See* ECF Doc. No. 181; SUF ¶ 38. By March 18, 2021, Defendants had made a total of nineteen failed attempt at service, over a span of approximately six months to obtain evidence from Mr. Pacheco. ECF Doc. No. 181 at p. 2; SUF ¶ 38. Defendants submitted detailed affidavits from experienced process servers as to the alternative modes of service and noted that the parties even appeared for Mr. Pacheco's scheduled deposition on February 25, 2021. *See id.* Mr. Pacheco did not appear and has not responded to the subpoena in any manner. *Id.*

Defendants then sought guidance from this Court as to whether it believed Defendants had made sufficient attempts to obtain evidence from Mr. Pacheco to renew their motion for summary judgment. *Id.* Defendants accompanied their letter with a Declaration from Andrew Kupinse, dated March 17, 2021, which reiterated that Mr. Kupinse was in direct contact with Mr. Pacheco, who confirmed he was not, and never believed he was, in possession of the signed agreement. *See* Declaration of Andrew Kupinse, dated March 17, 2021 (the "March 17 Kupinse Decl.") (ECF Doc. No. 181-8).  The March 17 Kupinse Decl. also attached the email correspondence he had with Mr. Pacheco confirming the same. *See* March 17 Kupinse Decl., Exhibit 1 (ECF Doc. No. 181-9).[4] The foregoing describes all of the material that has been elicited since Defendants filed their motion.

---

[4] As noted in the March 17 Kupinse Decl., the email correspondence also involved unrelated matters and contained confidential material that is irrelevant to this case. As such, the emails were submitted in redacted format. ECF Doc. No. 181-8.

On March 30, 2021, the Court granted Defendants' request for leave to renew their motion for summary judgment, stating that the Court was "now satisfied that defendants have exhausted all efforts to obtain sworn testimony from Pacheco and may invoke Rule 1004(a) and (b) to establish the content of the Agreement." ECF Doc. No. 183. Defendants now renew their motion for summary judgment in accordance with the Court's July 31, 2020 and March 30, 2021 Orders.[5] ECF Doc. Nos. 166, 183.

## ARGUMENT

## I.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (a motion for summary judgment "will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise.") (internal citation omitted); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory

---

[5] The Court may properly decide the motion for summary judgment on the record presented, even though it consists solely of the pleadings and sworn testimony with exhibits provided prior to the commencement of formal discovery. *See, e.g.*, *Ali v. City of New York*, 11-civ-5469 (LAK), 2012 WL 3958154, *3 (S.D.N.Y. Sept. 5, 2012) ("[T]here is no general right to discovery prior to the entry of summary judgment.").

allegations or unsubstantiated speculation."). Rather, the non-moving party must show some "hard evidence" that its version is "not wholly fanciful." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)). "If the defendant in a run-of-the-mill civil case moves for summary judgment . . . based on the lack of proof of a material fact, the judge must ask [herself] not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, the issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. Where, as here, "it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." *F.D.I.C.*, 607 F.3d at 292 (citation omitted).

## II.    NO GENUINE ISSUE EXISTS THAT ELLIOTT ASSIGNED HIS RIGHTS

Both Elliott and the Defendants agree on a key point: Elliott transferred or otherwise divested any rights he may have had when he signed the agreement that Cartagena proffered to him. This is all that the statute of frauds in the Copyright Act, 17 U.S.C. § 204(a), requires. *See BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 402 (S.D.N.Y. 2016) (stating that the "purpose of the writing requirement [for copyright assignments] is to resolve disputes between copyright owners and transferees about the status of the copyright.") (internal citations and quotations omitted) (alteration in original); *Tjeknavorian v. Mardirossian*, 56 F. Supp. 3d 561, 565 (S.D.N.Y. 2014) (stating that the writing requirement aims "to protect authors from those claiming, contrary to the author's view of the facts, that he or she transferred rights in the work" and that "a writing sufficient to satisfy Section 204 does not have to be long or elaborate," that a "one-line pro forma statement will do," and that the "terms of any writing

purporting to transfer copyright interests . . . must be clear") (internal quotations omitted).  The purpose of Section 204(a) is not to deny the effect of agreements that are inadvertently misplaced.  Rather, it is "to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses."  *See Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 36 (2d Cir. 1982).

