UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| | CIV. NO.<br>1:19-CV-01998-NRB |
| ERIC A. ELLIOTT (P/K/A FLY HAVANA);<br><br>*Plaintiff*<br><br>vs.<br><br>JOSEPH ANTHONY CARTAGENA (P/K/A FAT JOE);<br><br>*Defendants* | **CAUSES OF ACTION**<br><br>1. DECL OF AUTH.-COMP.<br>2. DECL. OF OWNER-COMP.<br>3. DECL. OF AUTH.-SR<br>4. DECL OF OWNER.-SR<br>5. ACCOUNTING<br>6. CONSTRUCTIVE TRUST<br>7. UNJUST ENRICHMENT<br>8. QUANTUM MERUIT<br>9. CONVERSION<br>10. MONEYS HAD AND REC.<br>11. BREACH FIDUC. DUTIES<br>12. NEGLIGENCE<br>13. FRAUD/NEG. MISREP.<br>14. CIVIL CONSPIRACY<br><br>***ORAL ARGUMENT<br>REQUESTED*** |

## Supplemental Memorandum in Support of Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment

### I.   INTRODUCTION

Defendants' summary judgment motion must be rejected because they have not satisfactorily explained why the signed document is unavailable, pursuant to the Best Evidence Rule. Furthermore, even if the "draft agreement" is admitted as a substitute, Defendants do not address that the agreement is invalid for lack of consideration.

Defendants have renewed their motion for summary judgment on the existing papers, and filed a supplemental memorandum. Plaintiff notes that the supplemental memorandum was supposed to be restricted to the Best Evidence Rule issue and their efforts to contact Elis Pacheco, but they instead use it to address other issues, such as the allegation that defendant Cartagena engaged in fraud.

In any case, Defendants' supplemental memo is legally and factually deficient in all respects, both in its attempts to address the Best Evidence Rule and its attempts to excuse defendant Cartagena's fraud. Plaintiff incorporates by reference his summary judgment opposition papers he previously filed which extensively addressed other arguments such as statute of frauds (Doc. Nos. 151-58, 163, 170, 182), and files this supplemental memorandum in further opposition.

Regarding the Best Evidence Rule, Defendants have been arguing to this Court that Plaintiff assigned his rights via a contract. As this Court well knows, Defendants do not have an original signed document. They therefore claim in a motion for summary judgment that an unsigned "Draft Agreement" can be used under the Best Evidence Rule as evidence of the original. Defendants stated in their original motion for summary judgment that defendant Cartagena "may" have given the signed version to his then-manager Elis Pacheco.

Plaintiff opposes this Best Evidence argument on many grounds, including the fact that the unsigned document is an admitted draft which does not even name the correct party. However, the Court has indicated that before assessing the Best Evidence argument, it needed Defendants to attempt to contact Elis Pacheco to determine what happened to the signed document. To invoke the Best Evidence Rule, it is required that the absence of the original be satisfactorily explained.

Defendants claim they did make extensive efforts to contact, serve, and subpoena Mr. Pacheco, but that they were unable to do so. They therefore submit a hearsay statement from Mr. Pacheco, whom they claim stated that he was 100% sure he was never given the signed document in question.

Defendants fail to comprehend that their own admissions are fatal to their effort to invoke the Best Evidence Rule. The Best Evidence Rule *requires* that the absence of the original be non-speculatively explained; yet Defendants have never proffered *any* explanation for the document's absence. Defendant Cartagena's declaration only stated that he "may" have given it to Pacheco. Yet, Defendants always knew that Pacheco was 100% sure he was never given it. Despite this, Defendants gave the court no other explanation or facts.

If Defendants cannot even provide basic facts regarding what happened to the document, ***then they cannot invoke the Best Evidence Rule***. Keep in mind that this is not a situation where a signed copy is available; here, there is no signed document, and the document presented to the Court is admitted by Defendants ***to be a draft***. It is Defendants' burden to justify the use of the Best Evidence Rule, something they have simply not done.

