UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
ERIC A. ELLIOTT (p/k/a FLY
HAVANA),

          Plaintiff,

      - against –

JOSEPH ANTHONY CARTAGENA (p/k/a
FAT JOE), et al.,

          Defendants.

------------------------------X

**MEMORANDUM AND ORDER**
19 Civ. 1998 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Eric A. Elliott ("Elliott") has brought this action alleging copyright infringement based on claims that he is the co-author and co-owner of the song "All The Way Up." Before the Court is defendants'[1] renewed motion for summary judgment. Central to this motion is the admissibility under Rules 1003 and 1004 of the Federal Rules of Evidence of a draft of a contract that defendants maintain establishes that Elliott contractually assigned away all of his rights in the song. For the following reasons, defendants'

---

[1] Plaintiff has sued over 25 defendants who fall into the following broad categories: 1) the named co-authors of the song "All The Way Up"; 2) the publishing entities of these co-authors; 3) other entities that allegedly own copyrights in the song; and 4) entities involved in the distribution and exploitation of the song. This motion was brought by a subset of defendants, and "defendants" in this Memorandum and Order refers to the moving defendants and other defendants who joined them. Those defendants are: Joseph Anthony Cartagena ("Fat Joe"); Reminisce Smith Mackie; Remynisce Music; Joey and Ryan Music; Sneaker Addict Touring LLC; Terror Squad Productions, Inc.; Terror Squad Entertainment; RNG (Rap's New Generation); Warner Chappell Music, Inc.; and Warner-Tamerlane Publishing Corp.

motion is granted in its entirety.

## BACKGROUND

Although the Court has previously set out many of the facts in this case in our July 31, 2020 Order, see Elliott v. Cartagena, No. 19 Civ. 1998, 2020 WL 4432450 (S.D.N.Y. 2020), we summarize the relevant facts necessary to resolve this motion, drawn from the complaint filed on March 6, 2019 ("Complaint"), ECF No. 6, and the materials submitted by the parties in connection with this motion and the prior motion for summary judgment.[2]

### I.   Meetings Regarding Elliott's Rights to The Song "All The Way Up"

The underlying facts are largely undisputed.  Central to the narrative is a meeting between Fat Joe and Elliott in March 2016 at which Elliott signed a "piece of paper" and received a $5,000 check.  See Compl. at ¶¶ 50-56.  This meeting was preceded by a call between Fat Joe and Elliott in early March 2016, in which Elliott requested payment "up-front or publishing going forward" as a means of credit or compensation for his contribution to "All The Way Up."  Parties' Original Rule 56.1 Stmts. ¶ 2[3]; Compl. at

---

[2]    Because this motion is a pre-discovery motion for summary judgment under Rule 56, some of the facts are drawn solely from the Complaint.  Except as otherwise noted, the facts relied on are either undisputed or construed most favorably to plaintiff.

[3]    "Parties' Rule 56.1 Statements" refer to Defendants' Supplemented Rule 56.1 Statement (ECF No. 185) and Plaintiff's Rule 56.1 Counterstatements (ECF Nos. 156, 187-2) filed in conjunction with this motion and the original motion for summary judgment.

41.

Following the conversation, Elliott and Fat Joe met at an IHOP in mid-March 2016. See Parties' Rule 56.1 Stmts. ¶ 5.  At this meeting, Fat Joe presented Elliott with a "piece of paper" and a $5,000 check, which had a memo line that read "write." Id. at ¶¶ 8-9; Compl. ¶ 50.  Following a short discussion, Elliott signed the "piece of paper," which he left with Fat Joe, and took the check, which he later deposited. Id. at ¶¶ 10-12.

