UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
ERIC A. ELLIOTT (p/k/a FLY
HAVANA),

                Plaintiff,

        - against –

JOSEPH ANTHONY CARTAGENA (p/k/a
FAT JOE), et al.,

             Defendants.

------------------------------X

**MEMORANDUM AND ORDER**
19 Civ. 1998 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On February 13, 2025, the Court entered a fifty-one-page Memorandum and Order granting in part, and denying in part, defendants' motion to dismiss plaintiff's amended complaint. See Elliott v. Cartagena, et al., 19 Civ. 1998 (NRB), 2025 WL 486634 (S.D.N.Y. Feb. 13, 2025). Specifically, the Court dismissed plaintiff's ten state law claims, declined to dismiss his four copyright claims, and directed the parties to present a discovery schedule, noting that the "focus at the outset of discovery should be on issues related to the 'piece of paper[,]' as plaintiff describes it, and the 'contract[,]' as defendants describe it, as well as the related $5,000 payment." Id. at *1, 18. The Court assumes familiarity with its prior decision.

On February 27, 2025, plaintiff moved for partial reconsideration of the Court's opinion, pursuant to Local Rule 6.3

-1-

of the United States District Courts for the Southern and Eastern Districts of New York.  See ECF No. 231.  Plaintiff contends that his "negligence claim, fraud/misrepresentation claim, and the civil conspiracy claim should be reinstated[;] [i]n addition, leave to amend to address any defects should have been granted[;] [and] . . . the Court's discovery instruction appears to violate the law of the case."  Id.[1]

For the following reasons, the Court denies plaintiff's motion.

## **LEGAL STANDARD**

Reconsideration of a prior decision is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."  Jones v. Donnelly, 487 F. Supp. 2d 418, 419 (S.D.N.Y. 2007) (citation and quotation marks omitted).  A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"  Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012), as amended (July

---

[1]    Plaintiff's motion does not ask for reconsideration of his dismissed state law claims for (a) accounting (Count V); (b) constructive trust (Count VI); (c) unjust enrichment (Count VII); (d) quantum meruit (Count VIII); (e) conversion (Count IX); (f) moneys had and received (Count X); and (g) breach of fiduciary duties (Count XI).  See Elliott, 2025 WL 486634, at *13-16, 18; ECF No. 231.  Despite including a footnote stating that "[t]hey should not have been dismissed," ECF No. 232 at 10 n.5, plaintiff did not actually move for reconsideration of these dismissed claims, ECF No. 231.

13, 2012) (citation omitted).  In other words, "[a] motion for reconsideration is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.'"  Salveson v. JP Morgan Chase & Co., 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) (quoting Simon v. Smith & Nephew, Inc., 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014)), aff'd, 663 F. App'x 71 (2d Cir. 2016).

Accordingly, "[t]he standard for granting [motions for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995), or "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citation and quotation marks omitted).  Ultimately, motions for reconsideration pursuant to Local Rule 6.3 "are committed to the sound discretion of the district court."  In re Molycorp, Inc. Sec. Litig., No. 13 Civ. 5697 (PAC), 2016 WL 3002424, at *2 (S.D.N.Y. May 23, 2016) (citation and quotation marks omitted).

-3-

## **DISCUSSION**

We first review whether plaintiff's "negligence claim, fraud/misrepresentation claim, and the civil conspiracy claim should be reinstated" before addressing his "leave to amend" request as well as the Court's discovery guidance. ECF No. 231. We will address plaintiff's negligence, fraud/misrepresentation, and civil conspiracy claims individually.

### I. **Negligence (Count XII)**

In our Motion to Dismiss Opinion, we dismissed plaintiff's negligence claim as preempted by the Copyright Act. See Elliott, 2025 WL 486634, at *16. In support of this conclusion, we cited plaintiff's allegations that defendants "'failed to properly credit and/or compensate [plaintiff] for his contributions to the song'" and stated that plaintiff's negligence claim is "derived from the unauthorized reproduction, distribution, performance and display of a 'worldwide hit song.'" Id. (citations omitted).