It is undisputed that Elliott signed a written document.  The fact that the signed agreement cannot be found does not change the fact that Elliott did sign an agreement; this renders any argument about the statute of frauds a red herring.  Rather, the question is purely evidentiary:  when the signed writing is lost, it may be proven pursuant to Federal Rule of Evidence 1004(a), which the Court can apply on a motion for summary judgment where there is no genuine dispute as to the terms.  *See* Fed. R. Evid. 1008; *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 126-27 (2d Cir. 2016) ("As relevant here, an original is not required, and secondary evidence may be admitted to prove the content of a writing, if 'all the originals are lost or destroyed, and not by the proponent acting in bad faith.'"); *Corley v. Vance*, 2019 WL 3841939, *12 (S.D.N.Y. Aug. 15, 2019) (granting summary judgment and applying the best evidence rule where an affidavit addressed why original subpoenas were lost and there was lack of bad faith); *see also Renner v. Bank of Columbia*, 22 U.S. 581, 597 (1824) ("If the circumstances will justify a well-grounded belief, that the original paper is kept back by design, no secondary evidence ought to be admitted; but when no such suspicion attaches, and the paper is of that description, that no doubt can arise as to the proof of its contents, there can be no danger in admitting the secondary evidence.").[6]

---

[6] As a matter of logic, Defendants have no reason to withhold the signed agreement, which would have obviated the need for submission of the declarations to the Court regarding the agreement's whereabouts.

Here, Cartagena has offered a copy of an agreement, the authenticity of which is backed by legitimate testimony and evidence.  *See* SUF ¶¶ 19-21.  The agreement was drafted by a lawyer, on Cartegena's request, after Elliott repeatedly insisted that he contributed to the Track and demanded compensation for his alleged work.  *See id.* ¶19.  Defendants have provided documentary evidence confirming that Cartagena's manager sent Cartagena's lawyer a copy of Elliott's driver's license, which number is included in the agreement that is attached to an email message that Moreira sent to Cartagena and his manager the day before Elliott met with Cartagena.  *See id.* ¶¶ 19-21.  Tellingly, the document that Moreira sent matches the description that Elliott himself provided from his dated recollections, including the single-page length of the agreement.  *Id.* ¶ 22.  Elliott further admits that he signed an agreement that gave up his claimed rights:  indeed, it forms the basis for his challenge to the agreement that was designed to resolve similar claims to those he asserts now.  *See id.* ¶¶ 17, 19; *Crawford*, 815 F.3d at 127 ("As relevant here, an original is not required, and secondary evidence may be admitted to prove the content of a writing, if 'all the originals are lost or destroyed, and not by the proponent acting in bad faith.'  It is for the trial court to determine whether these factual predicates—which the proponent must prove by a preponderance of the evidence—have been satisfied.") (footnote omitted) (internal citations omitted).

Not only is it clear that the agreement that Moreira sent is the one Elliott signed, but Elliott is without recourse to challenge the agreement.  In particular, Elliott cannot dispute the terms where he admits he is unsophisticated in legal review and has not seen the agreement since that half-hour meeting three years ago.  SUF ¶¶ 11, 15, 16.  Accordingly, any affidavit that seeks to rebut any terms with any specificity will be speculative and unreliable as a result of his lack of understanding and/or recollection.  Moreover, in light of his admission that he met with