Given that the Best Evidence Rule cannot be invoked, and given that this is the entire basis for Defendants' motion, this motion must be denied.

However, even if the Best Evidence Rule was properly invoked, Defendants' motion must still be denied. If the "draft agreement" is accepted as an accurate copy of the original agreement, then it must be taken as it is. The "draft agreement" glaringly does not identify any consideration for plaintiff, without which the agreement is invalid. Thus, even if the draft agreement is admissible under the Best Evidence Rule, the contract is an invalid nullity due to lack of consideration. It is also invalid due to fraud and breach of fiduciary duties.

## II.  Legal Standards

Under Fed. R. Civ. P. 56, a moving party is entitled to summary judgment only when the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. On such a motion, a court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Aetna Cas. and Sur. v. Aniero Concrete, 404 F. 3d 566 (2nd Cir 2005) (citing Coach Leatherware Co., Inc. v. AnnTaylor, Inc., 933 F.2d 162, 167 (2d Cir.1991); Knight v. U.S. Fire Insurance Co., 804 F.2d 9 (2d Cir.1986)).

Fed.R.Civ.P. 56(d) requires a court to grant a party opposing a motion additional time for discovery where "that party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Sahu v. Union Carbide Corp., 418 F. Supp. 2d 407 (S.D.N.Y. 2005).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir.2010). On a summary judgment motion, the district court "may not make credibility determinations or weigh the evidence.... Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Id. at 545-46 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Well-pled allegations in the Complaint are considered true for purposes of a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Chambers v. Time Warner, Inc., 282 F. 3d 147, 152 (2d Cir. 2002) (stating that a court at the beginning of a case should be "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor"). A Rule 12(b)(6) dismissal is proper only when the complaint fails to allege

sufficient facts under a cognizable legal theory. Id. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U. S. 544, 570 (2007)). This includes all "reasonable inference[s]" that can be drawn from the pled facts and allegations. Id.; Chambers, *supra*.

The purpose of pleading is not to prove the claims, but to simply put Defendants on notice of what they must defend against.

## III. APPLICATION AND ANALYSIS

### a. Defendants have Defeated their Own Best Evidence Argument by Admitting that they Have No Explanation for the Whereabouts of the Document, and that the Secondary Evidence they Present is just a Draft

#### i. The Best Evidence Rule Requires a Nonspeculative Explanation for the Absence of the Original Document

Defendants have presented an unsigned "Draft Agreement" to the Court contending that Plaintiff signed the document, but that the original is lost. Defendants seek to have the unsigned document admitted under the Best Evidence Rule contending that the original is unavailable. Plaintiff vigorously contests that the unsigned document is the document he signed.[1]

The Best Evidence Rule, as applied to situations such as these, can only be invoked where the party offering the unsigned non original document provides a concrete, credible, and nonspeculative reason for the absence of the document. Schozer v. Wm. Penn Life Ins., 644 NE 2d 1353 (NY 1994).[2] The burden is on the party invoking the Best Evidence Rule to explain the original's absence. Id. The more important the document is to the party's defense of the case, the

---

[1] As explained in the summary judgment opposition, the proffered document is clearly a draft. Defendants have admitted that it is a draft. Doc. No. 156, at ¶25. It has the wrong company listed, it identifies no consideration, and its terms do not even apply to Plaintiff (it identifies plaintiff as having worked for hire, when that term has no applicability to this dispute). Id. ***An admitted draft cannot be used under the Best Evidence Rule.***

[2] The Second Circuit has held that the New York Best Evidence Rule is analogous to the Federal Rule. Burt Rigid Box v. Travelers Property Cas. Corp., 302 F. 3d 83, 91-92 (2d Cir. 2002) (citing Schozer, *supra*)

higher the burden to explain the original's absence. Id. The proponent of the secondary evidence has "the heavy burden of establishing, preliminarily to the court's satisfaction, that it is a reliable and accurate portrayal of the original." Id. If there is a sufficient basis for admission, "the secondary evidence is subject to an attack by the opposing party not as to admissibility but to the weight to be given the evidence, with [the] final determination left to the trier of fact." Id.