**II.  Original Summary Judgment**

Five months after this action was commenced, a subgroup of defendants requested leave to file a motion to dismiss the Complaint in its entirety, asserting that the "piece of paper" signed at the IHOP meeting released all copyright claims and would dispose of the case. See ECF No. 112.  The Court responded by directing the parties to file any existing copies of the "piece of paper" and declarations explaining any lack of possession. See ECF No. 125.  Elliott, Fat Joe, and Erica Moreira, Fat Joe's transactional counsel at the relevant time, all submitted declarations stating that they were not in possession of the "piece of paper" signed at the IHOP meeting. See ECF Nos. 131-1, 131-2, 132-1.  Moreira stated that she had prepared a draft (the "Draft Agreement") at Fat Joe's request, incorporating information from Elliott's driver's license, see Moreira Sept. 18, 2019 Decl. at ¶¶

5-8(ECF No. 131-2), and Fat Joe attested that he printed this version of the document without changes and brought it to the meeting with Elliott.  See Cartagena Decl. (ECF No. 131-1).  Fat Joe further affirmed that he was unable to locate the signed version of the "piece of paper" after searching his home, personal belongings, and asking people "in [his] circle at the time."  Id. at ¶ 9.  According to both Fat Joe and Moreira, Fat Joe "may have provided the document to [his] then-manager, Mr. Elis Pacheco," although Fat Joe also noted that "[he] under[stood] that [Pacheco] indicated he was unable to locate a signed copy of the Agreement." Id.; see also Moreira Sept. 18, 2019 Decl. at ¶ 8-9(ECF No. 131-2).

On October 17, 2019, the Court held a pre-motion conference and granted defendants leave to file a pre-discovery motion for summary judgment limited to the issue of establishing the contents of the agreement signed at the IHOP meeting despite the absence of the signed version of the "piece of paper."  See ECF Nos. 135, 141.  Following briefing by the parties, see ECF Nos. 143-163, in which defendants relied on the best evidence rule to establish the contents of the agreement based on the Draft Agreement, the Court issued an order on July 31, 2020 denying defendants' motion without prejudice based on defendants' failure to exhaust all efforts to obtain sworn testimony from Pacheco regarding the location of the

-4-

signed version of the agreement.  <u>See</u> ECF No. 166.  The Court granted defendants leave to renew the motion for summary judgment after securing non-hearsay evidence sufficient to meet the requirements of Fed. R. Evid. 1004.  <u>Id.</u>

### III. Defendants' Efforts to Contact Pacheco

Pursuant to the Court's Order, defendants retained a process server and sought to serve Pacheco, who no longer worked with Fat Joe, with a deposition subpoena.  <u>See</u> Defs. Rule 56.1 Stmt. ¶ 36; Nguyen Decl. at ¶¶ 4-5 (ECF No. 184-1).  Defendants issued four subpoenas, dated August 24, 2020, September 1, 2020, September 14, 2020, and December 16, 2020, and made eleven unsuccessful attempts at service.  Nguyen Decl. at ¶¶ 5-13.  On January 15, 2021, defendants requested leave to file a motion for alternative service via certified mail, email, and Facebook, which the Court granted. <u>See</u> Parties' Rule 56.1 Stmts. ¶ 37.  As with the earlier attempts at service, defendants' alternative service efforts did not result in a response from Pacheco or his appearance at a noticed deposition.  <u>Id.</u> at ¶ 38.  Recognizing that defendants had exhausted all efforts to contact Pacheco, the Court granted defendants leave to renew their motion for summary judgment.  <u>See</u> ECF No. 183.

### STANDARD OF REVIEW

Summary judgment is properly granted where "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is considered to be material "when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," as well as the basis for the absence of genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (internal quotation marks and citation omitted).

"Only in the rarest of cases may summary judgment be granted against a party who has not been afforded the opportunity to

conduct discovery," because "[t]he nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." Christie's Inc. v. Davis, 247 F. Supp. 2d 414, 418-19 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).

**DISCUSSION**

I.   **Elliott Assigned His Rights By Signing The Agreement**

   A. The Draft Agreement is Admissible under Fed. R. Evid. 1003 and 1004.

The threshold issue in this case is the admissibility of the draft of the agreement signed by Elliott at the March 2016 meeting. As discussed above, the Court directed an extensive effort to locate a signed copy of the "piece of paper," which Elliott had signed at the IHOP meeting with Fat Joe.  Based upon those exhaustive efforts, it is clear that a signed copy cannot be located.  Plaintiff does not suggest otherwise.  Thus, this is one of the "rarest of cases" in which summary judgment is appropriate despite the lack of formal discovery.  Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000).