According to plaintiff, the "Court's opinion misapprehends" "the nature of the pled negligence claim," as this claim solely seeks "damages for career harm" and is not about "unauthorized duplication;" therefore, plaintiff contends, the Court's opinion "incorrectly applies preemption case law." ECF No. 232 ("Pl. Br.") at 1-3; see also ECF No. 239 ("Reply") at 1-3.[2]

---

[2]    Though plaintiff's initial brief asserts that the Court erred in four

At the outset, we note that the Court did not misapprehend plaintiff's pled negligence claim, as plaintiff's assertions -- that "[n]othing about the negligence claim in this case seeks to . . . recover infringement damages (i.e., song revenue)," Pl. Br. at 2, and that "at no point did Plaintiff ever plead or assert, implicitly or expressly, that the song was exploited without permission," Reply at 1 -- contradict plaintiff's amended complaint and prior arguments made by plaintiff's counsel.

In his amended complaint, plaintiff alleges:

> Plaintiff has suffered significant damage, including Defendants holdings themselves out as the owners of Plaintiff's shares of the song and taking the profit derived from those shares for themselves. <u>As a result, Plaintiff is bringing claims, inter alia, for</u> accounting, constructive trust, unjust enrichment, quantum meruit, conversion, moneys had and received, breach of fiduciary duties, and <u>negligence</u>. <u>Plaintiff</u> is [sic] <u>owns a share of all profits directly or indirectly related to Defendants' exploitation of the song, and is seeking those profits via applicable state law causes of action</u>.

ECF No. 205 ("Amended Complaint" or "AC") ¶ 246 (emphasis added); <u>see also</u> <u>id.</u> ¶ 279 (same). Additionally, in the section outlining

---

ways, <u>see</u> Pl. Br. at 1, plaintiff's reply brief clarifies that he does not contest the Court's observation that "the application of preemption is not limited only to those cases where infringement is listed as a cause of action," Reply at 2 (citation omitted). Thus, plaintiff's asserted errors boil down to a single argument for why this claim should be reinstated: preemption only applies to state law claims when "the gist of the actions were <u>nevertheless unauthorized reproduction or use</u>," he "has <u>not</u> alleged unauthorized reproduction or use, either implicitly or explicitly," as the negligence claim solely seeks to recover "career harm Plaintiff suffered from not being credited," and therefore preemption is inapplicable. <u>Id.</u> at 1-2 (emphasis in original); <u>see also</u> Pl. Br. at 1-3 (similar).

his "negligence" cause of action, plaintiff alleges that defendants breached a duty owed to plaintiff "when they failed to properly credit and/or <u>compensate him for his contributions to the song</u>." <u>Id.</u> ¶ 319 (emphasis added). In other sections of the amended complaint, plaintiff further contends that he is entitled to "Compensation in the form of royalties, licensing fees, concert revenues, advertising, and any other monies accrued as a result of the exploitation of 'All the Way Up,'" as "Defendants continue to exploit the song without providing credit or compensation to Plaintiff." <u>Id.</u> ¶¶ 134(b), 194.[3] He also asserts that "his alleged co-authors have attempted to divide up, assign, and/or contract away his shares of 'All the Way Up' <u>without his permission</u>—thereby effectively extinguishing his credit and authorship." AC ¶ 118 (emphasis added).

Moreover, in his opposition to defendants' motion to dismiss, plaintiff's counsel stated:

> Again, the state law claims are alleged to recover the monies Plaintiff is due as an author and owner, or in the case of the fraud, misrepresentation, fiduciary, and negligence claims <u>also</u> to recover for career damage. Restated, Plaintiff has rights in 'All the Way Up' which entitle him to monies that Defendants have wrongfully received and/or are possessing.

ECF No. 222 at 22 (emphasis added).