11

Cartagena alone, *id.* ¶ 6, there will be no other competent witness to controvert Defendants'
testimonial and documentary evidence.  *See id.* ¶ 30; *see also State of N.Y. v. Blank*, 820 F. Supp.
697, 704 (N.D.N.Y. 1993), *vacated on other grounds*, 27 F.3d 783 (2d Cir. 1994) (granting
summary judgment where non-movant "offered no evidence indicating the presence of a genuine
dispute as to the existence and terms of the policy"); Fed. R. Evid. 1008 Advisory Committee
Note to 1972 Proposed Rules (summary judgment is inappropriate only where the non-movant
"counters with evidence that no such contract was ever executed").  Simply put, for summary
judgment to be denied, Elliott will need to raise a *genuine* issue of material fact, but based on his
own admissions and the sworn testimony received from both sides, he will not be able to do so.
*See Oscar de la Renta, Ltd. v. Mulberry Thai Silks, Inc.*, 08-cv-4341 (RJS), 2009 WL 1054830,
at *5 (S.D.N.Y. Apr. 17, 2009) ("[A]lthough pre-discovery summary judgment is rare, a Rule
56(f) request should be denied where additional discovery will not uncover a genuine issue of
material fact.").  Therefore, summary judgment is appropriate without further delay.

## III.   ELLIOTT'S "FRAUD" AND OTHER THEORIES ARE LEGALLY IMPLAUSIBLE AND THUS CANNOT CREATE AN ISSUE OF FACT

To get around his admissions that he signed away his rights, Elliott appeals to equity,
arguing that he is too unsophisticated to understand legal contracts.  This is implausible.  Elliott
has indicated that he thought he was going to a lawyer's office on the day of the meeting, SUF
¶ 5, yet he did not enlist the help of a lawyer of his own or anyone else who could help him read
the contract.  It is further implausible that he did not know what he was signing:  the contract is
clearly labeled "**WORK FOR HIRE – ASSIGNMENT OF COPYRIGHT**" (emphases in
original), and within its short text includes the phrases "**any and all rights of ownership or
other rights** in and to the Master and Composition," "**has no ownership or any other rights** in
and to the Master and the Composition and to the extent [he] has any rights **he hereby assigns**

those rights," "full and complete consideration . . . and **no additional compensation will be
due**," and "[t]his **Agreement contains the entire understanding** of the parties . . . ." SUF

¶¶ 25-29 (emphases added).  Even for someone without a college education, it is implausible that

he did not know he was assigning away all rights and claims to any further compensation or

other value.  Notably, he quickly took the check and cashed it right away, and he never at any

time asked for a copy of the agreement he signed.  *See id.* ¶¶ 10-12.

Elliott points to a variety of disparaging excuses that he claims would undo the deal.

These efforts are unavailing.  First, Elliott's claim that he could not adequately review the

contract does not render the contract unenforceable.  *See Allied Van Lines, Inc. v. Bratton*, 351

So.2d 344, 347-48 (Fla. 1977) ("Unless one can show facts and circumstances to demonstrate

that he was prevented from reading the contract, or that he was induced by statements of the

other party to refrain from reading the contract, it is binding.").[7]  He admits that he expected to

receive a contract and was able to review it for long enough to verify that the one-page contract

constituted a broad transfer of all rights.  Similarly, the contract clearly makes no promises of

credit, assistance, or any other promises, yet Elliott proceeded to accept the absence of those

terms by signing the agreement and cashing the check.

What the agreement does contain is a merger clause, which prevents any variance from

the contract's terms.  *See Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290,

___

[7] The agreement contains a Florida choice of law provision and therefore the argument regarding the
contract will cite Florida authorities.  However, New York law does not materially differ.  *See, e.g.*,
*Centrifugal Force, Inc., v. Softnet Commc'n Inc.*, No. 08 Civ. 5463, 2011 WL 744732, at *7 (S.D.N.Y.
Mar. 1, 2011) (enforcing clink wrap agreement in breach of contract action and holding that "[f]ailure to
read a contract before agreeing to its terms does not relieve a party of its obligations under the contract");
*Antares Real Estate Services III, LLC v. 100 WP Property - DOF II, LLC*, 2014 NY Slip Op. 31312(U),
2014 WL 2042301, at *6 (N.Y. Sup. Ct. May 16, 2014) (Merger clauses "prevent parties from being
blindsided in litigation by attempts to change the terms of the deal with fraud claims or the pleading of
collateral agreements.  Allowing claims based on collateral agreements or fraud notwithstanding a merger
clause compromises the integrity of commercial dealings and foments intolerable uncertainty into New
York's economy.").