In a New York appellate division case, the plaintiff offered a copy of a signed contract, but not the original. Stathis v. Estate of Donald Karas, 130 AD 3d 1008 (NY App. Div. 2015). An attorney for the plaintiff stated that the original *may* be have been in the possession of someone who had died or their relative. The trial court admitted the copy, but was reversed on appeal. Id. The appellate court held that *the speculative and vague description of where the original might be* did not allow the invocation of the Best Evidence Rule, and that the unavailability of the document had not been established. Id. Note that the appellate court reversed even where a signed copy of the document existed.[3]

In other words, the Defendants in this case have to sufficiently explain and identify what happened to the original to be able to invoke the Best Evidence Rule. They cannot say "We don't know what happened," especially when they want a case entirely dismissed based on the allegedly missing document.

### ii.  Defendants Do Not Explain what Happened to the Original, and thus Cannot Invoke the Best Evidence Rule

As part of the admissibility inquiry, the Court has to assess whether the unavailability of the original document has been satisfactorily explained. See Fed. RE 1004.

Defendants have not even remotely met their burden to identify as a preliminary matter what happened to the original document, especially considering that they want the whole case

---

[3] The Court's initial summary judgment opinion referred to Rule 1003, and held that the unsigned "draft agreement" was a duplicate. As Plaintiff previously noted in his September 11, 2020 letter, Rule 1003 is entirely inapplicable to this matter and governs actual photographic or electronic reproduction. Doc. No. 170.

dismissed based on the document. Furthermore, because Defendants are moving for summary judgment, any material dispute of fact about what happened ***must be construed in Plaintiff's favor***.

The only proffered explanation in Defendants' summary judgment papers for the absence of a signed document was from defendant Cartagena, who speculatively stated: "I believe I may have provided the document to my then-manager, Mr. Elis Pacheco." See Doc No. 131-1, at ¶9. Defendant Cartagena offered no testimony—in the initial motion or supplemental brief—about chain of custody or where the document was kept, the last time it was seen, when it was transferred, nor any other details required by Stathis and Schozer. His description of his search for the document is also conclusory and devoid of facts. Id.

The Court thus asked Defendants to conduct discovery and contact Mr. Pacheco to determine what happened to the original. Defendants' supplemental motion informs the Court that Pacheco never appeared in response to a subpoena, but that Pacheco told defense counsel on an earlier occasion ***he was "100%" sure that he was never given any such document***. Defendants themselves ask in their summary judgment motion that the Court use such hearsay statements in its Best Evidence Rule analysis. See Doc. No. 184-11, at p.17-18. Defendants therefore argue to this court that the original is unavailable, and that the unsigned "draft agreement" should be used under the Best Evidence Rule.

By any measure, Defendants have not met their burden to satisfactorily explain what happened to the original. They entirely ignore that they ***have to concretely and nonspeculatively explain why the original is unavailable.*** Schozer, *supra*; Stathis, *supra*.

The sole explanation provided by Defendants for what happened to the document is defendant Cartagena's speculation that he ***may*** have given the original to Pacheco. The Court wanted efforts made to determine if this was true. Yet, Pacheco was always 100% sure that he

never had the original. This is a monumental problem for Defendants; Defendant Cartagena has given no explanation whatsoever to the Court for the original's unavailability despite knowing that his speculative explanation was unequivocally denied by the other involved person. This does not satisfy Defendants' burden.

Note that Plaintiff has not even been given the ability to cross examine defendant Cartagena on his speculation about what he did with the signed document; Plaintiff has the right to confront the Defendant on an issue so momentous to the case.[4] See Stathis, 130 AD 3d at 1010 (using deposition testimony to examine whether the absence of the original was sufficiently explained); Doc. No. 153 - FRCP 56(d) Declaration, at p.5-6 (stating that deposition of Cartagena needed).