We start by examining whether defendants have established that the Draft Agreement is admissible to prove the contents of the agreement signed by Elliott.  According to the best evidence rule, "[a]n original writing . . . is required in order to prove its content unless these rules or a federal statute provides

otherwise." Fed. R. Evid. 1002. Two relevant exceptions to this rule are codified in Rules 1003 and 1004 of the Federal Rules of Evidence. The first exception is that a document may be admissible as a duplicate of the original document. Fed. R. Evid. 1003. It is undisputed that Elliott and Fat Joe met at an IHOP in March 2016. Parties' Rule 56.1 Stmts. ¶ 5. At the meeting, Fat Joe presented Elliott with a "piece of paper," which Elliott signed and left with Fat Joe, as well as a $5,000 check, which Elliott took with him and later deposited. Id. ¶¶ 8-12. Fat Joe's transactional attorney, Erica Moreira, has submitted a sworn declaration that she prepared the "piece of paper" following a request on March 2, 2016 from Fat Joe. Moreira Sept. 18, 2019 Decl. ¶¶ 4-7 (ECF No. 131-2). According to Moreira, the document that she prepared is the Draft Agreement, which was "tailored" to include Elliott's driver's license information, taken from a picture of Elliott's license that Pacheco had emailed to Moreira on the morning of March 11, 2016. Id. at ¶¶ 5-6; ECF No. 131-3. Later that afternoon, Moreira emailed the Draft Agreement to Pacheco and Fat Joe, titling the email "Work For hire for Andrew Eric Elliot – Writer who is claiming a portion of All The Way Up." ECF No. 145-1. Both of these emails have been submitted to the Court. Fat Joe's own sworn declaration states that he subsequently printed Moreira's Draft Agreement without altering it and brought

-8-

it to the meeting with Elliott.  Cartagena Decl. at ¶¶ 6,8 (ECF No. 131-1).  Accordingly, in our July 31, 2020 Order, we held that the Draft Agreement, ECF No. 145-1, is admissible as a duplicate to the same extent as the original agreement under Fed. R. Evid. 1003.  ECF No. 166 at 7-8.

Having found that the Draft Agreement is admissible as a duplicate of the original, the next issue is whether the duplicate is evidence of the contents of the agreement.  The answer is clearly yes, under the "well recognized exception [to the best evidence rule] . . . that secondary evidence may be admitted in lieu of the original provided the original has not been lost, destroyed or become unavailable through the fault of the proponent and provided the copy does not otherwise appear to be untrustworthy."  United States v. Knohl, 379 F.2d 427, 441 (2d Cir. 1967).  Defendants have invoked the exceptions listed in Rule 1004(a) and (b) to support the introduction of the Draft Agreement to establish the contents of the agreement signed at the March 2016 meeting.  Defs. Mot. at 15 (ECF No. 184-11).  With ample, unchallenged evidence that the Draft Agreement is the document that Elliott signed, the only issue is whether the defendants have adequately explained their inability to produce the signed version.

According to Rule 1004 of the Federal Rules of Evidence, "[a]n

original is not required and other evidence of the content of a writing . . . is admissible if: (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith; [or] (b) an original cannot be obtained by any available judicial process." Before seeking to "satisfy [this exception], the party seeking to prove the contents of the writing must establish a proper excuse for the nonproduction of the document and that the original did exist." Bobcar Media, LLC v. Aardvark Event Logistics, Inc., 354 F. Supp. 3d 375, 382 (S.D.N.Y. 2018) (internal quotation marks and citation omitted).  As an initial matter, there is no dispute that a signed, original version of this agreement existed, as has been attested to by both defendants and Elliott.  According to both Fat Joe and Elliott, during the March 2016 meeting, "Elliott signed the agreement, returned it to [Fat Joe], and took the check [presented with the agreement]."  Cartagena Decl. at 7 (ECF No. 131-1); see also Elliott Decl. at 11 (ECF No. 155) ("After I signed the document, he immediately took the document and did not provide me a copy.").  With no dispute regarding the existence of an original, signed version of the document, we next determine whether defendants have provided sufficient explanations for their inability to produce it.