---

[3]    On the other hand, plaintiff's counsel provides no citation for the argument that "all the joint authors including Plaintiff authorized the exploitation of the work by Defendants." Pl. Br. at 2.

Regardless, even if plaintiff's negligence claim is refashioned as solely seeking "career harm" or damages from "Defendants' failure to publicly credit him as a writer[,]" Pl. Br. at 2, plaintiff's motion for reconsideration still fails.

Plaintiff has not identified "controlling law . . . put before the court on the underlying motion that the court overlooked and that might reasonably be expected to alter the court's decision." Jones, 487 F. Supp. 2d at 419 (collecting cases). In his initial brief seeking reconsideration, plaintiff identifies three cases, none of which state that claims seeking career harm are not preempted by the Copyright Act. See Pl. Br. at 2 (citing Litchfield v. Spielberg, 736 F.2d 1352, 1358 (9th Cir. 1984); Downing v. Abercrombie & Fitch, 265 F. 3d 994, 1003 (9th Cir. 2001); Davis v. Blige, 505 F. 3d 90, 98 (2d Cir. 2007)). In his reply brief, plaintiff asserts for the first time that "this Circuit has expressly held that damages for failure to credit are recoverable either under the Copyright Act or via a state law claim." Reply at 3 (citing Graham v. James, 144 F. 3d 229, 238-39 (2d Cir. 1998)). Plaintiff did not cite this case in his opposition to defendants' motion to dismiss. See ECF No. 222.[4]

---

[4]    In any event, Graham does not support plaintiff's position. In Graham, an individual was awarded damages on his copyright infringement and breach of contract claims following a bench trial. 144 F. 3d at 232. The Second Circuit vacated the award of copyright infringement damages, explaining that infringement could not occur unless the parties' licensing agreement was rescinded and the trial court "made no such finding." Id. at 236-238. The

-7-

Moreover, plaintiff's refashioned claim for credit or career harm is preempted by the Copyright Act.  Even though plaintiff insists that "[n]othing about the negligence claim in this case seeks to duplicate an infringement action for unauthorized use," Pl. Br. at 1, plaintiff's claim hinges on defendants' reproduction and display of the song without a credit to plaintiff's name, a situation which plaintiff obviously did not authorize.  AC ¶¶ 118, 194.  Thus, plaintiff's claim asserts an exclusive right within the general scope of copyright and is therefore preempted.  See Elliott, 2025 WL 486634, at *12-13, 16 (collecting cases); see also Walkie Check Prods., LLC v. ViacomCBS Inc., No. 21 Civ. 1214 (KPF), 2022 WL 2306943, at *13 (S.D.N.Y. June 27, 2022) (finding state law claims "that Defendants unjustly benefitted from Plaintiff's copyrighted work by reproducing and distributing facets of Plaintiff's [work] . . . without credit or compensation" "possess no qualitative difference from Plaintiff's copyright infringement claim" and "are preempted by the Copyright Act"); Saint-Amour v. Richmond Organization, Inc., 388 F. Supp. 3d 277, 291 (S.D.N.Y. 2019) (finding that where a claim alleges defendants

---

Second Circuit further vacated the damages award for the omission of a notice of the individual's authorship but noted that this amount "may be supported on remand by evidence of nonspeculative damages traceable to Graham's failure to credit James's authorship" or "[a]lternatively (given sufficient proof), . . . as breach of contract damages if the failure to credit James's authorship amounted to a breach of the licensing agreement."  Id. at 238-39.  Plainly stated, there is no reason to believe that determination of damages relating to breach of a licensing agreement in Graham prohibits the preemption of plaintiff's negligence claim here.

are "deceiving the public by claiming to own a copyright," "[s]uch a claim is not qualitatively different than the Plaintiffs' request for a declaration that the Defendants have no valid copyright" and it is preempted as it "seeks to vindicate a right equivalent to the exclusive rights protected by the Copyright Act").[5]

## II. Fraud/Negligent Misrepresentation (Count XIII)

Next, the Court dismissed plaintiff's fraud/negligent misrepresentation claim, which was asserted against eight defendants based on two conversations between plaintiff and Fat Joe.  See Elliott, 2025 WL 486334, at *17; AC ¶¶ 325-339.  We dismissed this claim for four reasons.  See Elliott, 2025 WL 486634, at *17.  First, we dismissed plaintiff's claim against the seven defendants who were not Fat Joe because plaintiff did not "set[] forth separately the acts complained of by each defendant."