13047698.2

1309 (11th Cir. 1998).  Even assuming *arguendo* that it were plausible  that, following

contentious discussions that resulted in the preparation of an agreement by a lawyer, Elliott was

promised credit, "more" compensation, mentorship, a successful future career, or other non-

corroborated and unspecified "opportunities" that "he could only dream of" (*see, e.g.*, Compl.

¶¶ 46-47, 335), he would be without recourse.  None of these alleged promises is mentioned in

any way in the written agreement, and they are barred by law as a result.  *See Greenwald v. Food

Fair Stores Corp.*, 100 So. 2d 200, 202 (Fla. Dist. Ct. App. 1958) ("[T]o admit into evidence the

[pre-execution] representation . . . would contradict express specific terms of the written

agreements."); *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d

1334, 1342-43 (S.D. Fla. 1999) (in conjunction with granting motion for summary judgment,

explaining that, "[f]or a variety of reasons, Florida courts have made clear that no action for

fraud in the inducement will lie where the alleged fraud contradicts the subsequent written

contract."), *aff'd*, 235 F.3d 1344 (11th Cir. 2000); *Schubot v. McDonald's Corp.*, 757 F. Supp.

1351, 1356 (S.D. Fla. 1990), *aff'd*, 963 F.2d 385 (11th Cir. 1992) ("Reliance upon oral

representations, even if false, is unreasonable if the party enters into a subsequent agreement.");

*see also Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1350 (S.D. Fla. 2007) (similar).

Finally, Elliott pleads no facts to suggest that the simple agreement was substantively or

procedurally unconscionable, particularly for an admittedly unknown artist.  *See FI-Pompano

Rehab, LLC v. Irving*, 221 So. 3d 781, 784 (Fla. Dist. Ct. App. 2017); *see also Gainesville

Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 288 (Fla. Dist. Ct. App. 2003) ("One should

not be permitted to avoid the consequences of a contract freely entered into simply because he or

she elected not to read and understand its terms before executing it, or because, in retrospect, the

bargain turns out to be disadvantageous. To sanction such a result would be to render contracts worthless as a tool of commerce.").

Simply put, Elliott's objections are rooted in hindsight, not the type of exceptional circumstances warranting invalidation of a clear and broad agreement. Consequently, nothing alleged in the Complaint or anywhere in Elliott's submissions gives rise to a genuine issue of material fact that would prevent a ruling in Defendants' favor.

### SUPPLEMENTAL ARGUMENT SECTION

**IV.   THE DRAFT AGREEMENT IS ADMISSIBLE TO ESTABLISH THE CONTENT OF THE "PIECE OF PAPER" IN WHICH PLAINTIFF INDISPUTABLY SIGNED FIVE YEARS AGO**

This Court's July 31, 2020 Order (ECF Doc. No. 166) held that in order to establish that the signed copy of the Agreement was lost or destroyed, Defendants should exhaust all efforts to obtain from Pacheco—the sole remaining individual who may have a copy—any information he might have on the whereabouts of the signed Agreement. Given that Defendants have met this burden, there is no genuine dispute of fact that would suggest Plaintiff has a basis for trial.

A.   The Original Signed Agreement is Not Required Under Rule 1004

Where, as is here, the parties establish that the original has been lost, the original is not required and other evidence of the content of a writing is admissible. *See* Fed. R. Evid. R. 1004 (stating that an "original is not required and other evidence of the content of a writing . . . is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith; [or] (b) an original cannot be obtained by any available judicial process."). As this Court acknowledged in its March 30, 2021 Order, Defendants have exhausted all efforts to obtain the original signed Agreement and "may invoke Rule 1004(a) and (b) to establish the content of the Agreement." ECF Doc. No. 183 at p. 2.