Defendants' failure to proffer any explanation for what happened to the original means that the Best Evidence Rule cannot be invoked; this is especially so at summary judgment where disputes of fact are construed in Plaintiff's favor. Defendants are telling this court: "We have no idea what happened," which requires denial of the motion.

### iii.   The "Draft Agreement" Presented to this Court as Secondary Evidence is an Inadmissible Draft

As part of the admissibility inquiry, the Court must not only assess whether the unavailability of the document has been explained, but also assess whether the secondary evidence offered by the Defendants is an accurate and complete copy of the original.

The evidence overwhelmingly indicates that the "Draft Agreement" proffered by Defendants is not an accurate and complete copy of the original.

**First**, Defendants have admitted that the document *is just a draft*, not the final version. Doc. No. 156, at ¶25-28. Defendants' motion papers are replete with references to unsigned

---

[4] Plaintiff submitted an extensive Rule 56(d) declaration documenting what discovery is necessary to adjudicate this motion. Doc. No. 153. The declaration erroneously referred to Rule 56(f); it should have referred to 56(d).

document as a "Draft Agreement" or a "Draft Assignment." Id. This undercuts defendant Cartagena's assertion that this "draft" was the final document. This was not even a final version by Defendants' own admission! This alone makes use of the Best Evidence Rule improper.

**Second**, the content of the "draft agreement" makes it clear that it is in fact a draft, and not an accurate or complete portrayal of the signed document. This "Draft Agreement" lists:

- the wrong party (R 4 So Valid),
- does not identify *any consideration* for Elliott,
- nonsensically claims that Elliott provided services for Defendants, and
- nonsensically claims it is work for hire despite that term having no applicability to music copyrights nor Elliott's situation.

These are major problems for any argument that this "draft agreement" accurately and completely reflects the contents of the final agreement. These problems must be addressed, but Defendants have glaringly failed to do so.

**Third**, defendant Cartagena even admits that his attorney Erica Moreira drafted *multiple* documents regarding the contract, which have not been provided to Plaintiff or the court. See Doc. No. 131-1, at ¶4.

**Fourth**, Plaintiff has been clear that the content of this Draft Agreement does not comport with his recollection of its content, nor what Cartagena told him it contained. Doc. No. 155, at p.1-2.

The bottom line is that all evidence points to the fact that this "draft agreement" is not a copy of the original signed document and does not accurately reflect its contents.

Even if the Court does hold that the "draft agreement" is admissible, that holding is still fatal to Defendants' claims. As explained *infra*, if this is in fact an accurate and complete recitation of the terms of the deal, then there is no consideration provided for in the document to Plaintiff and the contract is invalid.

### iv.  Defendants have No Credibility and this is Not the Type of Situation that would Allow Invocation of the Best Evidence Rule Even Assuming the Absence of the Document was Explained

The Best Evidence Rule is properly invoked where the absence of the original is satisfactorily explained and there are no surrounding indicia of bad faith or a lack of credibility. As Plaintiff's response to summary judgment lays out, the Defendants have acted in bad faith and have at all points taken steps which prejudiced Plaintiff's rights:

- prevented Plaintiff from keeping a copy of the signed document,

- lied to Plaintiff repeatedly about the contents of the deal, before and after it was signed,

- threatened him before and after its signing,

- fraudulently registered the copyright to exclude him as an author in violation of the Copyright Act, § 506(e), and

- claimed in this lawsuit that Elliott is not an author, despite privately and publicly acknowledging Elliott as an author in 2016.

Doc. No. 156, at ¶25.

Also establishing bad faith is that Defendants have not produced the other multiple documents prepared by Erica Moreira regarding Elliott, nor the electronic copy defendant Cartagena claims to have given to his concierge for printing. See Doc. No. 131 - Cartagena Declaration.