> *i. Defendants Have Established That the Original Document is Lost.*

It is undisputed that the only parties present at the March

2016 meeting were Fat Joe and Elliott, and both parties agree that Fat Joe left the meeting with the sole copy of the signed agreement.  Therefore, any inquiry as to the location of the document must start with Fat Joe.  According to his September 16, 2019 declaration, Fat Joe has attempted to find the document but "cannot locate the agreement," even after "look[ing] in [his] home, [his] personal belongings, and [after] ask[ing] the people in [his] circle at the time if they had the signed copy of any information as to its whereabouts."  Cartagena Decl. at 9 (ECF No. 131-1). Given his inability to locate the document in his possession or in the possession of those close to him at the relevant time, Fat Joe concluded that he had "provided the document to [his] then-manager, Mr. Elis Pacheco."  Id.  Fat Joe's counsel, Moreira, echoed his belief that a document of this nature would likely have been kept in Pacheco's possession.  See Moreira September 18, 2019 Decl. at ¶ 8 (ECF No. 131-2) ("As Mr. Cartagena's then manager, it was typical for Mr. Pacheco to keep track of Mr. Cartagena's documents, and it was normal practice for me not to receive executed copies of every document I drafted for Mr. Cartagena.").  As stated above, given the significance of this document to this case, the Court issued its July 31, 2020 Order, requiring defendants to obtain non-hearsay evidence from Pacheco sufficient to meet the requirements of Rule 1004, or to obtain the original document.

ECF No. 166.

Defendants thereafter embarked on a months-long effort to contact Pacheco.  Over the following six months, defendants issued four subpoenas and made nineteen unsuccessful attempts to serve Pacheco. See ECF Nos. 169, 173, 175, 181.  These service attempts included eleven attempts of in-person service on Pacheco's last known address, as well as additional plausible addresses.  (ECF Nos. 169, 173, 175).  Defendants even took the additional step of requesting leave, which was granted, to serve Pacheco through alternative means via certified mail, email, and Facebook.  (ECF Nos. 175, 180, 181).  Having conducted "a diligent search in the location where the document was last known to have been kept," defendants have established the loss of the document. Cosmopolitan Shipping Co. v. Cont'l Ins. Co., 514 F. Supp. 3d 614, 619 (S.D.N.Y. 2021).[4]

While plaintiff argues that defendants must "identify what happened to the original to be able to invoke the Best Evidence

---

[4]      The two New York state cases that Elliott cites to do not support his position.  Pl. Opp'n at 5-6.  The New York Court of Appeals in Schozer v. William Penn Life Ins. Co. of N.Y., 84 N.Y.2d 639 (N.Y. 1994) found that the trial court had erred "in refusing to permit defendant to establish that the [document] was lost, and in ruling that the unavailability of the [document] unconditionally precluded defendant from introducing secondary evidence of its contents." Id. at 1357.  The court further held that loss can be established through a "diligent search" and "testimony of the person who last had custody of the original." Id. at 1355.  The citation to Stathis v. Estate of Karas, 130 A.D.3d 1008 (2d Dep't 2015) is inapposite.  There, the best evidence rule was not satisfied because the plaintiff failed to explain the unavailability of the original document and failed to conduct a diligent search. Id. at 1010.

Rule," Pl. Opp'n at 6, the Court is entitled to rely on circumstantial evidence to prove loss of an original document, recognizing that proof of a diligent search is frequently the only evidence available to a party to show that a document has been lost or destroyed.  See McCormick on Evidence, 237 at 715 (3d ed. 1984) ("Loss or destruction may sometimes be provable by direct evidence but more often the only available evidence will be circumstantial, usually taking the form that appropriate search for the document has been made without discovering it."); 5 Weinstein Evidence § 1004(1)[05] at 1004-18 (1983) ("By far the most common means of prov[ing] loss or destruction is the use of circumstantial evidence showing a diligent but unsuccessful search and inquiry for the document.") (quotation omitted).  Moreover, since the "diligence requirement is not a matter to be determined by the fact finder," and instead "shall be determined by the court," we find that there is no factual issue in dispute regarding defendants' efforts to locate the original document.[5]  Burt Rigid Box, Inc. v. Travelers Property Cas. Corp., 302 F.3d 83, 92 (2d Cir. 2002).