---

[5]    Even if plaintiff's refashioned claim for credit was not barred by statutory preemption, implied preemption would likely apply.  As the Second Circuit has recognized:

> [Plaintiff's] claim would impermissibly interfere with the administration of the federal copyright system by placing a substantial barrier between copyright holders and the full exploitation of their works.  The "exclusive rights to do and to authorize" the reproduction, adaptation, distribution, performance, and display of a copyrighted work would be substantially encumbered if the rightsholder or their licensees were precluded from identifying for the intended audience the authors or performers of that work. . . .  Accordingly, because [plaintiff's] right of publicity claim seeks to control the use of a copyrighted work by prohibiting accurate descriptions of that work, that claim impermissibly interferes with the federal copyright framework and must be dismissed.

In re Jackson, 972 F.3d 25, 55 (2d Cir. 2020) (citations omitted).

Id. (citations and quotation marks omitted; emphasis in original citations). Second, we dismissed plaintiff's claim against Fat Joe in part because "a 'false statement amounting to a promise to do something in the future is not actionable fraud.'" Id. (citation omitted). Third, we found that plaintiff "failed to allege Fat Joe's intent at the time he made these representations." Id. Lastly, we raised the issue of statute of frauds and found that the alleged promises were non-actionable. Id.

Plaintiff contends that the Court erred in four ways: (1) "sua sponte" dismissing the claim against defendants other than Fat Joe, (2) ruling that "future promises cannot be the basis for fraud claims," (3) "claim[ing] that Plaintiff's complaint fails to address Fat Joe's intent at the time the fraudulent statements were made,"[6] and (4) "sua sponte referenc[ing] . . . the statute of frauds." Pl. Br. at 3-8; see also Reply at 3-6 (similar). We address each argument in turn.

Plaintiff incorrectly states that the Court "sua sponte" dismissed his claim against defendants other than Fat Joe "without notice to Plaintiff." Pl. Br. at 7-8 (citation omitted); see also Reply at 3-5 (similar). The Court did not raise this argument sua sponte, as it was explicitly raised by defendants in their motion

---

[6]     We withdraw our finding that plaintiff "failed to allege Fat Joe's intent at the time he made these representations." Elliott, 2025 WL 486334, at *17. However, as discussed below, withdrawal of this conclusion does not impact that the bottom-line decision that the fraud claims were insufficiently pled.

to dismiss briefing.  See ECF Nos. 217 at 18-19, 225 at 9.  Indeed, plaintiff responded to this argument in his opposition to the motion to dismiss.  See ECF No. 222 at 23 ("Defendants' claim that defendants have been 'lumped' together, when specific defendants were targeted, is simply not true. . . . Green it should be noted has not appeared or disputed the content of the complaint."); see also id. at 23 n.12 (containing additional argument).  Plaintiff is not permitted to use his current motion to "relitigat[e] old issues, present[] the case under new theories, secur[e] a rehearing on the merits, or otherwise tak[e] a 'second bite at the apple.'"  Analytical Surveys, 684 F.3d at 52 (citation omitted).