First, it is undisputed that none of the parties are not in possession of the original signed Agreement. *See* SUF ¶¶ 14-15, 18-24. Plaintiff himself concedes that while he signed a "piece of paper," he did not retain a copy of the document. *See* ECF Doc. No. 132-1, at ¶ 7. As set forth in the Declaration of Joseph Anthony Cartagena dated September 16, 2019 (ECF Doc. No. 131-1), the only individuals who may have a copy of the signed Agreement were Mr. Cartagena himself and Mr. Pacheco. *See* ECF Doc. No. 131-1, at ¶¶ 8-9. Mr. Cartagena conducted a reasonable search and confirmed he was not in possession of the signed Agreement. *See id.*

Second, Defendants expended a significant amount of time and resources to obtain evidence from Mr. Pacheco directly via subpoena, but those efforts were unsuccessful. *See* ECF Doc. No. 183, at p. 2 (outlining Defendants' exhaustive efforts to serve Mr. Pacheco with a subpoena). The July 31, 2020 Order held that in order to establish that the signed copy of the Agreement was lost or destroyed, Defendants should exhaust all efforts to obtain from Pacheco any information he might have on the whereabouts of the signed copy of the Agreement. ECF Doc. No. 166. Defendants have done just that. The Court's Order on March 30, 2021 confirmed that it was satisfied with the exhaustive efforts Defendants employed in attempts to obtain direct evidence from Mr. Pacheco regarding the whereabouts of the agreement. ECF Doc. No. 183. It is now clear that despite these exhaustive efforts, Mr. Pacheco cannot—or does not want to be— found. Indeed, the Federal Rules of Evidence consider a witness "unavailable" under similar facts present here, where there have been diligent efforts to serve a witness. *See United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 176 (S.D.N.Y. 2006) ("inability to locate a witness invokes the Rule 804(a)(5) unavailability [hearsay] exception, which states that a declarant is adequately unavailable where 'the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means.'") (citing Fed. R. Evid. 804(a)(5)). As

13047698.2

such, the signed copy of the Agreement is evidently lost or destroyed, and the best evidence rule should apply. *Allegra v. Bowen*, 670 F. Supp. 465, 468 (E.D.N.Y. 1987) (noting the "'best evidence' rule, excuses production of the original if it cannot be obtained by available judicial process or procedure, the rationale being that if it cannot be obtained by either party or court, it is as inaccessible as though it had been lost or destroyed").

      B.      <u>The Statements Set Forth in the Kupinse Declarations are Admissible to Serve as Further Evidence Supporting Proper Application of the Best Evidence Rule</u>

Notwithstanding the appropriateness of the best evidence rule, as noted above, the emails provided confirm that at least around the time Mr. Elliott filed this action, Mr. Pacheco was not in possession of the document and believed that he might never have possessed it.  Although not sworn, these statements are admissible as an exception to the hearsay rule in the Federal Rules of Evidence.

Here, the statements set forth in the Kupinse Declarations are admissible forms of evidence that fall within the hearsay exceptions—specifically as present sense impressions and expressions of Mr. Pacheco's then-existing state of mind. *See* Fed. R. Evid. Rules 803(1), 803(3). A present sense impression is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(a). Mr. Kupinse had direct contact with Mr. Pacheco regarding Mr. Pacheco's unfruitful efforts to locate the signed Agreement at issue. ECF Doc. No. 161; March 17 Kupinse Decl., Exhibit 1 (ECF Doc. No. 181-9). At Mr. Kupinse's direction, Mr. Pacheco searched for a signed copy of the Agreement as early as March, 2019, and promptly responded to Mr. Kupinse, explaining that he searched for the document, that he was initially "99.9%" and then after further search, "100% sure" that he "was never in possession of the Work for Hire agreement" and "sure [that he] never received it." ECF Doc. No. 161, ¶¶ 6-8; March 17 Kupinse Decl., Exhibit 1 (ECF Doc. No. 181-