Also impeaching the credibility of Fat Joe and his team is the fact, as Plaintiff's motion points out, that he has a history of violence and is a notorious cheat. See Doc. No. 153, at p.12-13; Doc. No. 6, at p.9. He cheats his partners and friends, and *in addition, he has also been convicted of tax evasion*, which seriously impugns his credibility.  See "Rapper Fat Joe Sentenced to Four Months in Prison for Failing to File Income Tax Returns On Over $3.3 [Million] in Taxable Income," Department of Justice (June 24, 2013), https://www.justice.gov/usao-nj/pr/rapper-fat-joe-sentenced-four-months-prison-failing-file-income-tax-returns-over-33.

Any dispute of credibility is a material dispute of fact which must be construed in Plaintiff's favor at summary judgment, especially where there are pending well-pled fraud and breach of fiduciary duty claims against Defendants. Credibility is an issue reserved for the jury.

Defendants should not be allowed to foist a draft document on this Court when they have caused the original's unavailability, have not offered any explanation for its unavailability, and have acted in bad faith at all subsequent times.[5]

***The mere fact that they have nonsensically denied Plaintiff's authorship in this lawsuit, and fraudulently excluded him from the copyright registration as an author, is proof of bad faith.***

### v. Even if Admitted, the Weight to be Accorded to the Agreement is a Dispute of Fact which Must be Construed in Favor of Plaintiff

Even if there is a sufficient basis for admission, "the secondary evidence is subject to an attack by the opposing party not as to admissibility but to the weight to be given the evidence, with [the] final determination left to the trier of fact." Schozer v. Wm. Penn Life Ins., 644 NE 2d 1353 (NY 1994).

Here, even if this Court accepts the draft agreement under the Best Evidence Rule, summary judgment is still not appropriate. Before conducting any discovery, as explained *supra*, Plaintiff has established that the agreement is a draft, with the wrong party listed, with no consideration identified, and which bizarrely claims it is a work for hire agreement even if it is admissible.

There is a material dispute of fact about whether to credit this agreement, which can only be decided by a fact finder, not at summary judgment.

---

[5] Remember, Plaintiff repeatedly confronted defendants Cartagena, Kharbouch, and Green over their fraudulent conduct, and was either given the run around or threatened.

**b.      The "Draft Agreement" is Invalid Due to the Statute of Frauds**

The Copyright Act has a built-in statute of frauds. See 17 USC § 101, 204(a). Section 204(a) states unequivocally: "A transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a). This is a rigid default in favor of the author, and parol evidence cannot be used to circumvent the statute of frauds. See Doc. No. 151, at p. 16-17.

Defendants' supplemental memorandum argues that because Plaintiff acknowledges he signed a document, that therefore the statute of frauds is satisfied. Doc. No. 184-11, at p.10. This is nonsense. Defendants themselves are clear that the document they have brought to court is a "Draft Agreement." This is not what Plaintiff signed. This "Draft Agreement" lists the wrong party, does not identify *any consideration* for Elliott, nonsensically claims it is work for hire, and defendant Cartagena even admits that his attorney Erica Moreira drafted multiple documents which have not been provided to Plaintiff or the court. Furthermore, Plaintiff has been clear that the content of this Draft Agreement does not comport with his recollection of its content, nor what Cartagena told him it contained.

This is exactly the type of situation where the Copyright Act defaults to Mr. Elliott, and Defendants have failed to meet their burden to show they are entitled to summary judgment.

**c.      The "Draft Agreement" is Illegitimate due to Lack of Consideration**

Every agreement must contain a bargained-for exchange, which is a change in the parties' positions. See Cronk v. State of NY, 100 Misc. 2d 680 (NY Court of Claims 1979); Mangus v. Present, 135 So.2d 417, 418 (Fla. 1961); Bayshore Royal Co. v. Doran Jason Co., 480 So. 2d 651 (Fla. 2nd DCA 1985). Each party must incur a legal detriment or benefit. Id. In other words, a contract cannot be completely one sided.