---

[5]     We also note that defendants have previously submitted a declaration by Andrew Kupinse, one of Fat Joe's attorneys, who communicated with Pacheco in early March 2019 regarding the signed version of the agreement.  See ECF No. 161.  Defendants have also submitted an email chain between Kupinse and Pacheco from early March 2019 in which Pacheco told Kupinse that he was never in possession of the signed document.  See ECF No. 181-9.  Given concerns regarding the potential hearsay nature of these communications, the Court ordered additional discovery from Pacheco.  See ECF No. 166.

Nor are there any indicia of bad faith. Elliott fails to offer any specific evidence showing that Fat Joe or any other defendants have procured the loss of the original document in bad faith or otherwise intentionally prevented its recovery and production. Plaintiff's conclusory allegations regarding defendants' credibility are totally unrelated to the loss of the signed agreement and are accordingly irrelevant to this determination. See, e.g., Crawford v. Franklin Credit Mgmt. Corp., No. 8 Civ. 6293, 2015 WL 1378882, at *5 (S.D.N.Y. Mar. 26, 2015) (finding that plaintiff failed to offer "any concrete allegation of bad faith" where plaintiff argued that defendant failed to proffer any excuse for non-production of the document in question).[6]

> ii. Defendants Have Established That the Original Document Cannot Be Located Through Judicial Process.

In addition to establishing that the original document has been lost, it is also clear to the Court that if the document is within the possession of Pacheco, it is beyond the reach of the Court, per Rule 1004(b). With no other judicial recourse available to obtain the document, the Court excuses production of the original agreement by defendants, as it "cannot be obtained by

---

[6]    Indeed, given the absence of any basis to conclude that the unsigned Draft Agreement was not the document signed, defendants have no incentive to destroy the signed copy. In fact, defendants' efforts to serve Pacheco in order to address any potential questions regarding this issue are indicative of the opposite of bad faith.

available judicial process or procedure," rendering it "as inaccessible as though it had been lost or destroyed." Allegra v. Bowen, 670 F. Supp. 465, 468 (E.D.N.Y. 1987).  For the reasons set forth above, we find that the requirements of Rule 1004(a) and (b) have been satisfied.

B. The Draft Agreement Shows That Elliott Assigned his Rights.

Having established that defendants have satisfied the requirements of Rules 1003 and 1004, the Draft Agreement is admissible as a duplicate of the original agreement and establishes its contents.  We now turn to the legal significance of the agreement to ascertain the rights that Elliott transferred.  The parties agreed that the agreement would "be governed by the laws of the State of Florida . . . with respect to any claim arising under [the] Agreement." ECF No. 145-1.  Elliott has not suggested that there is any ambiguity or lack of clarity in the contract. Thus, we use a plain language reading.  See Walgreen Co. v. Habitat Dev. Corp., 655 So.2d 164, 165 (Fla. Dist. Ct. App. 1995) ("When a contract is clear and unambiguous, the court is not at liberty to give the contract any meaning beyond that expressed.") (internal quotation marks and citation omitted).  At the outset, the contract states that Elliott "irrevocably grants . . . any and all rights of ownership or any other rights in and to the Master and the underlying composition (the "Composition") throughout the Universe

-15-

in perpetuity." ECF No. 145-1. The agreement further states that "Elliott acknowledges that [he] has no ownership or other rights in and to the Master and the Composition and to the extent Elliott has any rights he hereby assigns those rights, including any moral rights and copyright rights . . . throughout the universe and in perpetuity." Id. Elliott also agreed to waive "any and all payment of mechanical royalties due to composer for or in connection with the Composition and the Master," with his only payment coming in the form of the $5,000 check presented at the meeting. Id.

Moreover, while the contract may not be perfectly drafted, including a misspelling of Elliott's name in the signature block, there is no doubt that Elliott and Fat Joe are the intended contracting parties, and the purpose of the contract was to assign Elliott's rights to "All The Way Up" in perpetuity "throughout the Universe." The contract contains Elliott's driver license number, which was emailed to Fat Joe's transactional attorney the day before she drafted the agreement, see ECF No. 131-2 ¶¶ 5-6, clearly indicating that the correct Eric A. Elliott is identified as the assignor. Thus, by its terms, the agreement unambiguously assigns any ownership rights, copyright rights, and any additional rights that Elliott had in the Composition and the Master.