Similarly, plaintiff's argument concerning future promises, see Pl. Br. at 5, simply rehashes the arguments he made in the motion to dismiss briefing, see ECF No. 222 at 23-24.  Again, this type of re-argument fails to support a motion for reconsideration.  See Analytical Surveys, 684 F.3d at 52.[7]

The Court's rejection of these two arguments is sufficient to support a finding that plaintiff's fraud claims should not be reinstated.  However, for the sake of completeness, we briefly

---

[7]    Moreover, the sole case that plaintiff cites in support of this argument, Pl. Br. at 5 (citing Mejia v. Jurich, 781 So. 2d 1175 (Fla. 3d DCA 2001)), merely restates a proposition that the Court expressly acknowledged in its opinion: "A plaintiff seeking to recover for such a misrepresentation must show that the promisor either lacked the intention to perform the promise or specifically intended not to perform at the time the representation was made," Elliott, 2025 WL 486634, at *17 (citation and quotation marks omitted).

address plaintiff's remaining argument concerning the statute of frauds.

"It was not improper, or, as plaintiff asserts, contrary to 'controlling law' . . . for the Court to raise <u>sua sponte</u> the Statute of Frauds issue." <u>Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc.</u>, No. 03 Civ. 4892 (JFB) (MLO), 2007 WL 2493482, at *3 (E.D.N.Y. Aug. 29, 2007). And "[e]ven assuming <u>arguendo</u> that the Court erred in conducting a Statute of Frauds analysis where the defense was not pleaded, it is beyond doubt that such an error did not 'alter the conclusion reached by the court,'" <u>id.</u> at *4 (citation omitted), as this was an alternative basis to dismiss the claim.

Moreover, to avoid the possible application of the statute of frauds, plaintiff now asserts that he "never promised or gave anything to Fat Joe" and "Plaintiff has never alleged any agreement, written or otherwise." Pl. Br. at 6 (emphasis omitted). This assertion is belied by his amended complaint, wherein he explicitly alleges that he "signed" "a piece of paper" Fat Joe put in front of him that "essentially memorialized Fat Joe's representations" in exchange for $5,000 and plaintiff "even took a picture with Fat Joe" to mark the occasion. AC ¶¶ 56-60.[8] The

---

[8]    There is no dispute that there was a written agreement between the parties. <u>See</u> ECF No. 155 (Declaration of Eric A. Elliott) ¶ 11 (conceding that he signed a document at the March 2016 meeting); <u>see also</u> <u>Elliott v. Cartagena</u>, 84 F.4th 481, 486 (2d Cir. 2023) ("Elliott agrees that he signed a document,

statute of frauds plainly applies as a result.

**III. Civil Conspiracy (Count XIV)**

In our Motion to Dismiss Opinion, we dismissed plaintiff's civil conspiracy claim for two reasons. See Elliott, 2025 WL 486634, at *18. First, we held that this claim was "preempted by the Copyright Act." Id. (citations and quotation marks omitted). Next, we held that, as a standalone claim, it failed as a matter of law, given that all the alleged underlying torts -- "Fraud, Negligent Misrepresentation, Negligence, Conversion, and/or Moneys Had and Received," -- had been dismissed. Id. (citations and quotation marks omitted).

Plaintiff does not address the Court's dismissal of the claim on preemption grounds. See Pl. Br. at 8-9. Instead, plaintiff takes issue with the Court's independent ruling that the claim failed as a matter of law. See id. Plaintiff asserts that (1) the Court held "sua sponte without notice that New York law does not authorize a claim for conspiracy," (2) "[i]t is inconsistent to hold that fraud is governed by Florida law, but then apply New York law to bar the dependent conspiracy claim," (3) "Florida law clearly authorizes a claim for civil conspiracy," and (4) he "has alleged valid underlying claims." Id. at 8-9.

---

but the signed agreement has never been produced, and the parties disagree about its content and effect."); id. at 492 ("[A]ll parties agree that an original existed (whether or not the Draft accurately represents its content) because Elliott signed something at the IHOP." (emphasis in original)).