13047698.2

9).[8] These statements were made contemporaneously with Mr. Pacheco's unsuccessful search for the signed Agreement. *See Auricchio v. Town of DeWitt*, 2013 WL 868261 at *3 n.20 (N.D.N.Y. Mar. 7, 2013) (holding that a statement describing an event as perceived was admissible as a present sense impression). The evidence is similarly admissible under the "then-existing mental condition," given that Mr. Pacheco indicated that he would "retrace [his] footsteps," and reported to Mr. Kupinse the results of his failed search after some "digging." *See* ECF Doc. No. 161, ¶¶ 6-8; Fed. R. Evid. 803(3) ("A statement of the declarant's then-existing state of mind [is not excluded by the rule against hearsay] . . . but not including a statement of memory or belief to prove the fact remembered or believed."). Even if these statements are not admissible hearsay under the Rule 803 exceptions, Defendants have now submitted authenticated documentary evidence that Mr. Pacheco searched for, and was unable to locate, a signed copy of the agreement. March 17 Kupinse Decl., Exhibit. 1 (ECF Doc. No. 181-9).

C.  The Draft Agreement is the "Piece of Paper" Plaintiff Signed Years Ago, and Fatal to His Claims

Elliott simply has no information to controvert the conclusion that the Draft Agreement, with the exception of the signature, is the "piece of paper" he signed five years ago. As set forth above, *supra* at 10-11, the Draft Agreement is backed by legitimate testimony and evidence including: (1) the agreement was drafted by a lawyer at Mr. Cartagena's request after Mr. Elliott repeatedly insisted that he contributed to the Track and demanded compensation for his alleged work (SUF ¶19); (2) the draft agreement was specifically tailored with Mr. Elliott's information, including his name and driver's license number (SUF ¶¶ 19-21); (3) the draft agreement is, as

---

[8] As set forth in the March 17 Kupinse Decl., Exhibit 1 is submitted on a redacted basis as it contains sensitive business information and information irrelevant to this action. *See* March 17 Kupinse Decl., ¶ 6 (ECF Doc. No. 181-8). Nothing related in any way to the Agreement at issue is redacted, and should the Court require review of the document in its entirety, Defendants will provide the document to the Court for *in camera* inspection. *Id.* at ¶¶ 7-8.

Plaintiff himself concedes, a single page agreement that gave up Plaintiff's claimed rights (SUF ¶¶ 17, 19). Moreover, to the extent that the Court believes any material statements are hearsay, the surrounding material submitted previously is sufficient to invoke the residual exception under the totality of the circumstances as set forth in Fed. R. Evid. 807. *See* Fed. R. Evid. 807 ("a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804 where: (1) the statement is supported by sufficient guarantees of trustworthiness in the totality of the circumstances; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.").

## CONCLUSION

For the foregoing reasons, the Court should hold that as a matter of law, Elliott cannot create a genuine issue of material fact that would show that he did not assign away any rights he may have had.  This Court should dismiss Elliott's Complaint in full and with prejudice accordingly.

13047698.2

Dated:  New York, New York
       April 12, 2021

                        Respectfully submitted,

                        MITCHELL SILBERBERG & KNUPP LLP

                        By:  /s/ Eleanor M. Lackman
                            Eleanor M. Lackman (eml@msk.com)
                            Elaine Nguyen (eln@msk.com)
                            437 Madison Avenue, 25th Floor
                            New York, New York 10022
                            Phone:  (212) 509-3900
                            Fax:  (212) 509-7239

                            *Attorneys for Defendants Joseph Anthony
Cartagena (p/k/a Fat Joe); Reminisce Smith
Mackie (p/k/a "Remy Ma"); Remynisce Music;
Joey and Ryan Music; Sneaker Addict Touring
LLC; Terror Squad Productions, Inc.; Terror
Squad Entertainment; RNG (Rap's New
Generation); Warner Chappell Music, Inc.; and
Warner-Tamerlane Publishing Corp.*