Here, the alleged contract only states that there is "valuable consideration" and later states that the "The consideration set forth above is full and complete consideration for all of Elliott's [work for hire] services . . ." See Doc No. 131-4. The alleged contract also provides: "This Agreement contains the entire understanding of the parties hereto relating to the subject matter hereof." Id.

However, the consideration for Elliott is ***never identified or set forth within the contract***. This contract is entirely one sided.

Under the parol evidence rule, evidence outside the agreement cannot be considered in most circumstances. See Ungerleider v. Gordon, 214 F. 3d 1279 (11th Cir. 2000) (stating that where alleged contract is completely integrated, parol evidence is not allowed). Because the $5,000 is not provided for in the alleged contract, which expressly states that it is the entire understanding of the parties, the payment of $5,000 is inadmissible parol evidence. Furthermore, it should be noted that the contract identifies the unspecified consideration as being for Elliott's "services," not an assignment, even though Elliott rendered no services to or for Defendants.

Ironically, Defendants rely upon the merger clause to attempt to preclude any evidence that defendant Cartagena lied to Plaintiff to induce him to enter into the contract, failing to realize that the merger clause effectively renders this contract null and void for lack of consideration. See Doc. No. 144, at p.10; Doc. No. 184-11, at p.13.

Plaintiff's initial opposition papers also argued, and which has never been addressed by Defendants, that the $5,000 payment was already due and owing to Plaintiff by virtue of this co-authorship of the song and therefore cannot serve as consideration even if the merger clause and parole evidence rule were to be ignored. See Doc. No. 151, at p.21-22.

Simply put, this contract as drafted (if ruled admissible under the Best Evidence Rule) is patently defective on its face for lack of consideration, as well as being unsigned. This document

was drafted by sophisticated attorneys and music stars who have been doing this for a long time, and foisted upon an unsuspecting, unsophisticated songwriter who had been cut out of a major song. They deserve no benefit of the doubt, and as a matter of law the contract must be construed against them, the drafters. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla. 2003) (stating contracts construed against drafters).

### d. Defendants' Procedurally Improper Arguments against the Fraud Cause of Action are Not Properly Raised, and are Legally and Factually Deficient

As Plaintiff's initial response pointed out, Defendants' motion for summary judgment entirely ignored that Plaintiff had alleged many claims against Defendants that either stood independently of the alleged agreement, or invalidated any alleged agreement to the extend the Court allowed the invocation of the Best Evidence Rule:

> Defendants have moved for summary judgment only on the contract validity issue, but have not addressed the declaration of authorship, breach of fiduciary duties, fraud, or negligence claims. They are improperly attempting to have the entire case dismissed while failing to address all alleged claims.

Doc. No. 151, at p.8. All of these claims and argument must be addressed before summary judgment can be granted. See Doc. No. 170, at p.2.

Although Defendants acknowledge that the Court only permitted them to renew their summary judgment on the Best Evidence Rule grounds, they nevertheless include 3 pages of argument claiming that Plaintiff's fraudulent inducement cause of action is meritless. Doc. No. 184-11, at p.12-15. To be clear, Defendants did not move for summary judgment on the fraud claims, were not authorized to do so, and cannot now in a supplemental memo pretend that they did. They have put forth no statement of undisputed facts in support therefore, they have not addressed the well-pled allegations in the complaint, and they have provided nothing else in support. Plaintiff is entitled to conduct discovery to prove the well-pled claims in his complaint.

It is clear that Defendants realize that the fraudulent inducement claim prevents a grant of summary judgment (as does the breach of fiduciary duty claim), as it invalidates any agreement, and are now belatedly attempting to address it. It must be noted that although Defendants conclusorily and improperly now legally attack the fraud claim in the supplemental memo, they still do not address the breach of fiduciary duty claim which also invalidates any alleged agreement, and also fail to address the negligence and authorship claims which stand distinct and apart from any alleged agreement. Summary judgment at this point in the case is simply improper.