**II.  Elliott's Other Arguments Fail as a Matter of Law.**

-16-

We now turn to the remainder of plaintiff's claims.  The Draft Agreement not only resolves plaintiff's claims regarding ownership and authorship of "All The Way Up," but it also resolves plaintiff's remaining claims.

A. <u>Copyright Act Statute of Frauds</u>

Elliott raises a number of arguments regarding the enforceability of the Draft Agreement, beginning with the claim that the agreement is void based on the statute of frauds contained in the Copyright Act, 17 U.S.C. ¶ 204(a).  Pl. Opp'n at 12.  This provision requires that "a transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  Elliott has conceded that he signed an agreement at the March 2016 meeting.  <u>See</u> Elliott Decl. at 11 (ECF No. 155).  Indeed, the fact that he signed the agreement is central to the Complaint and the allegations against defendants.  <u>See, e.g.</u>, Compl. ¶¶ 54-56.  Given this undisputed fact, and the determination that the Draft Agreement is admissible as a duplicate of the original agreement and to prove its contents, the requirements of the statute of frauds are met.

B. <u>Lack of Consideration</u>

-17-

Elliott's second argument is that the agreement lacks any identified consideration and that the parol evidence rule prevents defendants from establishing the $5,000 check as the consideration referenced in the contract.  See Pl. Opp'n at 12-14.  While a party that "provides no enforceable consideration for the agreement . . . may not enforce the agreement against the other party," there is no basis in fact for Elliott's argument.  Robert L. Haag, Inc. v. Swift & Co., 696 F.2d 30, 31 (2d Cir. 1982).  It is undisputed that Elliott received a $5,000 check at the 2016 meeting, which he subsequently cashed.  Compl. ¶ 50.   Under the terms of the agreement, Elliott agreed to transfer his rights to Fat Joe in exchange for "valuable consideration" that was agreed to be "full and complete consideration for all of Elliott's services . . . (including any and all songwriting fees due)," with the understanding that "no additional compensation. . .[would] be due to Elliott."  (ECF No. 141-5).  Thus, this check satisfied Fat Joe's obligation and functioned as the "valuable consideration" referenced in the agreement.  While Elliott seeks to construe the simultaneous exchange of the $5,000 check as untethered to the language of the contract, there is no support for that assertion. Elliott's retrospective frustration at the amount of money notwithstanding, there is no dispute that Elliott signed the

contract, assigning his rights to the song, while simultaneously receiving the $5,000 check from Fat Joe in exchange.

Elliott's parol evidence argument is also unavailing.  The parol evidence rule "is a rule of substantive contract law, not a [federal] rule of evidence," Petereit v. S.B. Thomas, Inc., 63 F.3d 1169, 1177 (2d Cir. 1995).  Under Florida law, which applies here, "[t]he general rule is that parol evidence is not admissible to vary, contradict, or defeat the terms of a complete and unambiguous written instrument."  Bond v. Hewitt, 149 So. 606, 607-8 (Fla. 1933).  However, "for some purposes parol evidence can be introduced to explain or amplify the consideration recited in a written contract," although this does not "permit proof of an oral agreement for the purpose of imposing an affirmative obligation on one of the parties of which there is no indication or suggestion in the written contract."  Knabb v. Reconstruction Fin. Corp., 197 So. 707, 716 (Fla. 1940) (internal quotation marks and citation omitted).  Given the integration clause present in the contract, and the lack of any claim of ambiguity, the parties cannot seek to admit parol evidence to vary any term of the contract.  However, the parol evidence rule does not prevent the Court from recognizing that the $5,000 check provided at the

meeting served as consideration.[7]  It is clear from the facts presented in the record that the check served as the "valuable consideration" referenced in the agreement and further evidence of Elliott's intent to be bound by its terms.