Plaintiff has not cited any controlling caselaw stating that the Court should have applied the law of Florida, rather than the law of New York, when only one of the four alleged underlying torts was governed by Florida law.  See Pl. Br. at 8-9.  We also note that we did not "sua sponte" apply New York law, Pl. Br. at 8, as this point was explicitly briefed by defendants in conjunction with their motion to dismiss, see ECF No. 217 at 25.  A motion for reconsideration does not provide an "opportunity" to "mak[e] new arguments that could have previously been made."  Salveson, 166 F. Supp. 3d at 248 (citation and quotation marks omitted).

However, even assuming that application of Florida law would be appropriate, dismissal of plaintiff's claim would remain.  Like New York, Florida does not recognize a standalone claim for civil conspiracy.  See Sea Tow Servs. Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 211 F. Supp. 3d 528, 554 (E.D.N.Y. 2016) ("Neither Florida nor New York recognizes an independent cause of action for civil conspiracy where there is no underlying tort."), aff'd, 699 F. App'x 70 (2d Cir. 2017).  Accordingly, plaintiff's claim was appropriately dismissed.

## IV.  Plaintiff's Request for Leave to Amend

At various points in the reconsideration briefing, plaintiff asserts that the Court should have allowed plaintiff to amend his amended complaint "to address any defects found by the Court."

-14-

Pl. Br. at 4 (citation omitted); see also id. at 5, 7 (similar);
Reply at 4, 5 (similar).  Also, on the last page of his opposition
to defendants' motion to dismiss, plaintiff stated that
"Defendants' motion to dismiss should be denied and . . . [t]o the
extent the Court disagrees with Plaintiff, Plaintiff requests
permission to amend the complaint to fix any defects."  ECF No.
222 at 27.

Plaintiff did not demonstrate then, nor does he establish
now, why he is entitled to amend his amended complaint.  Defendants
submitted two pre-motion letters outlining the bases for a motion
to dismiss, one of which was filed approximately six years ago,
ECF No. 112, and the other was filed approximately one year ago,
ECF No. 201.  The Court afforded plaintiff an opportunity to amend
his complaint with full knowledge of defendants' position as
outlined in both letters, reminding plaintiff that "if, consistent
with Rule 11, he can assert additional allegations to cure any
alleged deficiencies raised by defendants' letter[s], it would be
in the best interest of both the parties and the Court for
plaintiff to assert them now, before briefing on the proposed
motions."  ECF No. 203.  Plaintiff took advantage of that
opportunity and filed an amended complaint.  ECF No. 205.

Denial of plaintiff's request is thus more than appropriate.
See Food Holdings Ltd. v. Bank of Am. Corp., 423 Fed. App'x 73, 76

(2d Cir. 2011) (summary order) (affirming district court's denial of leave to amend where plaintiff requested leave to amend "on the final page of their brief . . . in boilerplate language and without any explanation as to why leave to amend was warranted"); Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n, 898 F.3d 243, 257 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." (citations, quotations, and alterations omitted)); Twohig v. Shop-Rite Supermarkets, Inc., 519 F. Supp. 3d 154, 168 (S.D.N.Y. 2021) (denying leave to amend where "[p]laintiffs have already amended once, after having the benefit of a pre-motion letter from Defendant stating the grounds on which they would move to dismiss"); NRW, Inc. v. Bindra, No. 12 Civ. 8555 (RJS), 2015 WL 3763852, at *1 (S.D.N.Y. June 16, 2015) ("To grant leave to amend after a plaintiff has had ample opportunity to amend would be condoning a strategy whereby plaintiffs hedge their bets . . . in the hopes of having another bite at the proverbial apple." (citation and quotation marks omitted)).

## V.   The Court's Discovery Guidance

At the end of the Court's Motion to Dismiss Opinion, the Court stated: "The focus at the outset of discovery should be on issues

related to the 'piece of paper[,]' as plaintiff describes it, and
the 'contract[,]' as defendants describe it, as well as the related
$5,000 payment." Elliott, 2025 WL 486634, at *18.