With respect to Defendants' legal arguments on fraud, they are meritless. They claim that where the contract itself contradicts the alleged false statements, and contains a merger clause, that a fraud in the inducement claim cannot later be brought on such a basis. See Doc. No. 184-11, at p.12-14 (citing Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc., 262 F. Supp. 2d 1334, 1342-43 (S.D. Fla. 1999) (stating "[f]or a variety of reasons, Florida courts have made clear that no action for fraud in the inducement will lie where the alleged fraud contradicts the subsequent written contract."). Defendants therefore claim that Cartagena's fraudulent assurances on March 6 and 14 that Elliott was going to be paid over time as the song made money, and that the $5,000 was merely the first payment, are not cognizable because they are not in the "Draft Agreement." Id.

There is a massive hole in Defendants' argument that they are hoping the Court misses: ***The "Draft Agreement" nowhere specifies the actual consideration Plaintiff is to receive, and therefore cannot contradict Elliott's allegations about what he was fraudulently promised***.

Plaintiff has already argued *supra* that the contract is invalid because it does not identify what consideration Plaintiff is to receive. Indeed, Defendants' reliance on a merger clause argument is ironic, because according to Defendants' own argument it is inappropriate to

consider parol evidence of consideration. The lack of consideration alone renders the "Draft Agreement" a nullity.

Moreover, because the four corners of the contract nowhere mention the actual consideration for Plaintiff, there is obviously nothing in the "Draft Agreement" that contradicts Plaintiff's allegations about what he was fraudulently promised by Cartagena. As the "Draft Agreement" does not contradict the misrepresentations alleged by Plaintiff, Defendants' argument against the fraud allegations are illegitimate.

Discovery will show and prove that Plaintiff was induced to sign a document based on several fraudulent representations by defendant Cartagena:

 a. **Around March 6, 2016** - Telephone - (1) Plaintiff was going to get "some bread" up front and more later, and (2) that Fat Joe was going to work with Plaintiff to make more hits and help Plaintiff's career.

 b. **March 14, 2016** - In Person, IHOP in South Beach - (1) that the $5,000 was just the beginning of the payments, (2) that more money was coming, (3) that the authors of the song would not see a lot of money, and (4) that Fat Joe was going to work with Plaintiff to make music, help his career, and take him under his wing.

See Complaint, ¶335; see also id. at ¶42; PSUF, at ¶18-24. The time and place of these phone calls and meetings are specified in detail, as is the nature of the fraudulent promises. See Complaint, at ¶39-59. The complaint also specifies that *when* Cartagena made these promises he knew they were not true, and thus fraudulent. Id. at ¶¶55, 336, 340.

The verified Complaint alleges that Plaintiff relied upon these promises, and as a result was led to believe that: "(1) Defendants would be providing more money later, (2) that Plaintiff was going to be properly credited, and (3) that Fat Joe was going to closely collaborate with Plaintiff on music as part of a incredible relationship and promote him in the world of hip hop." Id. at ¶338; PSUF, at ¶9, 23.

The complaint and declaration further specify that other than the $5,000 check on March 14, 2016: "Defendants never provided Plaintiff any other money, and never worked on music with him or promoted him. It is apparent that Defendants were leading Plaintiff on for the purpose of refusing to credit him on 'All the Way Up' and taking Plaintiff's ownership and compensation for themselves." Complaint, at ¶340. The Defendants also fraudulent excluded Plaintiff as an author on the copyright registrations.

Note that these are not bald allegations, but instead are factual allegations supported by documentary evidence including checks, photos, concert videos, Plaintiff's visit to Cool and Dre's studio, copyright registrations, and Plaintiff's subsequent encounter with defendant Shandel Green (Infared). Id. at ¶¶50, 60, 67, 95-98; Exhibit 3 - Infared Interview; Exhibit 4 - Fat Joe Concert Shout Out; PSUF, at ¶33-35, 36-39.

Defendants arguments against the fraud claims are not properly raised, and even if considered are entirely meritless—especially at this early stage of the case.