### C. Fraudulent Inducement/Negligent Misrepresentation

Finally, Elliott argues that the agreement is void or voidable because he was fraudulently induced to enter into it.  Elliott's argument is premised on alleged fraudulent representations made around March 6, 2016 in a telephone call between Fat Joe and Elliott, as well as alleged representations made at the IHOP meeting.  Pl. Opp'n at 16.  According to Elliott, during the March 6 phone call, Fat Joe fraudulently promised that Elliott would receive "some bread" up front, compensation as the song generated additional income, and the opportunity to collaborate with Fat Joe in the future.  Compl. ¶ 42.  Elliott also alleges that at the

---

[7]      We also note that under Florida law in a slightly different context, courts consider parol evidence in order to determine true consideration where the stated terms of consideration in a deed are listed as "one dollar and other valuable consideration."  See Menke v. Cournoyer, 330 So.2d 491, 493 (Fla. Dist. Ct. App. 1976) ("Where a deed recites a consideration of 'one dollar and other valuable considerations' the statement as to consideration is not complete and the true consideration may be shown by parol.");  Bond, 149 So. at 607 ("This court has committed itself to the doctrine that where a deed of conveyance recites a consideration of one dollar and other valuable considerations, the statement as to the consideration is not complete and the true consideration may be shown by parol.");  Mason v. Roser, 588 So.2d 622, 624 ("On occasion, however, parol evidence is admissible to resolve ambiguities with respect to the stated consideration for a conveyance.  For example, a deed which recites a consideration of a sum of money and other valuable consideration is not complete as to the consideration, and the true character thereof may be shown by parol.") (internal quotation marks and citation omitted).

IHOP meeting, Fat Joe stated that the $5,000 represented an initial payment, with additional payments forthcoming, and repeated that he would collaborate with Elliott on additional songs. Compl. ¶¶ 52-55.

Regardless of whether these claims are true, and defendants deny that Fat Joe made these representations, the Draft Agreement contains a merger clause that is fatal to the claims of fraudulent inducement and negligent misrepresentation. Under the terms of the merger clause, "[the] Agreement contains the entire understanding of the parties . . . relating to the subject matter [of the Agreement] and cannot be changed or terminated except by an instrument signed by the parties." ECF No. 145-1. Therefore, plaintiff is barred from presenting "evidence of a prior or contemporaneous oral agreement . . . to vary or contradict the unambiguous language of [this] valid contract." Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1309 (11th Cir. 1998) (internal quotation marks and citation omitted). The inclusion of a merger clause in the contract also bars a claim of fraudulent inducement where the claim "directly contradicts an express provision of the written agreement." Ungerleider v. Gordon, 214 F.3d 1279, 1282 (11th Cir. 2000) (internal quotation marks and citation omitted).

Try as he might, Elliott cannot avoid the clear and plain language of the contract that "no additional compensation (including mechanical royalty or any other payments) will be due to Elliott," and that the consideration received, "the receipt and sufficiency of which Elliott . . . acknowledge[d]," was the "full and complete consideration" that Elliott would receive.  See ECF No. 145-1.  Any alleged statements regarding future or additional compensation are "explicitly contradictory to [these] specific and unambiguous provision[s] of the contract."  Acquisition Corp. of Am. V. Fed. Deposit Ins. Corp., 760 F. Supp. 1558, 1561 n.6 (S.D. Fla. 1991); Greenwald v. Food Fair Stores Corp., 100 So. 2d 200, 202 (Fla. Dist. Ct. App. 1958) ("[T]o admit into evidence the [pre-execution evidence] . . . would contradict express specific terms of the written agreement.").  Thus, Elliott cannot rely on a claim of "fraud in the inducement . . . where the alleged fraud contradicts the subsequent written contract." Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc., 262 F. Supp. 2d 1334, 1342-43 (S.D. Fla. 1999); Acquisition Corp. of Am., 760 F. Supp. at 1561 n.6 (finding no exception to the parol evidence rule "where the alleged fraudulent inducement is explicitly contradictory to a specific and unambiguous provision of the contract."); Topp, Inc. v. Unidem Am. Corp., 513 F. Supp. 2d 1345, 1350 (S.D. Fla. 2007) (finding no fraudulent inducement where "[a]ll alleged

misrepresentations or inducements are fully addressed and incorporated into the written contract"). As a result, Elliott's claims of fraudulent inducement or negligent misrepresentation are clearly unsupportable under Florida law.