In the memorandum accompanying his motion for
reconsideration, plaintiff asserts that "[i]t appears plain from
the inclusion of this sentence that the Court is likely limiting
discovery to these issues to permit yet another dispositive motion
on this topic," and asks the Court: "If Plaintiff has
misapprehended the import of the Court's inclusion of this line
regarding discovery, Plaintiff asks for clarification as to why it
was included in light of the Second Circuit's opinion." Pl. Br.
at 9, 9 n.4. Plaintiff also states: "If full discovery is not
ordered, Plaintiff may seek a writ of mandamus to enforce the
Second Circuit's order and prevent unnecessary delay." Id. at 10.

In response to plaintiff's request, the Court filed a letter
clarifying the Court's sentence regarding discovery. ECF No. 234.
The Court reproduces here the relevant portion of the letter:

> Plainly stated, plaintiff has clearly misapprehended the
> Court's sentence regarding discovery. The Court did not
> state that the "sole" or "exclusive" focus of discovery
> should be on this assignment issue. Instead, the Court
> simply reminded the parties that there is a potentially
> dispositive issue here -- whether plaintiff signed away
> all of his rights and whether any such assignment
> precludes all of plaintiff's potential claims. As the
> Second Circuit observed, "'[f]urther discovery as to
> [Cartagena's] recollection of the [IHOP meeting and the
> 'piece of paper'] may clarify the facts of this case,

-17-

may refresh the recollections of [Cartagena and his associates], and may lead to the discovery of relevant' evidence." Elliott v. Cartagena, 84 F.4th 481, 494 (2d Cir. 2023) (citation omitted; alterations and emphasis in original).

By providing this reminder, the Court was simply directing the parties to submit a discovery schedule which considered this significant issue by, for example, scheduling the depositions of Messrs. Elliott and Cartagena sooner rather than later.  Indeed, the Court would have thought that all parties, including plaintiff, would recognize the benefit from any clarification that could be gleaned from such discovery.  Again, the Court was not limiting discovery to this issue: if it had meant to do so, it would have said so.

Lastly, while plaintiff's misapprehension of one sentence in a lengthy opinion is perhaps understandable, plaintiff's tone is not.  Neither plaintiff's speculation as to the Court's intent, nor plaintiff's rhetoric concerning the Court's supposed "violat[ion] [of] the law of the case" is well-taken.

Id. at 2.

Regardless, plaintiff filed a petition for issuance of writ of mandamus, ECF No. 238, as well as a letter responding to the Court's letter, ECF No. 240.  Plaintiff's letter "register[s] his disagreement with the statement . . . that the putative written assignment, if admissible, could possibly 'preclude all of plaintiff's potential claims.'"  Id.

Given that the Court has already issued a letter clarifying its discovery guidance, the Court finds no need to respond further.

-18-

## CONCLUSION[9]

For the foregoing reasons, plaintiff's motion for reconsideration is denied.[10]  The Clerk of the Court is directed to terminate the motion pending at ECF No. 231.

Dated:   May 20, 2025
         New York, New York

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[9]   Plaintiff requested oral argument.  See ECF No. 231.  However, given our holding and that our decision is based on clear legal doctrine, the Court determined that oral argument would not be productive.

[10]   At the end of defendants' opposition, defendants imply that the Court erred in declining to determine whether the released versions of the song are derivative of the unfinished versions at the motion to dismiss stage.  ECF No. 235 at 10-11 (citing, in part, Elliott, 2025 WL 486334, at *9).  Defendants did not file a motion for reconsideration and plaintiff disagrees on this issue.  Pl. Br. at 1 (stating that "the Court's opinion on the declaratory copyright claims was the correct result").  Moreover, the sole case defendants cite, Bovee & Thill LLC v. Pearson Educ., Inc., 564 F. Supp. 2d 199 (S.D.N.Y. 2008), is wholly inapposite.  The court there denied a motion to dismiss, as it found that the relevant contracts' reference to "electronic versions of custom-published books" was ambiguous.  Id. at 201.  Obviously, this case says very little about the relevant standard under the Copyright Act for determining if a work is derivative.

-19-