## IV.  Conclusion

Defendants' motion for summary judgment should be denied and discovery should take place on all claims. Defendants' motion does not even attempt to address several of Plaintiffs' claims, and the unsigned draft agreement that Defendants are attempting to use to dismiss this case is invalid.

To the extent the Court disagrees with Plaintiff, Plaintiff requests permission to amend the complaint to fix any defects.

*****

*Respectfully submitted,*
Francis Alexander, LLC
*/s/ Francis Malofiy*

_/s/ AJ Fluehr_

Francis Malofiy, Esquire
Alfred J. Fluehr, Esquire
_Admitted Pro Hace Vice_
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
_Law Firm / Lawyers for Plaintiff_
_/d/ April 26, 2021_

# Certificate of Service

I hereby state that a true and correct copy of the foregoing Supplemental Response in Opposition to Summary Judgment is being served in accordance with the Federal Rules of Civil Procedure on the following:

Jeremy Ross, Esquire
Adli Law Group
444 South Flower Street, Suite 3100
Los Angeles, CA 90071
Phone: (213) 623-6546
Direct: (213) 537-1270
Fax: (213) 623-6554
jeremy.ross@adlilaw.com
Attorney for Kharbouch Defendants

Tamar Duvdevani, Esquire
DLA Piper LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
T +1 212.335.4799
F +1 917.778.8799
M +1 646.696.1467
E tamar.duvdevani@dlapiper.com
*Attorney for Empire Distribution*

Eleanor Lackman, Esquire
David Steinberg, Esquire
Mitchell Silberberg & Knupp LLP
2049 Century Park East, 18th Floor,
Los Angeles, CA 90067
T: 310.312.3204
E: das@msk.com
*Attorneys for the Cartagena and Warner Defendants*

David Munkittrick, Esquire
Sandra Crawshaw-Sparks, Esquire
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036-8299
T: 212.969.3226
F: 212.969.2900

dmunkittrick@proskauer.com
Sandra Crawshaw Sparks (also in NYC)
2029 Century Park East
Suite 2400
Los Angeles, CA 90067-3010
T: (310) 284-4525
F: (310) 284-2193
Scrawshaw@proskauer.com
*Attorneys for BMG*

Richard Wolfe, Esquire
Wolfe Law
175 SW 7 Street
Latitude One Offices
Suite 2410
Miami, Florida 33130
rwolfe@wolfelawmiami.com
T: 305.384.7370
F: 305.384.7371
M: 305.401.3639
*Attorney for FNG, FNP, and Kobalt Defendants*

Brian Caplan, Esquire
Reitler Kailas & Rosenblatt LLC
885 Third Avenue, 20th Floor
New York, New York 10022
Main: 212-209-3050
Direct: 212-209-3059
Fax: 212-371-5500
Email: bcaplan@reitlerlaw.com
*Attorney for Reach Defendants*

Ilene Farkas, Esquire
Lauren Cooperman, Esquire
Pryor Cashman LLP
7 Times Square
New York, NY 10036
212.326.0188 office
212.798.6382 fax
ifarkas@pryorcashman.com
*Attorneys for Roc Nation, Sony, and Universal Defendants*

Hillel I. Parness
Parness Law Firm, PLLC
136 Madison Ave., 6th Floor
New York, NY  10016
C: 646-526-8261

O: 212-447-5299
E: hip@hiplaw.com

                    *****

                    *Respectfully submitted,*
                    FRANCIS ALEXANDER, LLC
                    */s/ Francis Malofiy*
                    */s/ AJ Fluehr*
                    Francis Malofiy, Esquire
                    Alfred J. Fluehr, Esquire
                    *Admitted Pro Hace Vice*
                    280 N. Providence Road | Suite 1
                    Media, PA 19063
                    T:  (215) 500-1000
                    F:  (215) 500-1005
                    *Law Firm / Lawyers for Plaintiff*
                    */d/ April 26, 2021*