        D. <u>Fiduciary Duty, Accounting, and Equitable Trust</u>

In addition to his arguments regarding the enforceability of the agreement, Elliott has raised a number of other state law claims, including claims regarding Fat Joe's breach of purported fiduciary duties and the appropriate equitable remedies resulting from that breach. <u>See</u> Pl. Opp'n at 14; Pl. Dec. 3, 2019 Opp'n at 10 (ECF No. 151). These arguments arise from an unsupported premise: namely, that Fat Joe had a fiduciary relationship with Elliott at the time the contract was signed. As an initial point, "the duty to account for profits presupposes a relationship as co-owners of the copyright," and is thus tied to the relationship between co-owners rather than co-authors of a song. <u>Weber v. Geffen Records, Inc.</u>, 63 F. Supp. 2d 458, 464 (S.D.N.Y. 1999) (internal quotation marks and citation omitted); <u>BMG Rights. Mgmt., LLC v. Atl. Recording Corp.</u>, No. 16 Civ. 7443, 2017 WL 5125543, at *2 (S.D.N.Y. Nov. 2, 2017) ("In the context of copyright ownership, in particular, a copyright co-owner may bring an accounting claim against other co-owners for profits they made from exploiting the copyright."). Second, Elliott fails to cite

any authority, and the Court is likewise unaware of any, that states that copyright co-authors or co-owners are fiduciaries to one another.   To the contrary, "there are traditionally no fiduciary duties owed between joint authors or copyright holders." Mills v. Cottrell, No. 04 Civ. 5562, 2006 WL 3635325, at *5 (S.D.N.Y. Dec. 8, 2006).   Thus, any potential relationship as a co-author or co-owner is not sufficient, and Elliott has not proffered evidence of "a position of trust or special confidence . . . that impose[s] obligations beyond the express agreements between the parties."   Gasery v. Kalakuta Sunrise, LLC, 422 F. Supp. 3d 807, 819 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).

The terms of the agreement undeniably transfer all ownership rights to Fat Joe, eliminating any potential claim of co-ownership between Elliott and defendants.   See ECF No. 145-1.   Further, Elliott fails to establish any relationship, fiduciary or otherwise, between himself and Fat Joe.   In fact, there is no evidence in the record that Fat Joe knew who Elliott was prior to early March 2016, when Elliott posted on Instagram about the song. See Compl. ¶ 39.   Having failed to identify any fiduciary duties that Fat Joe owed to Elliott, or any fiduciary relationship between the two, Elliott's claims fail as a matter of law.

**CONCLUSION**

Accordingly, for the reasons stated above, defendants'
renewed motion for summary judgment is granted in its entirety and
the Complaint is dismissed with prejudice.[8]  The Clerk of Court is
respectfully directed to terminate the motion pending at ECF No.
184 and to close the case.[9]

**SO ORDERED.**

Dated:     New York, New York
           January 5, 2022

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

---

[8]     Elliott raises a number of other claims in his Complaint that are
not specifically addressed in the motion papers.  These additional claims are:
unjust enrichment, quantum meruit, conversion, moneys had and received,
negligence, and civil conspiracy.  Having found that Elliott has assigned all
of his rights in the song with no right to any future compensation, these claims
are also dismissed.

[9]     While this motion was brought by a subset of defendants, we find
that any claims against the remaining defendants (Karim Kharbouch, Shandel
Green, Marcello Valenzano, Andre Lyon, Edward F. Davadi, Jr, Excuse My French
Music, Excuse My French Music II, Mr. Green Music, Dade Co. Project Music, Inc.,
Po Folks Music, Universal Music-Z Tunes LLC, Songs of Universal Inc., Roc Nation
LLC, Roc Nation Management LLC, Empire Distribution, Inc.) necessarily fail.
They are additional co-authors of the song and entities further down the
distribution line.  Given that Elliott has assigned away all of his rights to
the song, the claims against these remaining defendants are without basis and
are likewise dismissed.

Separately, the Court acknowledges that defendants requested oral argument.
However, given our holding and that our decision is based on clear legal
doctrine, the Court determined that oral argument would not be productive.